[*215]          *Fish *against* Weatherwax.

Where a verdict is found for the plaintiff, and the judgment of the court be-
low is *arrested,* and the plaintiff wishes to bring a writ of error, the proper
course is for the plaintiff to move the court for judgment against himself,
and for the defendant, for the insufficiency of the declaration, on which
judgment a writ of error will lie, but not on an *arrest* of judgment.
If the court below refuses to give such judgment, on the prayer of the party,
this court will grant a *mandamus* to compel them to give judgment.

Foot, for the plaintiff, moved for a rule on the judges of
the court of common pleas of the county of Rensselaer, to
show cause why a *mandamus* should not issue, to compel
them to give judgment in this cause. It appeared that a
verdict had been found for the plaintiff, and that the com-
mon pleas had arrested the judgment for the insufficiency of
the declaration.

*Foot* said, that a writ of error could not lie, and that a
*mandamus* was the only remedy. He cited 1 Salk. 144;
Cowp. 377; 3 Burr. 1265; Stra. 113, 530.

*Bird,* contra.

Benson, J. delivered the opinion of the court. There
may be a judgment, for the insufficiency of the declaration
or plea, as the case may be, against the party, though there
may be a verdict for him. If the party for whom a verdict
is found, will not move for judgment, the other party may
pray for judgment against himself; but the entry on the re-
cord will still be as if the judgment had been on the prayer
of the party for whom the judgment was found. And
where a party prays to have judgment rendered against
him, to the intent, that he may bring a writ of error, he is
entitled to have it so rendered against him, as matter of
right.

Where the verdict is for the plaintiff, if the defendant, in
stead of letting the plaintiff take a judgment for himself,
prays only that the court, omitting to render judgment,
shall, as their final act in the cause, say to the parties, that
they may go without any further day given to them to appear

again ; and if the plaintiff, when the court have declared their opinion against him, does not pray judgment against himself, the judgment, *in such case, is said [*216] to be *arrested,* as distinguished from the case where it is rendered ; for, according to the ordinary, though, perhaps, improper sense of the expression, a judgment is said to be *arrested,* when the court, by an interlocutory act, award a new trial, or repleader, or other further proceedings ; and where the party for whom the verdict was given, must still so further proceed, until there shall finally be a judgment in the cause, and then, on a writ of error, he may have judgment on the verdict, if entitled to it, and the judgment of the court, in awarding the further proceedings, and of consequence the proceedings themselves, be reversed. The arresting of judgment, however, in the present case, is the final act of the court ; and the question is, whether it is such a judgment, as that a writ of error will lie upon it.

In some cases, where a judgment is rendered against the plaintiff, it will be a bar to an another action for the same cause, and his only remedy is, by a writ of error, to have the judgment reversed ; but if the remedy, where the judgment is *arrested,* is also by writ of error, then the law, to be consistent with itself, must make an arrest of judgment a bar to a new action, in the same cases where the rendering of judgment is a bar. But as the *arrest* of judgment is not, by law, a bar in any case, the inference must be, that a writ of error will not lie on it.

That this is the law, is further evident, from the form of the entry where the judgment is arrested, and the form of the court of errors. In the first case the entry is, " omitting the rendering of judgment," &c. in the latter case, the writ of error states, " that in rendering judgment, manifest error," &c.

If, then, the plaintiff has no remedy by a writ of error, he must have it by a writ of *mandamus ;* though, strictly speaking, he is not entitled to his rule, before he has prayed the court below to render judgment against *him- [*217] self, for until then there is no default in the judge of the inferior court ; yet as this case is new, and to prevent

Fish v. Weatherwax.

delay, the court will grant a special rule, that if the judges of the court below shall refuse, on the prayer of the plaintiff, to render judgment against himself, and for the defendant, that then they show cause by the first day of the next term, why a *mandamus* should not issue to them to proceed to judgment in the cause.(a)    (Lutw. 124, 166, 1052, 1419, 1498, 1608.  2 Barnes, 206, 226.  Plowd. 209.  2 Saund. 228.  2 Town. Jud. 118, 155.  5 Co. 32.  1 Mod. 207.)

Rule granted accordingly.(b)

(a) See *infra* note (b), §

(b) The editor trusts that he will be excused in submitting to the profession a collection of cases upon the law of mandamus, broader and fuller than is required to elucidate the decision in the principal case. In the progress of legal science almost every branch of jurisprudence has become the subject of a distinct *modern* treatise, and it is somewhat singular therefore that this should have been neglected, since the Courts and the Bar are daily occupied in its consideration. The intention of the editor has been, in some degree, *to* supply the neglect of others, though it might not be done with any thing like that completeness which is desirable, and the result is submitted to the use and to the judgment of the profession.

---

§ 1. In the administration of political affairs and in the proper government of subordinate officers and tribunals, it is necessary that some power should exist to compel them to those acts which public justice demands. And whatever may be the wisdom with which specific remedies, the instruments of that power, are devised, many cases must arise to which they cannot be applied, and in which " a failure of justice and defect of police " must be the consequence. The necessity therefore has become apparent of *establishing some general residuary remedy to be used upon all occasions where the law has bestowed no other, and where in justice there ought to be one.* (See per Lord Mansfield in *Rex* v. *Baker,* 3 Burr. 1274.) This remedy is called the Writ of Mandamus and it is liberally interposed for the benefit of the citizen and the advancement of justice ; " the value of the matter or the degree of its importance to the public police is not scrupulously weighed ; if there be a right and no other specific remedy, it will not be denied : in fact, where there is a right to execute an office, perform a service, or exercise a franchise, more especially if it be a matter of public concern, or attended with profit, and a person is kept out of possession, or dispossessed of such right, and has no other specific legal remedy, the court will interpose by *mandamus* upon reasons of justice as the writ expresses—*Nos A. B. debitam et festinam justitiam in hac parte fieri volentes, ut est justum;* and upon reasons of public policy, to preserve peace, order, and good government." (*Rex* v. *Baker,* 3 Burr. 1267. Per Lord Mansfield, ibid. 1266.) By means of this suppletory remedy inferior officers and tribunals are forced to perform their duties, and corporations are

Fish v. Weatherwax.

compelled to observe the ordinances of their constitution and the rights of those entitled to participate in their privileges. (See Angel & Ames on Corp. ed. 1832, p. 426.) The proceeding by mandamus was employed early in the annals of English jurisprudence, but it would be impossible to determine the date of its origin even if there were any object to be gained by so useless a pursuit. Indeed this has been the subject of considerable difference of opinion amongst legal antiquarians which it would be utterly idle at this day to attempt to solve. Let it suffice to observe that while on the one hand it has been supposed to be of modern existence and to owe its origin to Bagg's case, on the other it has been traced back to the time of Edward III. and even earlier, to that of Edward I. (See Bac. Ab. tit. Mandamus A.; Lev. 23; Show. 263; Ca. Law & Eq. 53, 57; Palm. 51; Dyer, 333; Skinner, 293, pl. 3, 310, pl. 4. See also per Lord Mansfield in *Rex* v. *Askew et al.* 4 Burr. 2186, 2189.) But whatever may be the antiquity of this remedy, it is clear that its application upon distinct and well settled principles is, comparatively speaking, of late date. In the more ancient cases the grounds upon which a mandamus was granted or refused were not explicitly stated, but within the last century it has been liberally interposed for the benefit of the citizen and the advancement of justice. (Bac. Ab. Bouvier's ed. tit. Mandamus, introd. 3 Burr. 1267; 4 id. 2188; Cowp. 378.)

§ 2. No definition of mandamus has been given which is on the whole, more satisfactory than that of Sir William Blackstone. It substantially describes this writ as in general, a command issuing in the name of the sovereign authority from a superior court and directed to any person, corporation or inferior court of judicature, within the jurisdiction of such superior court, requiring them to do some particular thing therein specified which appertains to their office and duty. (3 Black. Comm. 110. See Bouvier's Law Dict. tit. Mandamus.)

§ 3. Let us now briefly consider where the authority to issue a mandamus is reposed. By the common law this writ was esteemed one of the flowers of the King's Bench, (per Doddridge, J. in *Audley* v. *Jay*, Poph. 176,) and peculiar to that tribunal, because of the general superintendence which it exercised over all inferior jurisdictions and persons. The king originally sat there in person and aided in the administration of the law. According to the theory of the English constitution the king is the fountain of justice, and where the laws did not afford a remedy and enable the individual to obtain his right, by the regular forms of judicial proceedings, the prerogative powers of the sovereign were brought in aid of the ordinary judicial powers of the court, and the mandamus was issued in his name to enforce the execution of the law. And although the sovereign has long since ceased to sit there, yet he is still present in construction of law so far as to enable the court to exercise its prerogative powers in his name; and hence its power to issue the writ of mandamus. It is therefore, evident, that by the principles of the common law, this power would not be incident to any court which did not possess the general superintending power of the Court of King's Bench, (*sed vid.* Vern. 175,) in

Fish v. Weatherwax.

which the sovereignty might by construction of law be supposed to sit, and to exert there its prerogative powers in aid of the court in order that a right might not be without a remedy. (Per Taney, Ch. J. in *Kendall* v. *The United States*, 12 Peters, 524, 630.) It may therefore be stated, as a general principle, that all those courts which bear the same judicial relation to the sovereign power of the state that the King's Bench does in England, have the authority to issue the writ of mandamus. In every well constituted government the highest judicial authority must necessarily have this supervisory capacity to compel inferior or subordinate tribunals, magistrates, and all others exercising public powers, to perform their duty. (*Strong, petitioner,* 20 Pick. R. 484, 495. *Howard* v. *Gage,* 6 Mass. R. 462, 463. 1 Grah. Pr. 3d ed. 315. *State* v. *Bruce,* 1 Const. Rep. S. Ca. 165, 174, 175. See *Commw.* v. *Commissioners of Lancaster,* 6 Binney, 5 ; *Commw.* v. *Judges of Common Pleas,* 3 Binney, 273 ; *The Same* v. *The Same,* 1 Serg. & Rawle, 187 ; *Morris* v. *Buckley,* 8 id. 211 ; *Kolb's case,* 4 Watts, 154 ; see also 9 Serg. & Rawle, 72, per Tilghman, C. J.)* The judiciary act of 1789, (§ 13,) express-

---

* By the Revised Statutes of New York, (vol. 2, 3d ed. p. 259, § 1,) "the supreme court shall possess the powers, and exercise the jurisdiction, which belonged to the supreme court of the colony of New York, with the exceptions, limitations and additions, created and imposed by the constitution and laws of this state." The jurisdiction of this court as it now exists, is traced to the ordinances of 1699 and 1704 ; by the latter of which, it is invested with full and ample power and authority to have and take cognizance of all pleas and causes, civil, criminal and mixed, and to hear, try and determine the same, as fully and absolutely to all intents and purposes, as the courts of king's bench, common pleas, and exchequer in England. (1 Grah. Prac. 3d ed. p. 304.) The provision of the constitution of 1846, (art. vi. § 3,) that there shall be a supreme court, having general jurisdiction in law and equity, in no respect changes the power of that tribunal to grant the writ of mandamus.

The Revised Statutes of Massachusetts (499, § 5,) provide that the justices of the supreme judicial court "shall have power to issue writs of error, certiorari, mandamus, prohibition and quo warranto, and all other writs and processes, to courts of inferior jurisdiction, to corporations and individuals, that shall be necessary to the furtherance of justice, and the regular execution of the laws."

The provision in the Statutes of Maine is very similar. It is that the supreme judicial court " shall have power to issue writs of error, certiorari, mandamus, prohibition, quo warranto, and all other processes and writs, to courts of inferior jurisdiction to corporations and individuals, which may be necessary for the furtherance of justice, and the due execution of the laws." (Rev. Stat. of Maine, 395, § 5.)

The Constitution of Missouri, of 1820, (art. v. § 3,) provides that " the supreme court shall have a general superintending control over all inferior courts of law. It shall have power to issue writs of habeas corpus, mandamus, quo warranto, certiorari, and other original remedial writs; and to hear and determine the same."

The Revised Statutes of Michigan enact that the supreme court " shall have authority to issue writs of error, certiorari, mandamus, habeas corpus, procedendo, supersedeas, and all other writs and process which may be necessary for the due execution of the law, the administration of right and justice, and the full and perfect exercise of its jurisdiction, and to have and determine thereon, according to the principles and usages of law." (R. S. of Mich. 358.)

In Ohio, the Act of February 7, 1831, gives to the supreme court power

Fish v. Weatherwax.

ly conferred upon the Supreme Court of the United States, to issue writs of mandamus in cases warranted by the principles and usages of law, to any courts appointed or persons holding office under the authority of the United States, but no similar provision was adoped in reference to the Circuit Courts. It might have been questionable, perhaps, had not this power been explicitly bestowed by statute, whether the former court would have been entitled to exercise it in those cases where it has only appellate jurisdiction, because a mandamus is an original and not an appellate process ; (*Daniel* v. *County Court*, 1 Bibb. 496 ; *Morgan* v. *Register*, Hardin, 609 ; *Daniel* v. *Warren County Court*, Hardin, 610, n. ; *Commw.* v. *Commissioners of Lancaster*, 6 Binney, 5 ;) but the latter court has original·cognizance concurrent with the courts of the several states of all suits of a civil nature, at common law or in equity, where the matter in dispute exceeds $500 and the United States are plaintiffs or petitioners ; or an alien is a party, or the suit is between a citizen of the state where the suit is brought and a citizen of another state. They have also jurisdiction in all cases in law or equity arising under the revenue laws of the United States, for which other provisions are not already made by law. (Acts of 24th Sept. 1789, § 11 ; id. 2d March, 1833, § 2.) Incidentally to this jurisdiction they have received power to issue all writs necessary for its exercise and agreeable to the principles and usages of law, (Act of 1789, § 14,) and in this general power the writ of mandamus is included. But when this writ is not necessary to the exercise of their jurisdiction it is forbidden, because the reason fails upon which the power to issue it depends. (*Mc Intire* v. *Wood*, 7 Cranch, 504. *McCluny* v. *Silliman*, 6 Wheaton, 349. *Smith* v. *Jackson*, Paine C. C. R. 453.)

It is obvious from the fact that the governments of the United States and those of the several states are distinct, that the one can exercise no authority

---

" to issue writs of habeas corpus cum causa, certiorari, mandamus, prohibition, procedendo, error, supersedeas, habeas corpus, ne exeat, and all other writs not specially provided for by statute, which may be necessary to enforce the due administration of right and justice throughout the state, and for the exercise of its jurisdiction, agreeably so the usages and principles of law."

In Pennsylvania the supreme court has the power to grant mandamus. The Stat. of 16th June, 1836, provides that " besides the powers hitherto possessed by the supreme court, to issue writs of mandamus, the said court shall have power to issue such writs to any other court or tribunal constituted by the authority of the laws of the commonwealth, in all cases where such interposition shall, in the discretion of the said court, be necessary to the advancement and due administration of justice ;" and this power is also extended to the courts of common pleas :—" The several courts of common pleas, the president judge being present, shall, within their respective counties, have the like power with the supreme court, to issue writs of mandamus to all officers and magistrates, elected or appointed, in or for the respective county, or in or for any township, district, or place within such county, and to all corporations, being or having their chief place of business within such county. The jurisdiction aforesaid, shall be exercised in the manner, and according to the rules, hitherto observed and practised in the supreme court of this commonwealth, except so far as the same shall be altered by this act." (Act of June 14, 1836.)

See the New Jersey Statute, Elmer's Dig. 320.

over the inferior tribunals, officers, or persons of the other. And therefore a state court cannot issue a mandamus to an officer of the United States, as a register of the land office, to compel him to perform any act. (*McCluny* v. *Silliman*, 6 Wheaton, 598, 604.)

§ 4. The writ of mandamus has been termed a *prerogative* writ, because regularly it issues only in cases relating to the public and to the government, (Bac. Ab. tit. Mandamus A.) but perhaps a better reason why it was so called is to be found in the fact that it issued by the special power, pre-eminence, or privilege which the king exercised over and beyond other persons, and above the ordinary course of the common law in right of his regal dignity. (See Jac. Law Dic. tit. Prerogative ; 1 Black. Comm. 239 ; *Rex* v. *Barker*, 1 Wm. Black. 352.) And inasmuch as this writ was theoretically extended to the subject by the prerogative of the sovereign, in the proper exercise of which he could not be controlled, it was of necessity *discretionary* in its character and liable to be granted or refused as he might see fit. Nor has this theory been changed in its application to the judicial system of our own country, but such discretion resides in those tribunals that issue this writ, in the same manner that it did in the king or the court of King's Bench where he was constructively present. It is true that mandamus has been called a writ of right, (Bac. Ab. tit. Mandamus A. id. intro. id. D.) but this was long since questioned ; (per Ashhurst, J. in *Rex* v. *Commrs. of Excise*, 2 T. R. 381, 385 ;) and it is now well settled that the writ is discretionary, and that this discretion will not be exercised unless some just or useful purpose may be answered thereby.   (*Ex parte Fleming*, 4 Hill, 582, 583, 584. *Van Rensselaer* v. *Sheriff of Albany*, 1 Cowen, 501, 512. *Corporation* v. *Paulding*, 4 Martin, N. S. 189. *Rex* v. *Clear*, 4 Barn. & Cresw. 899. *Rex* v. *Mayor, &c. of Totness*, 5 Dowl. & Ry. 481. *Rex* v. *Griffiths*, 5 Barn. & Ald. 731, per Bailey, J.) But although it is discretionary in the court to grant or refuse this remedy, yet this discretion is not merely arbitrary and capricious, but on the contrary is regulated by certain rules and principles of law, (which we shall hereafter consider,) in order that every citizen who can show clearly to the satisfaction of the court that he has such a right as the law ought to protect and vindicate, without any other specific remedy of which he can legally avail himself, may be legally entitled to the aid of this process. (See per Brevard, J. in *The State* v. *Bruce*, Con. Rep. S. Ca. 165, 176.)

§ 5. We have seen that the courts exercise their discretion in granting this writ, and that it is not from hence to be inferred that this discretion is arbitrary in its character and irrespective of general rules of law, which have been dictated by experience and incorporated into our system of judicature. On the contrary, we shall find that a number of leading principles in regard to the granting of mandamus, have received the sanction of the common law and are therefore uniformly to be regarded. And

I. It may be generally stated that a mandamus is granted only to enforce a *public* right or a *public* duty. (Bac. Ab. tit. Mandamus C. Com. Dig. tit. Mandamus A. 3 Black. Comm. 110. 1 Chitt. Genl. Pr. 789.)

Fish v. Weatherwax.

In the first place, such a right or duty must depend upon the public character of the *person* sought to be commanded. If he be a mere private person owing no peculiar duty to the public, the writ will not lie. Therefore, where a mandamus issued commanding a party who was alleged to have custody of certain books, papers and proceedings, relating to a court of requests, (under a local act, 47 Geo. III. sess. 2, ch. 1,) or to the office of the clerk thereof, to deliver them up to a party who claimed to hold them as having been elected clerk to the court, it was held that the mandamus was bad, as not showing that the detainer was other than by a *private* individual. (*The Queen* v. *Hopkins et al.* 1 Queen's Bench R. 161.) And again, in the second place, such a right or duty must depend upon the public character of the *act* sought to be enforced. This remedy therefore does not extend to any right or duty simply of a private nature and totally unconnected with any of the purposes of public government. Thus, for example, where an application was made for a rule *nisi* for a mandamus to a private trading corporation, to compel them to permit a transfer to the assignees of a bankrupt of some shares of capital stock which stood in his name, and which had been refused, the court said, " We are not aware of any instances of a mandamus like the present having ever been granted, and if we were to grant this, we should be called upon to interfere in all cases of dispute between the members of private corporations. This company, though carried on under a royal charter, is a mere private partnership. But the writ of mandamus is a high prerogative writ, and is confined to cases of a public nature, the rule therefore must be refused." (*Rex* v. *The London Assurance Co.* 5 Barn. & Ald. 899 ; 1 Dowl. & Ry. 510.) And, accordingly, where a mandamus was asked to the Bank of England to compel the directors of that corporation to produce their accounts for the purpose of declaring a dividend of the profits, Abbott, C. J. said, " It is, in effect, an application on the behalf of one of several partners, to compel his co-partners to produce the account of profit and loss, and to divide their profits, if any there be. The examination of the accounts of a trading company may be effectually entered into in the Court of Chancery, but this court is a very unfit tribunal for such a subject. A mere trading corporation differs materially from those which are intrusted with the government of cities and towns, and therefore have important *public* duties to perform. No instance has been cited in which the court has granted a mandamus to a corporation like the present, and I think we ought not now to establish the precedent." And Bayley, J. said, " The court never grant this writ except for *public purposes*, and to compel the performance of *public* duties. This is an application at the instance of one of several partners in a trading company to compel his co-partners to divide their profits ; but that is a mere *private* purpose and presents a fit subject for inquiry on the other side of the hall. There is no instance in which the court have granted a mandamus to a trading corporation ; and that being so, I think that we should not now grant it for the first time." (*Rex* v. *Bank of England*, 2 Barn. & Ald. 620.) The language of the court is to the same effect in the *Matter of Morris Shepley et al.* v. *The Mechanics' Bank*, 10 Johns. R. 485. (See also *Rex* v. *Bank of Eng-*

Fish v. Weatherwax.

*land,* Doug. 524; *Van Rennselaer* v. *Sheriff of Albany,* 1 Cowen, 501, 512; *Anon.* 2 Ld. Raym. 485; *Rex* v. *Merchant Tailors Co.* 2 Barn. & Ald. 115.)

§ 6. Upon the principle that the act sought to be commanded is not of a public character, a mandamus will be refused to compel an admission to an office or service of a private nature. Clerk to a dean and chapter has been decided to be of this character; " his office being only to enter leases granted, &c., and therefore he hath no more to do with the public than the bailiff of a manor." (Comb. 133.) So has proctor in the spiritual court, (3 Mod. 335; Bac. Ab. tit. Mandamus C.) surgeon to a hospital, (Comb. 41; 7 Mod. 118, S. P. ;) master of the Lord Mayor's water house, (Vent. 143 ;) clerk of the Butchers Company, (6 Mod. 18; 2 Ld. Raym. 959, 1004 ;) and approver of guns to the Gunsmiths Company, (6 Mod. 82; 2 Ld. Raym. 989; Comb. 347; though these cases have been questioned ; Bac. Ab. tit. Mandamus C.) The office of vestry clerk has also been adjudged within this rule in *Rex* v. *Churchwardens of Croyden,* (5 T. R. 713,) where Lord Kenyon remarks, " This office is merely of a private nature ; and if a mandamus were to be granted to restore to the office of vestry clerk, I should soon expect to hear of an application for a mandamus to restore to the office of a toll-gate keeper of a turnpike road." (See also *State ex rel Gruber* v. *Champlin, Same* v. *Hunt et al.* 2 Bailey R. 220 ; Bac. Ab. tit. Mandamus C. 1.)

§ 7. II. The right or duty in respect of which the remedy by mandamus is sought, must be of a *legal* character. (See the opinion of Yeates, J. in *Commw.* v. *Rosseter,* 2 Binney, 262; *State* v. *Bruce,* Const. R. S. Ca. 165, 175.) The established rule of law is that there ought, in all cases, to be a specific legal right as well as the want of a specific legal remedy. (Id.) Upon this principle the court of King's Bench refused a motion to direct this writ to Dr. Bettesworth, commanding him to grant administration to Smith of the goods of his deceased son *durante minore œtate* of his grandson. And they observed, " When we grant mandamus it is to oblige the judge to do right to the party who sues the writ; but as there is no law which says to whom these administrations during minority shall be granted, there is no law to be put in execution." (*Smith's case,* 2 Strange, 292. See *Rex* v. *Bettesworth,* id. 956.) And the same court held that this writ would not lie to the Archbishop of Canterbury, to issue his fiat to the proper officer for the admission of a doctor of civil law, a graduate of Cambridge, as an advocate of the court of arches, because no such right or duty exists. (*Rex* v. *Archbishop of Canterbury,* 8 East, 213.)

§ 8. III. The right or duty must be perfect and not inchoate. (*The People* v. *The Trustees of Brooklyn,* 1 Wend. 318.)

§ 9. IV. It is a rule of general application (though not without exceptions to which we shall hereafter allude) that where there is any *other specific* remedy for the party complaining, the writ of mandamus will not lie. If therefore an appeal or writ of error can be brought for the purpose of deciding the question presented upon the application for mandamus, the court will leave the party to that remedy. (Carthew, 16 ; *Prohurst's case,* Andr.

177.) And the reason of this is clear, for notwithstanding any opinion expressed upon the mandamus, the case might still be brought before the court upon a writ of error. The effect therefore of this mode of interposition would be to retard decisions upon questions which were not final in the court below, so that the same cause might come many times before the superior court before there would be a final judgment. (Per Marshall, C. J. in *Bank of Columbia* v. *Sweeny*, cited *infra*. See *Rex* v. *Lincoln's Inn*, 4 Barn. & Cresw. 855; *Rex* v. *Street*, 8 Mod. 98; 2 Chitty, 255.) In accordance with this principle, where a district judge had decided that the custody of goods proceeded against after a seizure by the collector of the port of New York, was in the marshal of the district, after process had issued by order of the court against the goods, and a mandamus was asked, of the Supreme Court of the United States, to show that such custody was to continue in the collector of the port, it was denied. Story, J. who delivered the opinion of the court observing, "We are of opinion that this is, in no just sense, a case for a writ of mandamus. This court has authority given to it by the thirteenth section of the judiciary act of 1789, ch. 20, to issue writs of mandamus in cases warranted by the principles and usages of law to any courts appointed under the authority of the United States. The present application is not warranted by any such principles and usages of law. It is neither more nor less than an application for an order to reverse the solemn judgment of the district judge, in a matter clearly within the jurisdiction of the court, and to substitute another in its stead. Now a writ of mandamus is not a proper process to correct an erroneous judgment or decree rendered in an inferior court. That is properly matter which is examinable upon a writ of error or an appeal, (as the case may require,) to the proper appellate tribunal. Neither can this court issue the writ upon the ground that it is necessary for the exercise of its own appellate jurisdiction; for the proper appellate jurisdiction, if any in this case, is direct and immediate to the Circuit Court for the southern district of New York." (*Ex parte Jesse Hoyt*, 13 Peters, 279, 290.) So where a mandamus was moved to be directed to the Circuit Court for the County of Washington, commanding them to strike off a plea which they had permitted the defendant to put in, and to compel him to enter another plea which the plaintiff's counsel deemed the proper plea, under the provisions of an act of the Legislature of Maryland, upon which the proceedings were founded, incorporating the Bank of Columbia, the motion was denied. Chief Justice Marshall remarking, "We think this is not a proper case for a mandamus. It does not differ in principle, from any other case in which the party should plead a defective plea, and the plaintiff should demur to it; in which case, there is no doubt that the revising power of this court could be exercised only by a writ of error." (*The Bank of Columbia* v. *Sweeny*, 1 Peters, 567, 569.) So where a mandamus to the Circuit Court of the eastern district of Louisiana was moved, the petition stating " that a bill in equity is now pending in the said circuit court, in which the petitioner is plaintiff, against Richard Relf and others, defendants; that it is understood to be the settled determination of the district judge not to suffer chancery practice to prevail in the circuit court; that her right to proceed in her suit has been denied, until she shall cause

Fish v. Weatherwax.

copies of her bill'in the French language to be served upon the defendants or some of them, and until she shall file documents, which are not made exhibits in the cause; and then that all further proceedings in the cause shall be in conformity with the existing practice of the court, which existing practice is understood to mean the practice prevailing in the court in civil cases generally, in disregard of the rules established by the Supreme Court to be observed in chancery cases;" the motion was-denied the court observing: " That it is the duty of the Circuit Court to proceed in this suit according to the rules prescribed by the Supreme Court for proceedings in equity causes at the February term thereof, A. D. 1822, can admit of no doubt. That the proceedings of the district judge, and the orders made by him in the cause, which are complained of, are not in conformity with those rules, and with chancery practice, can admit of as.little doubt. But the question before us is not as to the regularity and propriety of those proceedings, but whether the case before us is one in which a mandamus ought to issue. And we are of opinion that it is not such a case. The district judge is proceeding in the cause, however irregular that proceeding may be deemed; and the appropriate redress, if any, is to be' obtained by an appeal after the final decree shall be had in the cause. A writ of mandamus is not the ' appropriate remedy for any orders which may be made in a cause by a judge in the exercise of his authority, although they may seem to bear harshly or oppressively upon the party. The remedy in such cases must be sought in some other form." (*Ex parte Myra Clark Whitney*, 13 Peters, 404, 407, 408.) In accordance with these principles it has been held that where, on a replevin bond to prosecute a suit in replevin in another state, the plaintiff took judgment for the penalty, nominal damages and costs, and the defendant paid the nominal damages and costs, and applied to a subordinate court for an order that satisfaction be entered, this court refused a mandamus to compel the entry of satisfaction ; (*Ex parte Livingston* v. *Superior Court of New York*, 10 Wend. 545 ;) and where a court of common pleas gave judgment for damages only, it was held that this remedy would not lie to compel them to give judgment for the costs likewise; (*Jansen* v. *Davison*, 2 Johns. Cas. 72 ;) nor will it lie to compel a subordinate court in which an action is pending, to set aside a report of referees on the ground that it is contrary to law ; (*The People* v. *The Superior Court of New York*, 18 Wend. 675 ;) nor to dismiss an appeal alleged to be improperly entered and sustained; (*Jones* v. *Allen*, 1 Green, 97 ;) for in all these cases the party has an adequate remedy by writ of error or some proceeding in that nature. (The principle under consideration is also maintained in *The People* v. *The Judges of Ulster*, Coleman C. 117 ; *Ex parte Koon et al.* 1 Denio, 644 ; *Fuller* v. *The Oneida Common Pleas*, 21 Wend. 20 ; *Ex parte Nelson*, 1 Cowen, 417 ; *Ex parte Bostwick*, id. 143 ; and in *The State* v. *Mitchell, Ordinary*, Const. Rep. S. C. 703 ; which was an application for a mandamus to be directed to the defendant, to compel him to grant letters of administration to certain persons, and was denied upon the ground that a remedy by appeal was provided by statute. See also *Chase* v. *The Blackstone Canal Co.* 10 Pickering, 244 ; *Gaines et al.* v. *Relf et al.* 15 Peters, 9, 16 ; *Warren County Court* v. *Daniel*, 2 Bibb, 573 ; *Ex parte*

Fish v. Weatherwax.

*Nelson,* 1 Cowen, 423.   Consult also upon this subject 1 Graham's Prac. 3d ed. 316, *et seq.*

§ 10. It is, however, within the power of an inferior tribunal to prevent a party from availing himself of a writ of error by refusing to give judgment, and in that case the remedy by mandamus may be pursued; for otherwise he would have no redress. (*Ex parte Bostwick,* 1 Cowen, 143, 144.)   Thus if a subordinate court set aside a report of referees because it conceives that upon the facts found by the referees, the law is against the plaintiff in whose favor the report is made, and if, after the intimation of such opinion, the court refuse upon the application of the plaintiff to render judgment against him, so that he may bring error, *it seems* that a mandamus would be ordered requiring the prayer of the plaintiff to be granted. (*The People* v. *The Superior Court of New York,* 19 Wend. 68; *Rex* v. *Gray's Inn,* Dougl. 524; *Rex* v. *Lincoln's Inn,* 4 Barn. & Cresw. 855.)

§ 11. Upon the same general principle if the party aggrieved have a remedy by action to maintain his right, a mandamus will not issue; or if it have been issued it will be quashed.   Where, therefore, this writ had been granted, commanding a party who was alleged to have custody of certain books, papers, and proceedings relating to a court of requests, (under a local act, 47 Geo. III. sess. 2, ch. 1,) or to the office of the clerk thereof, to deliver them up to a party who claimed to hold them as having been elected clerk to the court; Patteson, J. objected upon the argument that the party in whose legal custody they had been might maintain trover. (*Regina* v. *Hopkins et al.* 1 Q. B. 161, 168.)   And where an alternative mandamus had been issued to compel the trustees of Brooklyn, to procure the report of commissioners of estimate and assessment, appointed in relation to the opening of Adams Street, to be filed with the clerk of the common pleas of Kings, to the end that the same might be confirmed by the court, or to show cause why, &c., Savage, Ch. J. said: "If the relators have a right to the amount assessed in their favor, by virtue of the assessment alone, then an action lies." (*The People* v. *The Corporation of Brooklyn,* 1 Wend. 318, 325.)   Accordingly where a mandamus was moved to compel the supervisors of the city and county of New York, to audit and allow the salary of an associate judge of the general sessions, it was denied because an adequate remedy by action existed under the statute of May 14th, 1840. (*Ex parte Lynch,* 2 Hill, 45, 47.   See also *Ex parte Lynch,* id. 46, n. *a.*)   So it was denied where one was moved to the company of an incorporated bank, commanding them to permit certain shares in the capital stock, standing in the name of Kip on the books of the company, to be transferred on the books, Kip having become insolvent and duly assigned all his estate; because when a corporation improperly refuses to transfer stock the party injured has an ample remedy by action. (*Shipley* v. *The Mechanics Bank,* 10 Johns. 484.   *Ex parte The Firemens Ins. Co.* 6 Hill, 243.   *Kortright* v. *Buffalo Commercial Bank,* 20 Wend. 91.   22 id. 348, S. C. in error.   See also *Rex* v. *Bank of England,* Doug. 524; *Rex* v. *The London Assurance Co.* 5 Barn. & Ald. 899.)   And for the same reason

Fish v. Weatherwax.

one moved to compel the clerk of the parish to give the petitioner a certifi-
cate of his having become a member of the parish, in order that he might
file it with the clerk of the religious society which he wished to leave;
(*Oakes, Petitioner, &c.* v. *Hill*, 8 Pick. 47;) and one to oblige the trustees
of an incorporated church to restore the prosecutor to the possession of a
pew to which he claimed title, (*Commw.* v. *Rosseter*, 2 Binney, 360,) were
refused. And where a recovery in an action for a tort had been assign-
ed; and the nominal plaintiff had acknowledged satisfaction of record, but
the court in which the suit was prosecuted refused to vacate the entry of sat-
isfaction: the S. C. denied a mandamus directing a vacatur; holding that
the proper remedy was by action against such plaintiff. (*The People* v.
*Tioga, C. P.* 19 Wend. 73. See generally upon this subject, *People ex rel.*
*Meritt* v. *Lawrence*, 6 Hill, 244; *The Same ex rel. Hodgkinson* v. *Ste-
vens*, 5 id. 616, 629; *Ex parte Braudlacht*, 2 id. 367, 369; *Comm. of the Poor
of St. Paul's Parish* v. *Lynch*, 2 McCord, 170; *Rex* v. *The Free Fishers, &c.
of Whitstable,* 7 East, 353; *Rex* v. *Archbishop of Canterbury*, 8 East, 219;
*Rex* v. *Severn & Wye Company*, 2 Barn. & Ald. 646; *Rex* v. *Margate Co.*
3 id. 224; *Rex* y. *Haythorne*, 5 Barn. & Cresw. 422, 429; *Rex* v. *Stamforth
Canal Co.* 1 Maule & Selw. 32; *Rex* v. *Street*, 8 Mod. 98; 2 Chitt. Rep. 255.)

§ 12. A few other cases will now be stated for the purpose of illustrating
the broad application of the rule under consideration. "Though a mandamus
to admit to an office gives no title, yet it will not be granted, when there is
an officer *de facto*, though that officer be in under a peremptory mandamus
obtained by collusion, and claim under the same election with the applicant;
for the remedy is to try the title of the officer *de facto* on an information in
the nature of a *quo warranto*, on which if judgment of ouster go against the
the defendant, a mandamus may be granted with less inconveniency to the
corporation; nor will it be granted to admit to office the candidate therefor,
on account of improper votes having been received for one who was declared
elected, had accepted the office, and made the requisite declaration." Angel
& Ames on Corp. 3d ed. 639. A mandamus to a mayor to admit one to the
office of recorder was refused because there was a recorder *de facto*, and
it was therefore a decisive answer to the application that there was another
remedy by an information in the nature of a *quo warranto*, by which the
title of the officer in possession could be tried. (*Rex* v. *Mayor of Colchester*,
2 Term R. 259.) So one was refused to a treasurer of a county to compel
him to reimburse constables' money expended by them, for conveying and
maintaining rogues and other idle and disorderly persons, under the act of 17
Geo. II. because the quarter sessions had jurisdiction in the matter. (*Rex* v.
*Earle*, 2 Burr. 1197.) So of one to a bishop to compel him to license a curate
of an augmented curacy where there was a cross nomination, for the party
had a specific legal remedy by *quare impedit.* (*Rex* v. *Bishop of Chester*, 1
T. R. 396. See *Rex* v. *Turner*, T. Jones, 215. "If *quare impedit* does lie, man-
damus does not." Per Lord Mansfield in *Powel* v. *Milbank*, id. 399, 401, n. *d*;
which overrules *Clarke* v. *The Bishop of Sarum*, 2 Str. 1082; Andr. 20, 185,
and the cases there cited. See also *Rex* v. *Marquis of Stafford*, 3 T. R. 646.)
Upon this principle, and for the reason that the ecclesiastical tribunals could

Fish v. Weatherwax.

dispose of the subject, a mandamus was refused to try the right to bury in a churchyard in an iron coffin, though this mode was new, peculiar, and perhaps questionable in its propriety. (*Rex* v. *Coleridge*, 2 Barn. & Ald. 806 ) But (in regard to offices) though an office be full, still if *quo warranto* does not lie, a mandamus will be granted upon the principle that the party shall not be without a remedy. (*Rex* v. *Barker*, 3 Burr. 1265. *Rex* v. *Colchester*, cited *supra*. *People* v. *The Corporation of New York*, 3 Johns. Cas. 79. *The People* v. *Stevens*, 5 Hill, 616. *Commonwealth* v. *The Commissioners of Philadelphia*, 5 Rawle, 75. Angel & Ames on Corp. 3d ed. 639.)

§ 13. It has been before remarked that the general rule under consideration is not without exceptions. These arise from the nature of the remedy which is required to exclude the application of the writ of mandamus. Such a remedy must be adequate, specific, legal; (per Lee arg. in *Marbury* v. *Madison*, 1 Cranch, 137, 152 ; *King* v. *Bishop of Chester*, 1 T. R. 404, per Buller, J. ;) and competent to afford relief to the applicant therefor upon the very subject matter of his application. Therefore it has been said, that though the party have another legal specific remedy, yet if it be obsolete ; (per Buller, J. 1 T. R. 404, in *Rex* v. *The Bishop of Chester*, Bac. Ab. tit. Mandamus, intro.; *The State* v. *Holliday*, 3 Halst. 205 ; see however per Nelson, J. 10 Wend. 396. in *The People* v. *The Mayor of New York* ;) or extremely tedious (per Yeates, J. in *Commw.* v. *Rosseter*, 2 Binney, 262 ; *sed vide* 10 Wend. 396 ;) this writ will lie, since in such case it is inadequate to do justice. And upon the same general principle it has been held that neither a remedy by criminal prosecution ; (per Abbott, Ch. J. in *Rex* v. *Severn & Wye Railway Co.* 2 Barn. & Ald. 646 ; *Rex* v. *Commissioners of Dean Enclosure*, 2 Maule & Selw. 80, 81 ; Cases of Mag. 88 ; *The People* v. *The Mayor, &c. of New York*, 10 Wend. 393, 396 ; *The State* v. *Holliday*, 3 Halst. 205 ; Bac. Ab. tit. Mandamus, intro. ; 1 Chit. Genl. Pr. 791, n. *m* ;) nor by an action on the case for neglect of duty ; (*Ex parte Lynch*, 2 Hill, 45 ; per Bronson, J. in *McCullough* v. *The Mayor, &c. of Brooklyn*, 23 Wend. 461 ;) will supersede that by mandamus, since it cannot compel a specific act to be done, and is therefore not equally convenient, beneficial and effectual. (See Bac. Ab. tit. Mandamus C.; 4 Mod. 281 ; Comb. 244 ; *Knipe and Edwin*, Ld. Raym. 159, 163, 338, 561, 958, 989, 1004 ; 10 Mod. 146 ; 12 Mod. 609, 666 ; Fitzgib. 123, 194.) Nor will a remedy in equity prevent the granting of a mandamus, though it may and should influence the court in the exercise of the discretion which they possess, in granting the writ under the facts and circumstances of the particular case. (*The People* v. *The Mayor, &c. of New York*, 10 Wend. 393, 397. *The State* v. *Holliday*, 3 Halst. 205. Bac. Ab. tit. Mandamus, intro. But see *The King* v. *The Company of Free Fishers, &c. of Whitstable*, 7 East, 353, per Laurence, J.)

§ 14. V. The right or duty in respect of which the writ of mandamus is prosecuted must be positive and not resting merely in discretion.

It is obvious that this writ can not lie to compel a subordinate officer or tribunal to do an act which he has a discretion to refuse. Nor, where an au-

thority to *determine* or *give judgment* is lodged in either, can it be employed to direct the particular judgment or determination which shall be pronounced, though, as we shall presently see, it is a competent remedy to oblige such officer or tribunal to pronounce *some judgment* and thus discharge the duty appertaining to his station. (*The People* v. *Collins*, 19 Wend. 56. *The People* v. *The Superior Court of the City of New York*, 5 Wend. 114. *Elkins* v. *Athearn*, 2 Denio, 192. *Ex parte Koon*, 1 Denio, 644. *Ex parte Wilson*, 1 Cowen, 417. *The People* v. *The President and Trustees of Brooklyn*, 1 Wend. 318. *Hull* v. *The Supervisors of Oneida*, 19 Johns. 259. *Ex parte Benson*, 7 Cowen, 363. *In the matter of Gilbert*, 3 Cowen, 59. *Ex parte Coster*, 7 Cowen, 523. *The People* v. *The Columbia Common Pleas*, 1 Wend. 297. *Ex parte Bacon*, 6 Cowen, 392. *Ex parte Bailey*, 2 Cowen, 479. *Ex parte Chamberlain*, 4 Cowen, 49. *The People* v. *The Superior Court, &c.* 10 Wend. 285. *Ex parte Brown*, 5 Cowen, 31. *The People* v. *The Supervisors of Albany*, 12 Johns. 414. *Grier* v. *Shackelford*, 2 Tr. Con. Rep. 642. *Commrs. of Poor, &c.* ats. *Lynch*, 2 McCord, 170. *State* v. *Gruber*, 2 Bailey, 20. *Griffith* v. *Cochran*, 5 Binney, 87, 103. *Commw.* v. *Judges of Comm. Pleas*, 3 Binney, 275. *Commw.* v. *Cochran*, 6 Binney, 456. *Commw.* v. *The County Commrs, &c.* 5 Binney, 536. *Commw.* v. *The Judges of the Common Pleas*, 1 Serg. & Rawle, 187. *Commw.* v. *Cochran*, 1 Serg. & Rawle, 473. *Wells* v. *Starkhouse*, 2 Harrison, 355. *Blanchard's case*, 3 Green, 22. *Vanderveer* v. *Conover*, 1 Harrison, 271. *Roberts* v. *Holsworth*, 5 Halst. 57. *Squire* v. *Gale*, 1 Halst. 157. *Chase* v. *The Blackstone Canal*, 10 Pick. 244. *Gray* v. *Bridge* 11 Pick. 189. *Morse, petitioner*, 18 Pick. 443. See also *Truesdell* v. *Wheeler*, 2 Aiken, 369 ; *Frisbie* v. *Justices*, 2 Vir. Cas. 92.)

What is meant by the *discretion of inferior officers or tribunals*, will be best ascertained by adverting to a few of the cases in which that language has been used. In the case of *The People, ex rel. Wilson* v. *The Supervisors of Albany*, (12 Johns. 414,) the relator Wilson was a constable, and in that character had removed certain paupers from the city of Albany to the adjoining towns ; for which services he presented an account of $102 to the supervisors. They examined the account, and allowed $28 thereof, and disallowed the rest, on the ground that it was extravagant and unreasonable. The court refused an application for a mandamus to the supervisors, on the ground that the constable had no legal right to any particular sum, the act under which the services were performed having declared that he should be paid such sum as the supervisors of the county *should judge reasonable ;* and it was asked, if a mandamus should be granted, what would be its command ? certainly not to allow any specific sum ; that would be assuming a discretion which the legislature had vested in the supervisors. The superior tribunal could only command them to examine the account, and, in the language of the statute, allow such sum as they should judge reasonable. In *Giles' Case*, (2 Strange, 881,) a mandamus was asked to certain justices to grant him a license to keep an ale-house. The court refused it on the ground that the justices had a discretion to grant or refuse a license to whom they pleased, and observed that such an application was never made before. (Salk. 45. 1 Burr. 556.) In *Ex parte Bacon & Lyon*, (6 Cowen, 392,)

the court below had set aside a regular default, and let the defendant in to plead on payment of costs. The plaintiff moved the court above for a mandamus to the common pleas to vacate that rule. It was observed that " the common pleas must be their own judges, upon the circumstances before them, whether they will set aside a default. *The granting or refusing of such an application is governed by no fixed principles.* No positive rule of law has been violated by the court below, nor can we fix bounds to their discretion upon the subject." In *Ex parte Benson*, (7 Cowen, 363,) a motion had been made against the relator in the court below and taken by default, his attorney being absent. The court refused to open the default, and an application was made to this court for a mandamus. The mandamus was refused, on the ground that it was a mere matter of discretion with the court whether they would open the rule or not; that so far as the rules of practice in inferior courts rest in discretion and violate no rules of law, the S. C. would not interfere with them. In *Ex parte Baily*, (2 Cowen, 479,) a motion was made in the court below for a new trial on various grounds, and among others that the verdict of the jury was against the weight of evidence. The motion was refused, and upon an application for a mandamus, the supreme court observe, "that though in extreme cases we might interfere, and control inferior courts upon questions of fact, presented in the form of a motion for a new trial, yet it is a remedy which should be used very sparingly. A contrary course would draw before that court an examination of those questions which address themselves merely to the discretion of the inferior court. We "should be perpetually appealed to for the adjustment of rights undefined by law. This would result in an endless conflict of opinion upon questions, which must from their very nature be finally determined by the court below, because they cannot be reached by the rules of law; and although we may think the inferior court erred, yet we will not interfere. Extreme cases may be supposed, which form exceptions to this doctrine ; as where an action is brought on a promissory note, the execution of which is proved beyond all doubt, and yet the jury find against it, should the court below refuse a new trial, we might interfere : but in ordinary cases it would be improper; for even where a verdict is plainly against law, yet a new trial may in many cases properly be denied, as if the controversy be very trifling in its nature or insignificant in amount. These cases sufficiently indicate the nature of the discretion, the exercise of which by inferior tribunals or officers this court will not undertake to regulate or coerce. It is that discretion which is not and cannot be governed by any fixed principles or rules." (Per Sutherland, J. in *The People* v. *The Superior Court of New York*, 5 Wend. 114, 123, 124.) We shall hereafter examine the application of this rule to particular cases when we come to consider in detail how far the remedy by mandamus may be extended to control inferior officers and tribunals.

§ 15. VI. A mandamus will not be issued unless the party against whom it is sought has refused to perform his duty, or by some act equivalent to a refusal manifested such an intention.

Upon this principle where by an act establishing a canal company, it was provided, that certain landholders might call upon them by notice, as direct-

Fish v. Weatherwax.

ed in the act, to execute certain works, communicating with the company's canal and railways; and that, if the company should refuse for six months after such request, the applicants might themselves perform the works in the same manner as the company might have done them. An application being made to the company under this clause, they answered that they would do the works themselves; but they delayed proceeding, and, on remonstrance, gave as a reason, that the proposed operation would interfere with the property of other parties, who were likely, if so disturbed, to bring an action. The company offered nevertheless to proceed if indemnified. The applicants, in answer, stated that they considered the excuse insufficient, and did not understand how they could be expected to indemnify. Six months had at this time elapsed since the original application. The works not being done, a mandamus was applied for. It was held that the writ could not issue, it not appearing from the above facts that, after the consent given by the company to execute the works, there had been any express demand and refusal of performance, or any conduct on the company's part equivalent to such refusal. (*The King* v. *The Co. of the Brecknock and Abergavenny Canal Nav.* 3 Adol. & Ellis, 217. 4 Nev. & Man. 871. 1 Har. & Woll. 279.) And where by statute, incorporating a canal company, the affairs of the company were to be managed by a committee, who were authorized to appoint a clerk for better carrying into execution the purposes of the act. The committee were required to enter in books an account of their disbursements, receipts, and transactions, and the books were to be open at all seasonable times to the inspection of the proprietors. A proprietor applied to the clerk for an inspection of the books which were under his charge. The clerk said he would refer the demand to the committee. The proprietor attended the committee, and there repeated his request; and the chairman said they would take time to consider it. Ten days afterwards the proprietor applied again to the clerk, who refused the inspection. On motion for a mandamus to the company to allow inspection of the books; it was held that there had been no sufficient refusal by the committee to warrant the application. (*The King* v. *Proprietors of the Wilts and Berks Canal Nav.* 3 Adol. & Ellis, 477.

§ 16. VII. Nor will this writ be granted where the party applying has slept upon his rights. (See 1 Chitt. Genl. Prac. 791; 1 Grah. Prac. 3d ed. 324.)

Therefore where a plaintiff in a suit which had been carried up by appeal to the Delaware Common Pleas was nonsuited, and five years afterwards application was made to the common pleas to quash the appeal for a defect in the appeal bond, which was refused, the court said, that although the bond· was palpably bad, and were the proceedings still *pendente·lite* in the common pleas, an alternative mandamus would be awarded, yet after the lapse of five years subsequent to the final decision of the cause they deemed it inexpedient to interfere. (*The People ex rel. Phelps* v. *Delaware Common Pleas,* 2 Wend. 256.) And upon the same principle where allotments were set out under an inclosure act to a party claiming them, and possession given in or about 1817, and there was no road to them, nor any access but through allotments made or land sold under the act to other persons, on motion, twelve

Fish v. Weatherwax.

years afterwards (viz. in 1829,) for a mandamus to the commissioners (who had not yet published their award) to set out an occupation road to the first mentioned allotments, the court held that the application came too late : and Bailey, J. mentioned a case, (*The King* v. *The Stainforth and Keadley Canal Company*, 1 M. & S. 32,) where a motion was made in 1813, for a mandamus, directing the commissioners under a canal act to cause a jury to be summoned and compensation assessed for lands taken in 1799, and the court said the application came too late. (*Rex* v. *Commissioners of Cockermouth Inclosure Act*, 1 Bar. & Adol. 378, 380.) And where the relator recovered a judgment before a justice against a constable and his sureties, the former having made himself liable in relation to an execution issued on a judgment in favor of the relator against J. Knox, S. Scutt and J. Stark. The defendants appealed. On the trial of the cause in the common pleas, in February, 1828, it was discovered that the justice, in stating the demand of the plaintiff, had stated that the action before him was brought on a judgment against J. Knox and S. Scutt, omitting the name of J. Stark. The common pleas permitted the plaintiff to withdraw a juror, and the plaintiff on the next day applied for a rule that the justice amend his return, which the court refused, and directed the defendant's attorney to empannel a jury, on the ground that they had erred in allowing the plaintiff to withdraw a juror without the consent of the defendants. A jury was empannelled, who, under the directions of the court, found a verdict for the defendants. The plaintiff excepted to the opinions of the court, and brought a writ of error ; but being advised that a mandamus and not a writ of error was the proper remedy, he accordingly applied for a mandamus, directing the common pleas to set aside the verdict and judgment rendered thereon, and to grant the rule for an amendment of the return of the justice. The court denied the motion observing, " here has been a delay of a year since the happening of the errors complained of, and the fact of the party's having been advised that his remedy was by writ of error, furnishes no excuse. This court will not by mandamus disturb proceedings in which parties have so long acquiesced." (*The People ex rel. Beach* v. *Seneca Common Pleas*, 2 Wend. 264. See also *The Queen* v. *The Company of Proprietors of the Canal Navigation from Leeds to Liverpool*, 11 Adol. & Ellis, 316. See also *The People ex rel. Oelrichs* v. *The Superior Court of the City of New York*, 10 Wend. 285 ; *The People* v. *The Supervisors of the County of Ulster*, 16 Johns. 59.)

---

*Mandamus to Inferior Tribunals and Judicial Officers.*

§ 17. We have already seen that the writ of mandamus will not be extended to those cases where the right or duty sought to be enforced depends upon the discretion of the person against whom it is demanded. We have also seen that the discretion is one which is in its nature controlled by no fixed legal principles, (§ 14,) for it is obvious, that so far as such principles exist, inferior courts and judicial officers are bound to regard them. Let us now examine some of the cases in detail where this principle has been applied. And

I. It is clear that the regulation of the mere *practice* of the courts ought,

---

Fish v. Weatherwax.

---

in a great degree, to depend upon their own discretion, because it is the means to obtain for the party that substantial justice which he seeks, and therefore requires to be varied according to the circumstances of particular cases. To establish an inflexible code of procedure to which the rights of the suitor should bend upon all occasions, would be no wiser than to stretch the man to fit the bedstead instead of lengthening the bedstead to fit the man. Those parts of the practice which are committed to the discretion of the court, are necessarily exempt from the supervision of any other tribunal, and for this reason the writ of mandamus will not lie to compel that discretion to be exercised in any particular manner. Therefore, where a mandamus was moved to compel a court of common pleas to open a rule granted by default, on the ground that the attorney forgot to appear, the supreme court refused the motion, saying " whether the common pleas would open the rule or not, upon the facts disclosed, rested entirely in their discretion ; with which we have nothing to do. The question is not, whether we would have listened to the application, in a like case, upon our rules of practice. The court below have their own rules ; and so far as they rest in discretion, and violate no rule of law, we uniformly refuse to interfere with them. (Vid. *Ex parte Bacon*, 6 Cowen, 392.) Granting this motion, would be a precedent for reviewing the whole non-enumerated business of every court of common pleas in the state." (*Ex parte Benson*, 7 Cowen, 363, 364.) And in a case where judgment had been entered in the common pleas on an assessment of damages by the clerk, though the rules for interlocutory judgment and assessment had been omitted, and the court afterwards allowed both the omitted rules to be entered *nunc pro tunc*, the supreme court denied a mandamus, directing them to vacate their order to enter such rules, upon the ground that the question below was a mere point of practice with which they could not interfere. (*Ex parte Coster*, 7 Cowen, 523.) And where a court of common pleas had set aside a regular judgment by default against the defendant, a mandamus commanding them to vacate that rule was refused. And the court said " the common pleas must be their own judges, upon the circumstances before them, whether they will set aside a default upon the merits. This is so much a matter of discretion, that we will not interfere by mandamus. The granting or refusal of such an application, is governed by no fixed principles. No positive rule of law has been violated by the court below ; nor can we fix bounds to their discretion upon this subject." (*Ex parte Bacon and Lyon*, 3 Cowen, 392, 393. See *People ex rel. Legg* v. *Onondaga Common Pleas*, 8 Wend. 509 ; *Vanderveer* v. *Conover*, 1 Harrison, 271 ; *Thomas* v. *Creditors*, id. 272; *Gray* v. *Bridge*, 11 Pick. 189, 192 ; *Commissioners* v. *Lynch*, 2 McCord, 170 ) Upon this principle a mandamus will not be granted to control the mere chamber business of the judges of an inferior court, as for instance, where this writ was moved to a judge of common pleas to command him to vacate certain orders which had been made, discharging a defendant upon common bail, it was denied. (*Ex parte Brown*, 5 Cowen, 31, 32. *Rex* v. *Justices of Essex*, 2 Chitty, 385 ;) nor to compel a court of common pleas to vacate a rule, allowing a second execution where the first was issued by

Fish v. Weatherwax.   -

mistake for an amount less than the judgment; (*The People* v. *The Chau-tauque Common Pleas*, 1 Wend. 73. See also *Anon.* 2 Halst. 160;) nor where such a court had set aside a ca. sa. for irregularity and required the party against whom it issued, to stipulate that he would not bring false imprisonment, will mandamus lie to compel them to vacate the condition.   (*In the matter of Gilbert*, 3 Cowen, 59. See also *The People* v. *The Montgomery Common Pleas*, 18 Wend. 633 ; *People ex rel. Hasbrouck* v. *Ulster Common Pleas*, 18 Wend. 628 ; *Ex parte Nelson*, 1 Cowen, 417 ; *Wells* v. *Stackhouse*, 1 Harrison, 355 ; *Vandervere* v. *Conover*, id. 234.)

§ 18. II. Upon the same principle courts possess a general power to super-vise the course of pleading, in accordance however with the rules of law upon that subject. And, therefore, where a mandamus was sought to be directed to the common pleas of Cumberland, to compel them to receive the defendant's plea of justification ; and the defendant stated, as the ground of his application, that an action of trespass had been commenced against him, to which he had pleaded—1. The general issue ; and—2. A justification. That the plaintiff's attorney declined replying to the plea of justification, but gave notice to the defendant's attorney, that he would apply to the court of common pleas to strike out the said plea ; which, upon motion, the court ordered accordingly. Kirkpatrick C. J. observed, "from time immemorial, courts have stricken false pleas and frivolous counts from the record. It is right and proper that they should possess the power, in order to prevent their records from being unnecessarily encumbered. But I am satisfied that a *mandamus* would not lie to compel the court to receive a plea, even if they were wrong in rejecting it. (*Anon.* 2 Halst. 160, 161,) and the supreme court of the United States have decided that they will not exercise any control over the proceedings of an inferior court of the United States in allowing or refusing to allow amendments in the pleadings in cases depending in those courts. (*Ex parte Martha Bradstreet*, 7 Peters, 634.)

§ 19. III. By the peculiar constitution of many subordinate tribunals they exercise the right to decide applications for new trials. And although such applications have been supposed to be addressed to the discretion of the court (Per Ashurst, J. in *Edmonson* v. *Muchall*, 2 T. R. 4. See however Per Marcy, J. in *Herrick* v. *Stover*, 5 Wend. 580, 587;) yet it is plain that the increasing certainty of our system of jurisprudence must continually limit that discretion by fixed principles of law. So far as these principles extend the writ of mandamus is a proper remedy under the general rules we have considered. But within the circle of their discretion inferior tribunals and judicial officers are at liberty to decide as they see fit. Therefore, if a jury should return a verdict against the weight of evidence, the writ of mandamus would not lie to control the discretion of the subordinate court to grant or refuse a new trial on that ground. No principle of law is strictly speaking applicable. The question is whether certain evidence proves certain facts. If on this question the court draw different conclusions from that drawn by the jury, a new trial should be granted. (Per Savage, Ch. J. in *The People* v.

Fish v. Weatherwax.

*The Superior Court*, 10 Wend. 285, 290.) Nor can this writ be employed where a subordinate court sets aside a report of referees, and orders a rehearing because dissatisfied with the finding of the referees upon the facts, or because in the opinion of the court the justice of the case requires a fuller hearing. (*The People, ex rel. Robinson* v. *The Superior Court*, 19 Wend. 68. See also *Truesdell* v. *Wheeler*, 2 Aik. 369 ; also *Petition of Farwell*, 2 New Hamp. 123,) nor (in Massachusetts,) where a court of common pleas grant or refuse a new trial, pursuant to the Stat. of 1820, ch. 79, by which it is provided (in § 7,) that this court in certain cases, shall have power to grant a new trial " for any cause for which, by the common law, a new trial may now be granted, or when, upon due examination, it shall appear to said court that justice has not been done between the parties," because " the legislature intended to vest a discretion in the court of common pleas in this respect," (*Gray* v. *Bridge*, 11 Pick. 189, 192 ) *In Ex parte Bailey* (2 Cowen, 479) the verdict of the jury was against the weight of evidence, and the Court of common pleas, on motion, refused a new trial, yet a mandamus commanding them to grant a new trial was refused by the supreme court, who observed ; " As to the remedy by mandamus, it may be proper to remark, that though in extreme cases we might interfere, and control the court below upon questions of fact presented in the form of a motion for a new trial, yet it is a remedy which should be used very sparingly. A contrary course would draw before this court, whenever one of the parties should be dissatisfied with the decision of the common pleas, an examination of those questions which address themselves merely to the discretion of that court. We should be perpetually appealed to for the adjustment of rights undefined by law. This would result in an endless conflict of opinion upon questions which must from their very nature be finally determined by the court below, because they cannot be reached by the rules of law ; and although we may think the inferior jurisdiction has erred, yet we will not interfere. It is true, that extreme cases may be supposed, which would form an exception to this doctrine. Where an action is brought on a promissory note, the *execution of which is* proved beyond all doubt, and yet the jury find against it, should the Court below refuse a new trial, we might interfere ; but it would be improper to do this, in ordinary cases." And in *The People* v. *The Superior Court* (cited *supra*) Savage, Ch. Justice, says : " There is no principle of law, strictly speaking, applicable. The question is whether certain evidence proves certain facts. If on this question the court draw different conclusions from those drawn by the jury, a new trial should be granted ; and where a court has exercised its discretion in such a case, this court will not interfere. There must be something in the case taking from the court its discretion, to authorize the interference of this court, as in the case put by Mr. Justice Sutherland, where the testimony was clear and explicit, and uncontradicted, and yet a verdict against it, and a refusal to set aside such verdict. In such case there would be no discretion ; every verdict must be supported by evidence ; where it is not, the law gives to the party injured a legal right to have it set aside, and a new trial ordered. Should any court possessing the power refuse to exercise it in such a case, it would be our duty to correct the error by mandamus.

Fish v. Weatherwax.

In such a case, where there is no dispute about facts, there is no discretion to exercise." See *Anon.* 2 Halst, 160 ; *Rex* v. *Justices of Worcestershire*, 1 Chitty, 649 ; *Rex* v. *Justices of Carnarvon*, 4 Barn. & Ald. 86 ; *Rex* v. *Justices of Monmouthshire*, 4 Barn. & Cresw. 844.

§ 20. IV. In general every court must be the sole judge whether a contempt has been committed against it or not, and the exercise of its judgment is not liable to be controlled by the interposition of the writ of mandamus. (See 4 Black. Comm. 286, also, Staundf. P. C. 73 *b.*) But if the civil rights of an individual become implicated, this remedy may be pursued. Therefore, upon a motion for a mandamus to the justices of the general sessions of the peace of the county of Oneida, commanding them to attach and punish John Garter, for non-attendance in that court as a witness:—Chamberlain had been indicted for an assault and battery, which was tried at the February term of that court, 1825 :—He subpœnaed Garter to attend as a witness in his behalf ; he neglected to appear, and was attached ; but was discharged by the court, upon his answering, to the interrogatories, that no fees had been tendered to him. *The Court* said they had looked into this subject, and thought the distinction lay between misdemeanor and felony ; that in the former case the defendant must tender his witnesses their fees, as in civil cases ; but that in prosecutions for felonies they were compelable to attend without fees. They should have denied this motion at once, on the ground that it sought for a mandamus to compel an inferior court to punish for a contempt, had the matter rested there ; for every court must be the sole judge whether a contempt has been committed against it or not ; but as the private rights of an individual were also implicated, they had for that reason looked into the merits. (*Ex parte Chamberlain*, 4 Cowen, 49.)

§ 21. V. Many other instances might be found where the writ of mandamus will not lie to inferior courts and judicial officers, because the latter have a discretion beyond the control of the superior tribunal. It is, however, hardly possible to classify them, since the question as to whether such discretion exists, must more or less depend upon the peculiar constitution of the tribunal. When the rules of law are explicit, it must of course abide by them ; but there is a very large class of cases, in which, from the necessity of the case, *discretion* must be exercised. A few of these are here presented, and others will hereafter be mentioned. Mandamus will not lie to compel a county court to accept the report of auditors, (*Truesdell* v. *Wheeler*, 2 Aik 369 ;) nor is it the proper remedy where a magistrate rejects a report of referees, though for insufficient reasons. (*Petition of Farwell*, 2 New Hamp. 123. See also *Robinson* v. *The Superior Court*, 19 Wend. 68, cited *supra* § 19 ; *The People, Ex rel. Fuller* v. *Oneida Common Pleas*, 21 Wend. 20.) Where property is seized under the process of a court, as the property of the defendant, and a stranger, alleging that the property is his, applies by motion to have it restored to him, which motion the court refuses to hear, a mandamus will not lie to such court to hear the motion. (*Price* v. *Shelby Circuit Court*, Hardin, 254 ;) and upon a motion for a mandamus to the district

Fish v. Weatherwax.

judge of the United States for the southern district of New York to set aside a judgment entered by default on an inquest finding a forfeiture of goods to the United States, against which an information had been filed for a violation of the revenue laws, it was decided by the U. S. Supreme Court, that this was not a proper case for its interposition by way of mandamus, because the application to the district court to set aside the default and inquest, was addressed to the discretion of that court. (*Ex parte Joseph Roberts, Ex parte George Adshead*, 6 Peters, 216.) Where a feigned issue was awarded by a court of common pleas, to try the validity of a senior judgment, the supreme court refused to interfere and direct the order awarding the feigned issue to be vacated. (*The People, Ex rel. Hasbrouck* v. *Ulster Common Pleas*, 18 Wend. 628.)    Where, in an action of trover, there was a recovery in a court of common pleas for less than fifty dollars, and the common pleas made an order allowing the plaintiff full costs upon the ground that the title to land had come in question upon the trial of the cause, and the supreme court, upon the coming in of the return to an alternative mandamus, adjudged that the title to land had not come in question upon the trial of the cause, and accordingly awarded a peremptory mandamus to the common pleas, directing a vacatur of the order for full costs ; *it was held*, in the court for the correction of errors, on a writ of error sued out, that the supreme court had no jurisdiction by mandamus to review the decision of the common pleas. (*The Judges of the Oneida Common Pleas* v. *The People, Ex rel. Savage*, 18 Wend. 79.)    Under the seventh section of the fourth article of the constitution, the judges of the common pleas have a discretion whether they will hear a charge preferred against a justice of the peace ; and the supreme court will not interfere with its exercise. (*Ex parte Johnson*, 3 Cow. 371.)    On appeal against a conviction for a trespass under stat. 1 & 2 Will. 4. c. 32. s. 30. the appellant admitted the trespass, and only offered evidence, that the property in the land was not as laid in the conviction.    The sessions having rejected the evidence, and confirmed the conviction without stating a case, the court refused to call upon them by mandamus *to hear the case*, since the mistake, if any, was one of law, which the court could not enter into, the appeal having in fact been heard, and no case sent up.    (*In re Pratt*, 7 A. & E. 27.)    The justices in session will not be compelled to rehear an appeal, on the ground, that they had required the appellant to begin his case.    (*Rex* v. *Suffolk, Justices of*, 6 M. & S. 57.)    And where an appeal was given to sessions within six months after the cause of complaint, and a motion was made there within that time, to enter and respite one, which was denied, the court would not grant a mandamus to the justices to receive it after the six months had elapsed.    (*Rex* v. *Derbyshire, Justices of*, Nolan, 29.)    An order of removal to E. was made, upon an examination stating a hiring in 1813, and a service in E. under such hiring.    On an appeal, upon the ground that there was no such hiring, the respondents proved a hiring in 1810 ; upon which the sessions refused to go on with the case, and quashed the order.    A mandamus to enter continuances and hear the appeal was refused—(*Ex parte Broseley, Inhab. of*, 7 A. & E. 423.    It was not alleged that the appellant

Fish v. Weatherwax.

parish was in fact misled)—because the sessions had in fact heard ; and the variance was material under stat. 4 & 5 Will. 4. c. 76. s. 81. (When appellants may give fresh notice of appeal against an order of removal, vide *Regina* v. *Middlesex, Justices of*, 10 Dowl. P. C. 163.) On an appeal against a borough rate, no notice being proved except as above mentioned, the recorder refused to hear the appeal, or to enter and respite ; and a mandamus was refused to compel him to hear it, though it was stated on affidavit, that the appellant was a party aggrieved, and that the omission in the notice arose from oversight. (*Rex* v. *Bond*, 6 ibid. 905.) The justices will not be ordered to review their decision on an appeal, on the ground, that the conclusion drawn by them was not warranted by the facts proved—(*Rex* v. *Worcestershire, Justices of*, 1 Chitt. 649. *Rex* v. *Carnarvon, Justices of*, 4 B. & A. 86)—nor in cases of appeal to give their reasons for their judgments at sessions ; nor to make special entries on their records—(*Rex* v. *Devon, Justices of*, 1 Chitt. 34)—nor to direct them to enter continuances. (*Rex* v. —— *Justices of*, ibid. 164. *Rex* v. *Jukes*, 8 T. R. 625.) On appeal against an order of removal coming on for trial, the sessions, on an alleged defect in the notice of appeal (that the notice had been served on one only of several parish officers,) dismissed the appeal unheard, confirmed the order, and, (at the instance of the appellants) granted a case. The appellants without bringing up the case moved for a mandamus to the justices to enter continuances and hear the appeal ; but the writ was refused, Lord Denman observing, " If any thing wrong has been done, the justices have given you the opportunity of setting it right." (*Rex* v. *Northamptonshire, Justices of*, 6 A. & E. 111.) On appeal against an order of removal, the sessions, without going into the appeal, quashed the order, subject to a case on a point said to turn upon the construction of stat. 4 & 5 Will. 4. c. 76. The case not being brought up, the court of Queen's Bench refused to hear the point discussed on an application by the respondents for a mandamus to enter continuances and hear the appeal. (*Rex* v. *Suffolk, Justices of*, ibid. 109.) The writ will not be issued to dismiss an appeal at the sessions ; (*Rex* v. *Wilts, Justices of*, 2 Chitt. 257 ;) nor to justices at sessions requiring them to state a special case. (*Peat's case*, 6 Mod. 226. 310, *ante*, 2312. Where the divisional justices of the city of Dublin refused to grant a certificate pursuant to stat. 55 Geo. 3. c. 104. s. 4. Irish, the court refused a mandamus. *Rex* v. *Police, Divisional Justices of*, Alcock & Napier, Irish, 269. The act 53 Geo. 3. c. 111. Cork Local Act is repealed by stat. 6 & 7 Will. 4. c. 116. *Jones* v. *Hayes*, 1 Jebb & Symes, Irish, 656.) A mandamus will not be granted to the chairman of sessions, commanding him to issue warrants for the apprehension of persons against whom a true bill had been found for keeping a gambling house. (*Regina* v. *Middlesex Sessions, Chairman of*, cor. Williams J. MS. H. T. January 24, 1842. 1 Dowl. P. C. N. S. 544.) The court will not order magistrates to issue warrants of distress to levy a poor rate on persons who have refused to pay, unless they have been previously summoned by the justices ; because, a summons must precede a warrant of distress, which is in the nature of an execution. (*Rex* v. *Benn*, 6 T. R. 198.) Neither will justices be enforced to make an order of maintenance on a particular parish ; (*Rex* v. *Middlesex, Justices of*, 4 B. & A. 298. *Rex* v.

Fish v. Weatherwax.

*Eye, Corporation of,* ibid. 271.    *Rex* v. *Truro, Mayor of,* 3 ibid. 590 ;) because magistrates have never been compelled to come to any particular decision. (*Rex* v. *Cambridgeshire, Justices of,* 1 D. & R. 325.    *Rex* v. *Norfolk, Justices of,* 5 B. & A. 484.    *Rex* v. *Monmouthshire, Justices of,* 4 B. & C. 844.)    The writ will not be issued upon a supposed failure of duty in the justices of the peace to remove a man from a parish, after he had offered security to indemnify the parish. (*Regina* v. *Cory,* 3 Salk. 230.)    Nor to the justices of sessions to allow an item of charge in the coroner's account. (*Rex* v. *Kent, Justices of,* 11 East, 229.)    Where the inhabitants of a town, not within a hundred, had incurred costs in defending actions brought on stat. 57 Geo. 3. c. 19. s. 38. for damages done by riotous assemblies:—It was held, that mandamus would not lie to two justices of the town to make and levy a rate for paying the costs. (*Rex* v. *King's Lynn, Justices of,* 3 B. & C. 147. 4 D. & R. 778.)    Justices will not be compelled to rate a parish within their jurisdiction, in aid of another parish, having exclusive jurisdiction, because it would be requiring them to inquire into that, which they have no means of knowing. (*Rex* v. *Holbeche,* 4 T. R. 778.)    A mandamus will not lie to make a new election of a county treasurer, on the ground, that one of the justices who had voted at the election had not taken the qualification oath required by stat. 18 Geo. 2. c. 20. ; because the construction to be put upon such statute is, " that the magistrate shall be only so far disqualified from acting, that he shall be subject to certain penalties if he does act." (*Per* Bayley J. in *Rex* v. *Herefordshire, Justices of,* 1 Chitt. 700.) Where magistrates, from a doubt of their jurisdiction, decline giving possession of premises to a landlord pursuant to stat. 11 Geo. 2. c. 19. s. 16, the court will not, unless it be clear, that they have acted incorrectly, compel them to do so. (*Ex parte Fulder,* 8 Dowl. P. C. 535.)    The court will not grant a rule *nisi* for a mandamus to compel justices to issue their warrant to levy expenses for cutting a hedge, pursuant to stat. 5 & 6 Will. 4. c. 50. s. 65, unless it shall appear, that a demand has been made of the expenses from the person sought to be charged, and that the justices were informed of that demand. (*Ex parte Whitmarsh,* ibid. 431.) As to mandamus to Ecclesiastical Courts and Institutions, Quarter Sessions and Justices and Courts, Lord and Baron—See 3 Stephens Nisi Prius, 2309, 2311, *et seq.* 2316 *et seq.*)

§ 22. Again: The court will not grant a mandamus commanding justices to do an act which may render them liable to an action ; (*Rex* v. *Buckinghamshire, Justices of,* 1 B. & C. 485.    *Rex* v. *Greame,* 3 A. & E. 615.    *Rex* v. *Morgan,* ibid. 616. n. ;) and under that principle, a writ was refused to compel a magistrate to enforce a conviction, when it was doubtful whether such conviction was good in consequence of the evidence not having been stated ; (*Rex* v. *Broderip,* 5 B. &. C. 239. 7 D. & R. 861; ) nor to do that which may occasion costs for which they have no means for reimbursement ; (*In re Lodge,* 2 A. & E. 123 ;) but the court will put justices in motion in cases where they ought to act. (*Rex* v. *Barker,* 6 ibid. 388.)    Neither will a mandamus be granted to compel a magistrate to enforce a conviction for the plaintiff, where he

had returned that the defendant was convicted of the penalty before him, and that the conviction was invalid in law. (*Rex* v. *Robinson*, 2 Smith, 274.)

§ 23. Let us now consider some of the cases in which the remedy by mandamus is applicable to inferior tribunals and judicial officers. And under the general rules we have above considered.

I. It is the remedy to compel a discretion to be exercised or a judgment to be given.

Thus in an old case (*Rex* v. *Tod*, 1 Strange, 530 ;) justices of the peace had a jurisdiction given them by statute to receive an information in some cases and make their determination upon a seizure of brandy. Upon information exhibited by the officer of the customs, the fact appeared not to warrant the seizure, but the justice in favor of the officer refused to dismiss the information, so that the owners might have their brandy again, and a mandamus was granted to compel him to determine the matter. (See Bac. Ab. tit. mandamus D.) And where a court of inferior jurisdiction not possessing the power to grant new trials, (as for instance—a court of common pleas in New York, where neither of the judges is a counsellor at law, under the stat. 1 Laws of New York, 395, *Haight* v. *Turner*, 2 Johns. 371 ;) a court of sessions (*The People* v. *The Justices of Chenango*, 1 Johns. Cas. 180 ;) or a justices court, (*Forman* v. *Murphy*, 2 Pennington, 2d ed. 747 ;) nevertheless undertakes to do so this writ will lie to compel a judgment. (See also *Fish* v. *Weatherwax*, supra p. 215. *The People* v. *Stone*, 9 Wend. 182. *Horne* v. *Barney*, 19 Johns. 247. *Berry* v. *Callet*, 1 Halst. 179.)

A distinction is however to be observed between compelling a judgment to be given or a discretion to be exercised and compelling a particular act to be done by the officer or tribunal who possesses that discretion—the distinction between a direction *to act* and a direction *how to act ;* (Per Tracy, Senator, 18 Wend. 92.) " Thus, we find it given in Bacon, that a mandamus will lie to compel a judgment to be rendered, but not what judgment to render ; to justices to receive and proceed upon a complaint, but not what decision to make ; to compel the ordinary to grant letters testamentary, but not to what person. It has therefore been held not to lie to the sessions to compel them to admit an appeal in regard to poor rates, 4 T. R. 488, nor to commissioners of bankruptcy to certify the bankrupt's conformity to the act, 7 East, 92 ; in both cases, the officers having a discretion. Nor does it lie to compel justices to come to a particular decision, nor to make an order of maintenance, nor to grant a license. (3 Black. Comm. 110, note.) More recently, in *Rex* v. *Justices of Droon*, (1 Chitty's R. 34,) the court refused to compel a quarter sessions to enter continuances, saying, " Our powers are great, but they are not unlimited ; they are bounded by some lines of demarcation ; we are not aware that we have power to interfere with the court below in the way suggested." Again, in *Ex parte Morgan*, (2 Chitty, 250,) a mandamus was denied to compel a court of inferior jurisdiction to grant a new trial in a cause before it, where alleged injustice had been done to one of the parties, the court remarking, " We may command an inferior court to give judgment in

Fish v. Weatherwax.

a matter fit and proper for its cognizance, but we cannot interfere to regulate its practice, because every inferior court is the proper judge of its own practice." In the case of *The King* v. *The Justices of Middlesex*, (4 Barn. & Ald. 300,) Abbott, Ch. J. says : " There is not an instance can be cited where the court has granted a mandamus to justices to compel them to come to any particular decision."

In all the state courts of this country where the question has been agitated, except in New York, the same distinction as to the proper functions of a mandamus seems to have been rigidly observed. In Pennsylvania, (*Commonwealth* v. *Judges of Com. Pleas of Philadelphia County*, 3 Binney, 273,) it was decided that a mandamus would not lie to the judges of the common pleas, to reinstate an appeal which they had dismissed, because a mandamus cannot go to an inferior court compelling them to make a particular decision, but merely to decide. In *Griffith* v. *Cochran*, (5 Binney, 103,) Tilghman, Ch. J. says : " The principles which govern the court in issuing writs of mandamus, are well understood. Where a ministerial act·is to be done, and there is no other specific remedy, a mandamus will be granted to do the act which is required. But where complaints are against a person who acts in a judicial or deliberative capacity, he may be ordered by mandamus to proceed to do his duty, by deciding and acting according to the best of his judgment ; but the court will not direct him in what manner to proceed." And so rigidly was this distinction adhered to by the same court, that in *Commonwealth, Ex rel. Breckenridge,* v. *Judges of C. P. of Cumberland County,* (1 Serg. & Rawle, 187,) it refused a mandamus to compel a court of common pleas· to proceed to examine a person applying to be admitted as an attorney, notwithstanding the supreme court was satisfied that he came within the rule of the common pleas. Their refusal was put on the ground that the admission of an attorney is not a ministerial but a judicial act, and therefore not the subject of the writ of mandamus.

In New-Jersey the same distinction was recognized. In *Seving* v. *Inhabitants of Alloways Creek*, (5 Halstead, 58,) where a mandamus was refused, on the principle, that " to officers a writ of mandamus may go to direct them how to proceed, and what to do ; but a mandamus to a court only to direct them to proceed according to law, and not how to proceed."

So in Kentucky, in *The County Court of Warren* v. *Daniel*, (2 Bibb, 573,) it was decided that " a mandamus is a proper remedy to compel an inferior court to adjudicate upon a subject within its jurisdiction, where it neglects or refuses to do so ; but where it has adjudicated, a mandamus will not lie for the purpose of revising or correcting its decision.

And in Massachusetts, (*Chase* v. *Blackstone Canal Co. 2 Pick.* 244,) the court say : " This writ lies either to compel the performance of ministerial acts, or is addressed to subordinate judicial tribunals, requiring them to exercise their functions, and render some judgment in cases before them, when otherwise there would be a failure of justice from delay or refusal to act. But where a subordinate tribunal has acted in a judicial capacity, upon a question properly submitted to its judgment, a mandamus will not be granted to compel it to reverse its decision.

Fish v. Weatherwax.

Analogous decisions may be found in the courts of New Hampshire, Virginia, and Ohio, and probably have been made in several other states, inasmuch as we find at an early day an express decision on this point, made by that court whose opinion has rarely failed to be of controlling authority for the state courts upon any important general principle. The decision to which I refer, is reported in *United States* v. *Lawrence*, (2 Dallas, 42,) where it was sought to compel a district judge to issue a warrant to arrest an alleged deserter from the French naval service, under a treaty stipulation, and in which it was the clear and unanimous decision of the court, that the district judge having acted judicially in deciding that the evidence was not sufficient to authorize his issuing a warrant, the supreme court, however it might differ in opinion from the judge as to the sufficiency of the proof, had no power to compel him to decide according to the dictates of any judgment but his own. And the court there, as well as in the subsequent case, *Life & Fire Insurance Co. of N. Y.* v. *Adams*, (9 Peters, 602,) recognizes the principle contended for by the counsel in the first cited case, that a mandamus is founded on the idea of a default, as where an inferior court will not proceed to judgment, or a ministerial officer will not do an act which he ought to do ; but is never issued to a judge who had proceeded to give judgment according to the best of his abilities. And in the case last cited, Chief Justice Marshall says : " On a mandamus a superior court will never direct in what manner the discretion of an inferior court shall be exercised, but will, in a proper case, require the inferior court to decide."

In the cases of *Wilson* v. *Supervisors of Albany*, (12 Johns. R. 416,) and *Ex parte Nelson*, (1 Cowen, 423,) the court refused the writ, on the ground that where a discretion is vested in any inferior jurisdiction, and that discretion has been exercised, a mandamus will not be granted, because the court cannot control, and ought not to coerce that discretion. The cases *Ex parte Bacon & Lyon*, (6 Cowen, 392,) and *Ex parte Benson*, (7 id. 363,) are on the same principle, as is also that of *Hull* v. *Supervisors of Albany*, (19 Johns. R. 259,) in which the principle is definitely and accurately stated by the court, that " where the inferior court has discretion, and proceeds to exercise it, this court has no jurisdiction to control that discretion by writ of mandamus. But if subordinate public agents refuse to act or to entertain the question for their discretion in cases where the law enjoins upon them to do the act required, this court may enforce obedience to the law by mandamus, where no other legal remedy exists." (Per Tracy Senator in *Judges of the Oneida Common Pleas* v. *The People*, 18 Wend. 79, 92, 95, 96.) This doctrine was subsequently considered by the supreme court of the State of New York, in the case of *The People* v. *The Judges of Dutchess C. P.* (20 Wend. 658, 660, 661,) and the general principle re-affirmed Mr. Justice Bronson observing : " In *Chase* v. *The Blackstone Canal Co.*, (10 Pick. 244,) the court refused to issue a mandamus to an inferior tribunal which *had acted* in a judicial capacity upon a question properly before it. They said, the writ lies either to compel the performance of *ministerial* acts, or is addressed to subordinate *judicial* tribunals, requiring them to *exercise* their functions and render *some* judgment in cases before them, when otherwise there would be a failure of

Fish v. Weatherwax.

justice from a delay or refusal to act. But when the act to be done is *judicial* or discretionary, this court will not direct what decision shall be made. And they referred with approbation to the case of *The U. S.* v. *Lawrence*, (3 Dall. 42,) where it was held by the supreme court of the U. S. that they could not interpose by mandamus to compel a district judge to decide according to the dictates of any judgment but his own. In the case of *Strong, petitioner, &c.* (20 Pick. 484,) *Morton*, J. said, this high judicial writ not only lies to ministerial, but to judicial officers. In the former case, it contains a mandate to do *a specific act*, but in the latter, only *to adjudicate—to exercise a discretion* upon a particular subject. In *Ex parte Hoyt*, (13 Peters, 279,) the district court had made an order in relation to the custody of certain goods which had been seized by the collector, and the supreme court refused a mandamus to compel the district court to vacate its order. Mr. Justice Story, who delivered the opinion, said, the application was not warranted by the principles and usages of law—that it was neither more nor less than an application for an order to reverse the solemn judgment of the district judge in a matter clearly within the jurisdiction of the court, and to substitute another order in its stead. He added, it has been repeatedly declared by this court that it will not, by mandamus, direct a judge *what* judgment to enter in a suit, but will only require him to *proceed* to render judgment. The same learned court made a similar decision in *Ex parte Whitney*, (13 Peters, 404.) They said, a writ of mandamus is not the appropriate remedy for any orders which may be made in a cause by a judge in the exercise of his authority, although they may seem to bear harshly or oppressively upon the party." In the case of *The King* v. *The Justices of Monmouthshire*, (7 Dowl. & Ryl. 334,) the court of sessions had quashed an appeal, and a motion for a mandamus was denied by the king's bench. *Abbott*, C. J. said, " where the sessions *forbear to give any judgment at all*, this court will interpose to compel them to *go on* and pronounce judgment; but where they have *actually given judgment*, even under a mistake of law, this court has never yet interposed to disturb their decision." He added, " if we were to grant this application, we should be opening a door to continued litigation and enormous expense, in every case where the propriety of the decision of the sessions might be questioned, either on the ground of mistake in law or fact. There seems to be no authority for such a proceeding, and as our predecessors have not recognized its propriety, we are certainly not disposed to take a step which is so pregnant with mischievous consequences." And *Bayley*, J. said, " the sessions having decided the case, and quashed the order, we are not at liberty to consider whether they have done right or wrong." In *Rex* v. *Justices of Wilts*, (2 Chitty's R. 257,) there was a motion for a mandamus to dismiss an appeal, on the ground that the sessions had decided wrongly ; but the application was refused ; and when the court was pressed with the argument that the party had no other remedy, it was answered by *Bayley*, J., that " there are many cases in which there is no other remedy against the sessions, where we should not interfere." *The King* v. *The Justices of Cambridgeshire*, (1 D. & R. 325,) proceeded on the same principle. In *Squire* v. *Gale*, (1 Halst. 156,) the supreme court of N. J. held, that a mandamus would lie to an inferior court to command

Fish v. Weatherwax.

them to *proceed to judgment,* but not to command them to proceed to *any particular* judgment. (*Roberts* v. *Holsworth,* 5 Halst. 57 ; *Hawkins* v. *Bennett,* 7 Halst. 179, and *The County Court of Warren* v. *Daniel,* 2 Bibb R. 573, are to the same effect." See also *Gray* v. *Bridge,* 11 Pick. 189 ; *Morse,* petitioner, 18 id. 443. *Life Ins. Co.* v. *Adams,* 9 Peters, 573. *Anon.* 9 Wend. 472. Unless it is clearly shown that such discretion has been abused. *Commissioners* v. *Lynah,* 2 McCord, 170. *Sed.* see *The People* v. *The Judges of Dutchess C. P.* cited *supra.* The marginal note to *Blunt* v. *Greenwood,* 1 Cowen, 15, and the opinion of Mr. Justice Sutherland, in *The People* v. *The Superior Court of New York,* 5 Wend. 114, are questioned by Senator Tracy, in the opinion above referred to and shaken by *The People* v. *The Judges of Dutchess Co.* cited *supra.*)

§ 24. II. It is the remedy to compel a judicial officer to sign or amend a bill of exceptions or settle a case, according to the facts. (*Delevan* v. *Boardman & White,* 5 Wend. 132. See also note, id. *The People* v. *The Judges of Washington,* 1 Caines, 511 ; *Sikes* v. *Ransom,* and the other cases cited *infra.*) But it is necessary that the bill or case should state the facts correctly, (*State of Ohio* v. *G. Todd, et al.* 4 Ohio R. 351. *The People* v. *Judges of Westchester, supra* p. 118,) and also that it should be tendered in time. Under the former practice in New York, a bill of exceptions should, regularly have been tendered at the trial, or at least during the continuance of the term, and the court could not be compelled to seal it at a subsequent term. Where, therefore, a bill was tendered to a court of common pleas in January term, and application was made in June term to amend it, and the court refused, a motion for mandamus was denied, though the power to compel an amendment was conceded. (*Sikes* v. *Ransom,* 6 Johns. 279.) So this remedy was denied. And where on the return to an alternative mandamus, commanding the judges of a court of common pleas to sign and seal a bill of exceptions, or show cause, &c. it appeared, that the bill of exceptions was not tendered to the judges at the trial, but was presented to them individually, at different times, after the court had adjourned for the term, this court refused to grant a peremptory mandamus, because the facts on which a bill of exceptions is taken must be reduced to writing at the time, and presented distinctly to the court, during the trial, or at least, during the continuance of the term. (*Midberry* v. *Collins et al. Overseers &c.* 9 Johns. 345.)

§ 25. III. It is the remedy to compel an inferior court to grant the usual legal process to enforce a judgment. Thus, in New-Jersey, where a justice of the peace entered a judgment against a defendant and afterwards made a conditional order that the judgment should be opened upon the payment of costs by the defendant on a certain day, and notwithstanding the defendant neglected to pay the costs on the day prescribed, the justice refused to issue execution after being requested by the plaintiff so to do, a mandamus was granted to compel him to perform this duty ; (*Terhune* v. *Barcalow,* 6 Halst. 38. See *Laud* v. *Abrahams,* 3 Greene, 22.)

Fish v. Weatherwax.

§ 26. IV. It is the remedy to compel an inferior court of appellate jurisdiction to do those acts which the law requires it to perform, in order to render an appeal effective. Therefore, where in New Jersey an appeal was taken from the judgment of a justice to the common pleas, and the appeal bond had been delivered ; The justice, either from the want of an opportunity or forgetfulness, as he himself states, did not send up the proceedings, &c. to the court on the first day of the term. The appellant perceiving that the justice had not sent up the proceedings as was required of him by law, went to the house of the justice and procured from him the transcript, appeal bond, &c. and brought them into court during the term, but after the first day, when they were duly filed. The next following term the court dismissed the appeal, and assigned the following reason for so doing :—That the transcript of the justice was not filed on the first day of the court next after the judgment was given by the justice below. The court ordered a mandamus because the act requiring the appeal papers to be sent on or before the first day of term is only directory to the justice, not to the court. (*The State* v. *The Judges of Bergen,* 2 Pennington's R. 2d ed. 541 ;) And in the same state, where a court of common pleas dismissed an appeal for want of the necessary affidavit ; the affidavit which had been made and which in other respects was sufficient, having been written on the back of the appeal bond, the court granted a mandamus observing : " The court of common pleas, no doubt, dismissed the appeal in this case, in consequence of what was said by this court, in *Freas* v. *Jones,* (3 Green's R. 20 ;) but on one or two occasions, since that case was decided, we have expressed an opinion, that the objection ought to be to the *bond,* and not to the *affidavit.* The party by putting his affidavit on the bond, has in effect deprived his adversary of the benefit of it : for the court of common pleas cannot deliver the bond to the appellee, for prosecution, without delivering with it, the affidavit also, which ought not to be done. If the objection had in this case, been made to the bond, the appellant might immediately have substituted a new one ; but another affidavit would have come too late. Let a mandamus therefore issue, as prayed for." (*Robbins* v. *Bonnel,* 1 Harrison, 234. See also *Freas* v. *Jones,* 3 Green, 20 ; *Carman* v. *Smick,* 2 id. 117.) And in the same state where an appeal bond without a seal was accepted and returned by the justice, and the common pleas dismissed the appeal for want of a valid appeal bond, and refused to permit the appellant to put in a new bond, the supreme court granted a mandamus, because, by the statute (Harr. Comp. 5) " the Court may permit the appellant to substitute a new appeal bond in the place of the appeal bond filed and sent up by the justice," and the ends of justice as well as the rule of law, require that it should receive a liberal construction. (*Garrabrant* v. *McCloud,* 3 Green R. 462.) But a mandamus will not be granted to restore an appeal which has been dismissed because there was no subscribing witness to the appeal bond, unless the appellant and his surety had offered instanter to re-execute the bond in the presence of one or more witnesses or to substitute a new bond ; (*Thorpe* v. *Keeler,* 3 Harrison, 251. The case of *Rockafeller* v. *Rhea,* 7 Halst. 180, is noticed and questioned in this case.) And a peremptory mandamus was ordered to a court of common pleas, command-

ing them to reinstate an appeal dismissed for want of prosecution at a special term after trial demanded (*Ten Eyck* v. *Farlee*, 1 Harrison, 269. See also *Bowlsby* v. *Johnston*, 1 Green, 350 ; *Laird* v. *Abrahams*, 3 id. 433 ; *Adams* v. *Mathis*, 3 Harr. 310 ; *The People* v. *The Judges of Niagara Common Pleas*, 1 Howard Sp. T. Rep. 196.)

§ 27. V. It is the remedy to compel such a tribunal to grant or vacate an order for a new trial where there is no discretion to do otherwise.

Thus, if the testimony in a case were clear, explicit and uncontradicted, and yet a verdict against it, the superior tribunal would compel the inferior to set aside the verdict ; or if the inferior court should deny to a party the benefit of an established rule of practice, not depending at all upon circumstances, a mandamus would be granted. (Per Sutherland J. in *The People* v. *The Superior Court*, 5 Wend. 114.) The granting or refusing of a new trial is not a matter of discretion, where, on an application for such trial on the ground of newly discovered evidence, it clearly appears that, with ordinary diligence, the evidence might have been produced at the former trial ; or where the newly discovered evidence consists merely of additional facts and circumstances going to establish the same points principally controverted when the trial was had, or of additional witnesses to the same facts and circumstances : and where a court of subordinate jurisdiction grants a new trial in a case where those objections exist, a mandamus will be awarded, directing the rule granting a new trial to be vacated. (*The People* v. *The Superior Court, ut sup. S. C.* 10 Wend. 285. See also *Commrs.* v. *Lynah*, 2 McCord, 170.) In the case of *The People* v. *Niagara Common Pleas*, (12 Wend. 246 ;) it was held that when a court of common pleas set aside a report of referees on the merits, and erred in so doing, a mandamus lay to correct the error.

§ 28. VI. This remedy has been employed to compel a court of inferior jurisdiction to admit or restore an attorney, but it is doubtful whether it can properly be extended to this purpose. Thus it has been allowed to restore one to an attorney's place in an inferior court ; because his is an office concerning the public justice ; and he is compellable to be an attorney for any man ; and has a freehold in his place ; (Bac. Ab. tit. mandamus C. Lev. 75 Sid. 152 Keb. 549 ;) and accordingly in Hurst's case, one was restored to an attorney's place of the Court of Canterbury, and in Collins' case, one was restored to an attorney's place, of the liberty of St. Martin's le Grand. So a mandamus was granted to the Mayor of Reading, for an attorney of B. R. who was prohibited to practice in an inferior court of Reading ; (Bac. Ab. tit. mandamus C. Vent. 11 Sid. 410, Mod. 23.) In the case of *The People* v. *The Justices of Delaware*, (1 Johns. Cas. 181,) the supreme court directed the restoration of an attorney who had been removed from his office by a court of common pleas, but it is not by any means to be inferred from this case that the supreme court intended to assert a general power to interfere by mandamus with the discretion of inferior courts in the selection and control of their attornies, for the court say : " By the act of the legislature of this state, if a court of common pleas remove an attorney from office, he cannot be admitted to practice here, although he should also be an attorney of this court. If,

Fish v. Weatherwax.

therefore, we could not revise the proceedings of the courts of common pleas in this respect, they might disqualify any attorney of this court, and however unjust it might be, it would not be in our power to afford relief. This would indirectly give them the power of superintending and controlling the officers of this court." It is upon this view that Senator Tracy in his able opinion in the case of *The Judges of the Oneida Common Pleas* v. *The People*, reconciles this decision with the general principles above considered. It is supposed that the correct rule upon this subject is laid down in the case of *The Commonwealth ex rel. Breckenridge* v. *The Judges of Common Pleas of Cumberland Co.* (1. Serg. & Rawle, 87.) A mandamus was there refused to compel a court of common pleas to proceed to examine a person applying to be admitted as an attorney, notwithstanding the supreme court was satisfied that he came within the rule of the common pleas. Their refusal was put upon the ground that the admission of an attorney is not a ministerial but a judicial act, and therefore (as we have before seen) not the subject of this writ. It is perhaps worthy of remark, that this question was raised in the Supreme Court of the United States, in *Ex parte Burr*, (9 Wheaton, 529,) where the authorities from Bacon's Abridgment and the case of *The People* v. *The Justices of Delaware* were cited in the argument of Mr. Emmet. Chief Justice Marshall declined giving a decision upon this point, although he expressed an opinion that the court would not interfere unless the conduct of the inferior tribunal was " irregular or flagrantly improper." But it has been adjudged that no mandamus lies to restore a proctor of *Doctor's Commons*, admitting that no appeal lay from the Dean of the Arches, to the Archbishop as visiter ; because this is an ecclesiastical office and a matter properly and only cognizable in that court ; and that the temporal courts are not to intermeddle or inquire into their sentence, or into the proceedings in any matters whereof they have a proper jurisdiction, but are to give credit thereunto ; although it was urged that if a mandamus did not lie in this case, the party would be without remedy, for that no assize would lie of this office ; and though an action on the case might lie, yet it might be defective, because the jury might not well compute the damages in proportion to the loss of a man's livelihood ; besides it was urged that a mandamus ought to lie in this case, as well as for an attorney of an inferior court, because this is an office of a more public concern ; (Bac. Ab. tit. Mandamus C. Carth. 169, 170, 3 Lev. 309, 3 Mod. 333, Skin. 290, pl. 1, Lee's case Show, 217, 251, 261, S. C. by the name of *The King* v. *Oxenden*, 3 Mod. 332, 3 Salk. 230, pl. 4 Holt, 435, pl. 1.) And the court say in 3 Mod. 333, that a proctor is not an officer properly speaking ; it is only an employment in that court which acts by different rules from the King's Bench. Nor will a mandamus lie to the Archbishop of Canterbury to issue his fiat to the proper officer, for the admission of a doctor of civil law, a graduate of Cambridge as an advocate of the Court of Arches : for he has no specific legal right to such admission ; (*Rex* v. *Archbishop of Canterbury*, 8 East, 213. See further *Rex* v. *Doctor Ward*, 2 Strange, 893. Fitzgibb. 123, pl. 8, 194, pl. 7, Barnard, K. B. 254, 294, 380, 411. *The King* v. *Dr. Bettesworth*, Str. 159, Andr. 21, Barnard, K. B. 40. See 2 Str. 1082, Andr. 20, 185, S. P.) See infra. § 37, tit. office.

Fish v. Weatherwax.

§ 29. VII. In conclusion it may be generally stated under the rules we have before considered, that this writ lies to an inferior court or judicial officer to compel the performance of any duty, whether ministerial or judicial; so that there shall not be a failure of substantial justice. (*Chase* v. *Blackstone Canal*, 10 Pick. 244; *Commonwealth* v. *Hampden*, 2 id. 414; *Springfield* v. *Hampden*, 4 id. 68; *Jackson* v. *Randall*, 7 Mass. 340.) As to compel a court of sessions to enter the verdict of a jury in the assessment of damages, (*Commonwealth* v. *The Justices of the Sessions of Middlesex*, 9 Mass. 388; *Commonwealth* v. *The Justices &c. of Norfolk*, 5 id. 435;) or to proceed in the trial of an indictment; (*In the matter of James Turner*, 5 Ohio R. 542,) or, in Massachusetts, to erect or provide a house of correction under the stat. 1787, c. 54. § 1.; (*Commonwealth* v. *The Justices &c. of Hampden*, 2 Pick. 414;) or to proceed to review and settle damages, as in the following case :— By the sixth section of the charter of the New Jersey Railroad and Transportation Company, the owner of any land taken by the company, who may feel himself aggrieved by the decision of the commissioners appointed to assess the damages in his case, may appeal to the next court of common pleas of the county in which the land is situated ; and the said court, in a summary way, either with or without a jury, is to review and settle the amount of damages. A mandamus was directed to be issued, where the common pleas ordered all proceedings on the appeal to be stayed until a certiorari between the parties should be decided in the supreme court. (*Budd* v. *New Jersey Railroad Company*, 2 Green, 468 ;) or to compel a court of common pleas to enter or vacate an order where the justice of the case manifestly requires it, and there is no discretion as where on a demurrer to a declaration for the cause that the caption of the declaration was of a day anterior to the accruing of the cause of action, a court of common pleas gave judgment for the plaintiff, and also allowed him to amend his declaration so as to cure the defect, and at the same time refused leave to the defendant to plead to the amended declaration, a mandamus was awarded directing the common pleas either to vacate as much of their order as gave the plaintiff leave to amend, or so much thereof as refused the defendant leave to plead. (*The People* v. *The New York C. P.* 18 Wend. 534.) And upon this principle it has been decided that a rule to show cause will be granted to a court of common pleas, why a mandamus should not issue to compel them to permit a plaint to be filed, nunc pro tunc after a writ of error had been brought to the supreme court, and the want of such plaint assigned for error. (*The People* v. *Judges of Westchester*, Ca. C. 55. See further, *Matter of Highway*, 3 Harrison, 291 ; *Blunt* v. *Greenwood*, 1 Cowen, 15; Also *Ex parte Bostwick*, 1 Cowen, 143 ; 1 Chit. Genl. Prac. 795, 796; 1 Grah. Prac. 3d ed. See further upon the general application of mandamus to inferior courts ; *People ex rel. Griffin* v. *The Judges of the Jefferson Comm. Pleas*, 2 Howard Sp. T. R. 59. *In re Thomas W. Cook*, id. 109 ; *Ex parte Ostrander*, 1 Denio. 679 ; *Rex* v. *Hewes*, 3 Adolph. & Ellis, 725 ; *Porter* v. *Harris*, 4 Call, 485 ; *Jared* v. *Hill*, 1 Blackford, 155 ; *Johnson* v. *Randall*, 7 Mass. R. 340 ; *Barnet* v. *Warren*, Circuit Court Hardin, 172 ; *Saunders* v. *Nelson*, id. 17 ; *Blake* v. *Boggs*, 1 Mis. 116 ; *Kerr* v. *Rector*, id. 117 ; *Brown* v. *Crippin*, 1 H. & M. 173.)

### Of Mandamus to Inferior Officers.

§ 30. As we have already seen, the common law confided to the Court of King's Bench a general supervision over all inferior persons and jurisdictions, and this power, subject to certain local and unimportant modifications, has passed into the hands of the superior judicial tribunals of this country. All men hold their situations as officers, upon the terms of having their conduct examined, and measured by that standard which the law has established. (*McKim* v. *Odone*, 3 Bland, 407.) It is not necessary that inferior officers should occupy a judicial station in order to be subject to the writ of mandamus. They are amenable to the command of this writ upon a different ground, because the courts which issue it, are made the "general guardians of the rights of all men ;" (*Rex* v. *Bishop of Chester*, 1 Wils. 206 ; *Regina* v. *Mayor of Leeds*, 11 A. & E. 512, 3 Steph. N. P. 2292 ;) or, as it is said in Bacon, Ab. (tit. mandamus,) after Lord Coke, (11 Co. 98, 4 Inst. 71,) " the court of King's bench holding a superintendency over all inferior courts and magistrates may by the plenitude of its power, correct not only errors in judicial proceedings, but also extra judicial errors and misdemeanors tending to the breach of the peace, oppression of the subject to the raising of faction, controversy, debate, or any manner of misgovernment ; so that no retort or injury whether public or private, can be committed, but what may be reformed and punished according to the due course of law." Wherever, therefore, any *ministerial* duty is imposed by the law, the writ of mandamus will lie to all classes of public officers, under those general regulations as to its application, which we have heretofore considered.

§ 31. I. The writ of mandamus will not lie to control the discretion of an inferior officer, for otherwise superior tribunals would draw to themselves all matters of judgment, and officers would in reality have none at all.

Wherever a discretionary power is vested in officers, and they have exercised that discretion, the court ought not to interfere, because they cannot control, and ought not to coerce that discretion. In John Giles's case, 2 Str. 881, a mandamus was moved for, to certain justices to grant him a license to keep an ale house ; it was opposed, on the ground that it was discretionary in the justices, and the court refused it, saying, there never was an instance of such a mandamus. (Per Spencer J. in *Wilson* v. *Supervisors of Albany*, 12 Johns. 414, 416. See *Commissioners of the Poor &c.* v. *Lynah*, 2 McCord, 170.) Therefore, where a mandamus was applied for to compel the supervisors of Oneida, to audit and allow a bill for a surgical operation on a transient pauper, and it was shown in answer to the rule, to show cause that the supervisors had acted on the subject matter, and audited the bill at $5 :—The court denied the application on the ground that the board of supervisors had a discretion by statute which the court could not control. (*Hull* v. *Supervisors of Oneida*, 19 Johns. 259.) And where the supervisors of a county passed upon the account of a constable for removing paupers and disallowed part, and this writ was moved commanding them to audit and allow the ac-

Fish v. Weatherwax.

count of the relator. Spencer, J. observes: "By the 9th section of the act for the relief and settlement of the poor, (1 R. L. 282,) any constable conveying a pauper from one town to another, is to receive so much money for his services as the supervisors of the county shall judge he reasonably deserves to have, to be raised, &c" "In the present case, whatever may be thought of the reasonableness of the allowance of the supervisors to the applicant, he has no legal right to any particular sum. He has no right to any money for the services performed, but such as the supervisors shall, in their discretion, judge him entitled to." " Certainly not to allow any specific sum ; that would be taking upon ourselves a discretion which the legislature have vested in the supervisors ; we could only command them to examine the applicant's accounts, and, in the words of the statute, allow him, for his services, such sum as they shall judge he reasonably deserves to have ; and this has been already done." The case of *Ex parte Farrington*, (2 Cowen, 407,) was similar. It was an application for a rule commanding the supervisors of Delaware county, to show cause why a mandamus should not issue commanding them to audit and allow an account presented by Farrington for services as a constable. And the supreme court denied the application on the ground that the " amount of the allowance to constable or other person, for serving subpœnas in criminal cases, is a matter of discretion, in the board of supervisors, with which this court will not interfere ;" and that the supervisors had not refused to act. Upon the same general principle where commissioners were appointed by an act of the legislature to lay out a road, on the most direct and eligible route, commencing at or near a certain village, and the road was laid out, commencing at the distance of sixty rods from the village, in a field where there was no road with which the new road could be connected, and the route, instead of being the most direct and eligible, was, as expressed by the court, strikingly injudicious ; yet, notwithstanding these facts, the court awarded a peremptory mandamus to the commissioners of highways of a town through which the road was laid, to proceed forthwith to open and work the road as laid out by the state commissioners. (*The People ex rel. Case* v. *Collins, et al.* 19 Wend. 56 ;) And the supreme court further decided that where the discharge of a duty created by act of the legislature is confided to a special commission, and the duty is in its nature judicial, this court will not collaterally review the doings of the commissioners, and hold as void the final determination made by them in the exercise of their discretion or judgment. Mr. Justice Cowen, who delivered the opinion of the court, considered this principle as applicable to the decisions of all " courts, special tribunals, commissioners and magistrates to whom judicial powers are delegated ; such decisions and determinations can be reviewed only by certiorari or writ of error, if no other mode of appeal is given by the statutes creating such courts, &c." In *Chase* v. *The Blackstone Canal Co.* (10 Pick. 244,) the petitioners whose land was injured by a canal, having applied for a jury and obtained a verdict for greater damages than had been allowed him by commissioners appointed under the statute authorizing the construction of the canal, moved the county commissioners for costs, but the motion was overruled, and he thereupon applied to this court for a mandamus to compel the county com-

Fish v. Weatherwax.

missioners to allow him costs, the court, without inquiring into the correctness of the decision, refused to issue a mandamus, because the county commissioners acted in a judicial capacity upon a question properly submitted to their judgment.   And in *Anon.* (2 Pennington, 576,) an application was made for a mandamus, to two justices of the peace, and two overseers of the poor, to compel them to make a certificate for the manumission of a slave.   The application was made on the part of the executor, to enable him to comply with the will of his testator.   The facts disclosed by the affidavits read, were, that application had been made to the justices and overseers of the poor, who had met, heard the application, and decided against it, by refusing to make the certificate.   Upon this state of facts, the court refused the mandamus, saying: " All we can do, is to compel the justices and overseers of the poor, to proceed to the examination of the slave, and to exercise the discretion vested in them by law : it appears that they have done that already."   So where the county court, in Virginia, rejected an application for opening a new road, on a regular hearing, it was held, that a mandamus could not be awarded, by the circuit court, to compel the county court to open the road.   (*Jones* v. *Strafford Justices*, 1 Leigh. 584.)   Nor will this writ lie to compel county commissioners to accept the report of a committee appointed by said commissioners pursuant to the laws of Maine, (*Proprietors of Kennebec Toll Bridge Petitioners*, 2 Fairfield, 263,) nor to compel the restoration of his office to a professor in the college of William & Mary, in Virginia, (*Bracker* v. *William & Mary College*, 3 Call, 573 ;) nor to compel an ordinary to grant letters of administration to a particular person.   (*The State* v. *Mitchell*, Const. Rep. S. Ca. 703, 706.   Another ground, however, was considered in deciding this case, viz : that there was a remedy by appeal.)   So it has been held in South Carolina, that no mandamus lies to the managers of elections to compel them to declare a candidate elected, because their decision upon questions of election is final and conclusive.   (*Grier* v. *Schackleford*, Const. Rep. So. Ca. 642.   See also *The State* v. *Bruce*, 1 id. 165, where the question is very fully considered )   So where an act of the legislature provides that the county commissioners shall draw an order for the amount of a schoolmaster's bill for educating poor children, *if they approve thereof* the court cannot compel them by this writ to draw an order ;   (*Comm.* v. *The County Comm'rs*, 5 Binney, 536.)   Nor will this writ lie to compel the board of property to issue patents for donation lands, if they have deliberated and decided upon the subject, because by the act of the legislature, they are invested with judicial power in that respect ;   (*Comm.* v. *Cochran*, 6 Binney, 456 ;) nor to compel the guardians of the poor to continue in office three of the old managers, (*Respublica* v. *Guardians &c.* 1 Yeates, 476.   See also the general principle under consideration, stated and illustrated in *Griffith* v. *Cochran*, 5 Binney, 87, and *Comm.* v. *The Judges of Common Pleas*, 3 Binney, 275.)   Nor will mandamus lie to compel commissioners of bankruptcy to give a bankrupt a certificate of conformity, (*Respublica* v. *Clarkson*, 1 Yeates, 46.   See also note to *Ex parte King*, 7 East 91.)   An application was made for a mandamus to compel the commissioners to certify the bankrupt's conformity to the acts, to the Lord Chancellor.   But the court were of the opinion that the legislature had vested a discretion in the

Fish v. Weatherwax.

commissioners to judge of the bankrupt's conformity or non-conformity, with which discretion they would not interfere, and therefore refused the writ. A mandamus will not lie to the benchers of an inn of court to compel them to call a student to the bar. (*Rex* v. *Gray's Inn, Benchers of,* Doug. 353 ;) nor to compel them to admit an individual to be a member of the society, for the purpose of qualifying himself to become a barrister, (*Rex* v. *Lincoln's Inn, Benchers of,* 4 B. & C. 855    7 D. & R. 351 ;) nor to the principal and ancients of Barnard's Inn to admit an attorney into the society, (*Rex* v. *Barnard's Inn (Principal and Ancients of),* 5 A. & E. 17.    See also *Rex* v. *Street,* 8 Mod. 98, 99 ;) nor to a judge of assize to compel him to grant a warrant of restitution, where an indictment for forcible entry and detainer had been found by the grand jury under the stat. 8 Henr. vi. ch. 9, and an application was made to him for such a warrant, because it is in his discretion whether he will grant it or not. (*The Queen* v. *Harland, et al.* 8 Adolph. & Ell. 826.)    Upon this general principle, if a corporation have power by their charter to have a town clerk who shall continue *durante bene placito* of the Mayor and Aldermen ; by this they have an arbitrary power of turning him out at pleasure, and need not at the return of a mandamus assign any reasonable cause for their conduct herein. (Bac. Ab. tit. mandamus C. Vent. 77, Sid. 461, Lev. 291.    *Dighton* v. *Mayor of Stratford upon Avon,* Raym. 188 S. C. See further *The People* v. *The President and Trustees of the Village of Brooklyn,* 1 Wend. 318.    *The People* v. *Tracy,* 1 Denio, 617, 619.)

§ 32. In all those cases where the inferior officer has no discretion but where his obligation to do the act which is sought to be enforced, depends upon the circumstances of the particular case, the superior court will enquire into these, and administer the remedy according to the principles of substantial justice.    And it may be laid down as a general rule that the superior tribunal will not compel an officer to do an act which would subject him to an action, or which may occasion costs for which he has no means of reimbursement.    Thus in *Ex parte Fleming,* (4 Hill, 581,) proceedings had been instituted to compel the satisfaction of a judgment in the manner prescribed by the non-imprisonment act ; (Ll. 1831, p. 396, § 3 *et seq.*)    After a hearing the judge decided that the debtor was guilty of fraud within § 4, sub. 2 and 3, and determined to commit him in default of his compliance with the terms of § 10.    The debtor refused to comply, and the judge signed a warrant of commitment, which, however, he refused to deliver, on the ground that he had been served with an injunction from the district court of the United States, restraining further proceedings.    On a motion for a mandamus commanding the judge to deliver the warrant, Cowen, J. who delivered the opinion of the court, remarks : " It is certainly impossible for me on the case stated, to see expressly that this injunction was properly issued, but it is not my duty to enquire whether it was or not.    I am not prepared to deny, that under circumstances, it might have been properly issued ; but if I were, it is enough to know that Judge Conckling has power to issue and enforce the process of injunction like any other chancellor.    If it has improvidently issued, I am bound to suppose that he will set it aside on motion.    *    *    *    Before I should be warranted in com-

Fish v. Weatherwax.

pelling a ministerial officer to disregard it, I must be satisfied * * * that the ordering of the writ was a mere act of usurpation * * * * " I am therefore called upon to order the doing of an act by Judge Lawrence which would be in direct violation of a valid injunction, and subject him to punishment accordingly. It is true that courts of law do not hold themselves restrained by injunction from proceeding ; nor should any officer be thus restrained while acting as judge. But no court ought to compel either parties or ministerial officers to put themselves in positive conflict with the order or writ of another court. The motion was therefore denied." (*Burt* v. *Mapes*, 1 Hill, 649, 651.) So the court will not grant a mandamus commanding justices to do an act which may render them liable to an action ; (*Rex* v. *Buckinghamshire, Justices of*, 1 B. & C. 485. *Rex* v. *Greame*, 3 A. & E. 615. *Rex* v. *Morgan*, ibid. 616, n. ;) and under that principle, a writ was refused to compel a magistrate to enforce a conviction, when it was doubtful whether such conviction was good in consequence of the evidence not having been stated ; (*Rex* v. *Broderip*, 5 B. & C. 239. 7 D. & R. 861 ;) nor to do that which may occasion costs for which they have no means for reimbursement. Therefore, where a chief constable appointed for one of the divisions of a riding, gave a bond to the clerk of the peace, with condition that he should well and faithfully execute his office ; should pay, apply, and account for all sums of money coming to his hands as chief constable of his division, and should in all other respects, perform and observe all such orders and directions as should be made or given to him in respect of his said office. The justices of the riding having ordered a rate to be levied on the inhabitants according to a certain valuation, the constable collected from his division, and paid over to the treasurer, an undue proportion of rate. The justices in sessions resolved that the bond was forfeited, but that no proceedings should be taken upon it. Application being made to this court on behalf of some of the parties aggrieved, for a mandamus to the justices or clerk of the peace, to put the bond in suit, the court refused a rule to show cause. (*In the matter of Lodge*, 2 Ad & Ellis, 123 ; *Rex* v *Justices of Buckinghamshire*, 3 Nev. & M. 68 ; *Rex* v. *Justices of Somersetshire*, 1 Harr. & Woll. 82.)

§ 33. And upon the abstract merits of the application, of which as we have seen in the last section, the court must judge when there is no discretion in the inferior officer it has been held that a mandamus will not lie to compel the trustees of a turnpike road to repair it ; (*Reg.* v. *Oxford and Whitney, Road Trustees*, 4 Perr. & D. 154 ;) and in Pennsylvania, that the supreme court will not issue a mandamus to the county commissioners to pay for the valuation of ground taken up by a road, in pursuance of an order of the sessions. (*Second Street Road*, 1 Y. 155.) So this writ was refused to the commissioners of customs to restore tobacco as wrecked goods, and upon which a lower rate of duty had been tendered. (*Rex* v. *Commrs. of Customs*, 1 Nev. & P. 536. 5 Ad. & Ell. 380.) So where a criminal information had been filed against a town clerk for misconduct in his office, in the election of councillors of the borough, the court refused this writ to compel him to produce the voting papers in his custody, which had been used at the election. (*Rex* v.

Fish v. Weatherwax.

*Nichollatts*, 5 Adolph. and Ellis, 376.) So the court refused to issue the writ to a board of guardians commanding them to admit to the office of clerk, a party who alleged he had been elected by a majority of good votes; because they would not thus enquire into the title of the voters. (*Reg.* v. *Dolgally Guardians*, 3 ·Nev. & Per. 542.) In Pennsylvania, a mandamus was refused to be allowed to compel the canal company to pay the relators a certain amount of damages, which had been awarded to them in the quarter sessions, on the report of viewers, appointed to assess damages sustained by reason of the Pennsylvania canal, (*The Com.* v. *The Canal Commissioners*, 2 P. R. 517;) and a mandamus to the commissioners of a county, to draw orders on the county treasurer, was refused, where it appeared by the return to the rule to show cause, that there was no money in the county treasury, applicable to the purpose. (*Com.* v. *The Commissioners of Philadelphia Co.* 1 Wh. 1.) So in Ohio, mandamus will not lie against a county auditor for refusing to audit an assistant appraiser's account, which has not been finally passed upon by the county commissioners. (*Burnett* v. *The Auditor of Portage County*, 12 Ohio R. 54.)

§ 34. Let us now proceed to consider the cases wherein the writ of mandamus has been adjudged to lie to inferior officers. And

I. It lies wherever such officer has a discretion to compel the exercise thereof, though not to determine the particular mode of such exercise. Therefore in *The People* v. *The Supervisors of Albany*, (12 Johns. 414, cited *supra*, § 31) the court say, had the supervisors refused to hear the application of the relator, and to examine and pass on his account a mandamus would have been proper to compel them to do so. The reason of this rule has been mentioned in its application to inferior tribunals and judicial officers, and it is therefore unnecessary to do more than call the attention of the reader to the following cases. (*Hull* v. *The Supervisors of the County of Oneida*, 19 Johns. R. 259, 262. *Anon.* 2 Pennington, ed 1835, 431. *Ex parte Farrington*, 2 Cowen, 407, 408. In the matter of *Bright* v. *Supervisors of Chenango*, 18 Johns. R. 242. *Rex* v. *Barber*, 6 Adolph & Ellis, 388. See also *Grier* v. *Schackleford*, 2 Tr. Con. Rep. 642. *Ex parte Jennings*, 6 Cowen, 518; and see other cases *infra* § 37.)

§ 35. II. Subject to the general rules we have before considered, (§ 5–16) and to the essential consideration that public justice demands the application of the remedy, this writ will lie as Mr. Graham has well expressed it, (Practice, 3d ed. vol. 1. p. 319,) wherever "the act required to be performed by a public officer is ministerial in its character, involving a direct duty imposed upon him by law."

§ 36. There are cases as Mr. Graham observes, (Practice 3d ed. vol. 1. p. 321,) where a private individual acts in a *quasi* public character, as for instance under the authority and sanction of a public statute, and in these cases a mandamus may be resorted to, to compel him to perform a duty consequent upon that relation. There is no difference in principle between such an individual and a public officer—both have public functions to perform, the neglect

or misconduct of which would be fraught with mischief to the community. Therefore, where a reference to arbitration had proceeded under the statute, a mandamus was granted, to the arbitrator under it, to appoint an umpire; (*The King* v. *Goodrich*, 3 Smith, 388; *The King* v. *Inhabitants of Washbrooke*, 7 D. & R. 221; Tidd, 9th ed. 844;) though, except in cases of arbitration founded upon some statute, or where the written submission to arbitration has been made a rule of court, under the general arbitration act, the proceedings would be regarded as a mere private transaction between the parties, in respect of which no writ of mandamus could issue. (1 Chitt. Gen. Prac. 805.) And a mandamus was granted by Nelson, Ch. J. on behalf of a non-resident, to compel the trustees to appoint referees in pursuance of the statute, in order to contest the validity of the debts presented and claimed by attaching creditors. (*Titus* v. *Kent*, 1 How. Sp. T. Rep. 80.) So where under a canal act, the arbitrators were required to appoint an umpire it was held that mandamus would lie to compel the appointment as therein enjoined. (*Rex.* v. *Goodrich*, 3 Smith, R. 388.) A number of cases arranged after the plan of Mr. Chitty, (1 Genl. Prac. 729 *et seq.*) which is believed to be the most convenient to the profession, are presented in the next section.

§ 37. *Particular Cases of the application of Mandamus to Inferior Courts and Officers.*

*Accounts.*—See County Courts, Overseers, Supervisors.

*Admission.*—See Commissioner's Office.

*Appraisers.*—See Commissioners.

*Arbitrators.*—See *supra.* § 36.

*Attorney.*—See *supra.* § 28. *Infra.* tit. Office. In most, if not all of the United States, the right to admit attorneys and counsel is exercised by the courts, and considered a judicial duty.

*Backing Warrants.*—See Justices.

*Bank.*—A board of directors of a bank have no right to pass a resolution excluding one of its members from an inspection of its books, although they believe him to be hostile to the interest of the institution; and it was accordingly held in this case, where the cashier of a bank had refused to permit a director to inspect the discount book, that a mandamus lay, commanding the cashier to submit the book to his inspection, although the conduct of the cashier had been approved by a resolution of the board. It was also held that the mandamus might properly be directed to the cashier, and need not be 'directed to the board; the court, however, intimating that as notice had been given to the directors, there would be no impropriety in directing the writ to them as well as to the cashier. (*The People ex rel. Muir* v. *Throop*, 12 Wend. 183.) See *infra.* Corporation. *Supra.* § 5, Authorities there cited.

*Bankrupts.*—See Commissioners.

*Barrister.*—See *infra.* tit. Office.

*Books and Documents.*—The writ issues to compel a removed clerk to deliver up books of a public corporate company; (*Rex* v. *Wildman*, 2 Stra. 879;)

---

Fish v. Weatherwax.

---

and to compel overseers to deliver up parish books to their successors, (*Rex* v. *Clapham*, 1 Wils. 305, post.) but it was refused to new churchwardens against the old, on the ground that the right might be tried by an issue at law ; (*Rex* v. *Street*, Mod. Cas. 98 ; and see *Anon.* 2 Chit. R. 255 ;) and in the case of a vestry clerk, he might maintain trover ; (*Anon.* 2 Chit. R. 255, G. P. 810 ;) nor will it lie to compel an attorney and steward to deliver up documents. (*Cocks* v. *Harmer*, 6 East, 404.). Though, at the instance of the lord of the manor, or of the judge of a court, a mandamus might issue to compel the steward or officer to deliver up the court roll, records, and proceeding, because the immediate production of them might be essential to the public. (*Rex* v. *Ingram*, 1 Bla. R. 30 ; *Hughes* v. *Mayre*, 3 T. R. 275 ; *Corpus Christi College*, 6 Taunt. 105, S. C. ; *Rex* v. *Erle*, 2 Burr. 1197 ; and see *Rex* v. *Hulston*, 1 Stra. 621 ; *Marshall's Case*, 2 Bla. 912 ; *Ex parte Grubb*, 5 Taunt. 206. Tidd, 9th ed. 87. See Postmaster General.)

*Bridges.*—See County Court.

*Canal.*—See Commissioners.

*Chancery.*—In Virginia the stat. 1825-6 was intended to prevent unreasonable and causeless delays in chancery suits ; and the 14th section authorizes the court of appeals to award a mandamus to the chancery court, to compel them to hear causes at the first term at which they are prepared for hearing, when no special cause appears for the refusal of the court to hear them ; but does not authorize a mandamus to compel a hearing of a cause, which, for reasons satisfactory, the chancery court continues. (*Richardson's Case*, 3 Leigh, 343.)

*Churchwardens.*—(1 Chitt. Genl. Prac. 793, 802. Rex v. *Simpson*, Selw. N. P. mandamus 1062, n. 1 ; *Anon.* 1 Ventr. 115 ; *Anon.* 1 Str. 686 ; *Rex* v. *Wix.* 2 Barn. & Adolph. 196 ; *Rex* v. *Clear*, 4 B. & Cresw. 899, 7 D. & R. 393 ; *Rex* v. *Smallpiece*, 2 Chitt. R. 288 ; *Ledesdon* v. *Exeter*, 1 Chitt. Genl Prac. 802, n. (d) ; *Rex* v. *Woolly*, 2 Str. 1259, Burns Just. Poor, 44 ; *Rex* v. *Canterbury*, 1 Bla. R. 667, 4 Burr, 2290.)

*Citation.*—See Clerks.

*Clergymen.*—Every endowed minister of any sect or denomination of Christians, who has been wrongfully dispossessed of his pulpit, is entitled to the writ of mandamus to be restored to his function, and to the temporal rights with which it is endowed. (*Runkel* v. *Winemiller*, 4 H. & McH. 429. See the act of 1828, ch. 78.) The office or function of a minister must be endowed, or a mandamus to restore cannot be granted. Endowment does not necessarily mean that land and tithes must be annexed to the living ; but a stipend, rents, emoluments and advantages of any kind, given and secured to the minister, during the time he shall officiate as minister, is an endowment. (*Ibid.*) On the application of the Rev. M. R. to be restored to the office of minister of the High Dutch Reformed Christian Church in F. it appeared that according to the mode of electing a minister by the constitution of the church, the congregation applied to the Synod of Pennsylvania for a minister to supply the place of the predecessor of R. who had left the church, that the Synod recommended R. who was approved and regularly inducted into the office of minister of the church, and became entitled by contract to

---

Fish v. Weatherwax.

---

the emoluments of the office, and remained in possession thereof until forcibly dispossessed by the defendants. According to the proof, the Synod was composed of ministers of the High Dutch Reformed congregation in the U. S. and no person could, by the rules of the church, be appointed as a preacher but one of the Synod, and one who was regularly ordained. Held, that these facts afforded sufficient *prima facie* evidence that R. was a member of the Synod, and was *regularly* ordained. And held, that R. was entitled to a mandamus to be restored his office. *(Ibid.)*

*Clerks.*—The writ lies to a clerk of a court or county to compel him to swear in one who has been appointed commissioner of deeds, and he is not at liberty to refuse on the ground that the person is incapable of holding the office, as that he is a minor or alien, or that the appointment has been improvidently made ; (*People ex rel. Dobbs* v. *Dean*, 3 Wend. 438.) So mandamus lies to compel a town clerk to deliver the records to his successor in office, if he refuse so to do on the application of his successor, and his showing himself to be clerk. (*Taylor* v. *Henry*, 2 Pick. 397. *Commonwealth* v. *Athearn*, 3 Mass. 287.) So a mandamus was issued from the provincial court to the clerk of a county court, (who had been legally removed from office,) to deliver up the records and seal of the court to the secretary of the province. (*Bordley* v. *Lloyd*, 1 H. & McH. 27.) So the writ will lie from the superior court, in Georgia, to the clerk of the court of ordinary, compelling him to issue a citation in the usual form to the creditors and kindred of an intestate, to show cause why an applicant for administration, *prima facie* entitled, should not receive letters of administration. (*Ex parte Carnochan*, Charlt. 215.) The writ of mandamus is the proper remedy to restore a clerk ousted from his office by the illegal appointment of another person. (*Dew* v. *The Judges of Sweet Springs District Court*, 3 Hen. & Munf. 1.) The person occupying the office ought to be made a party to the rule, or to the conditional mandamus, or such rule or mandamus ought to be served upon him, so as to enable him to defend his right before the peremptory mandamus issues. But, if it appears from the record that he was apprised of the proceedings and defended his right, it is sufficient. (*Ibid.*) If the original rule be to show cause wherefore a mandamus shall not issue to admit the clerk, the subsequent rule, or the mandamus founded thereon, may nevertheless be to restore him to the said office ; for such rules may be changed and modified so as to square with the rights of the parties, and attain the real justice of the case. *(Ibid.)*

*College.*—See Warden.

*Commissioners.*—The writ has been held to lie :—to commissioners of *bankrupts*, as to compel them to issue their warrant for a further examination of the bankrupt, (*In re Bromley*, 3 D. & C. 310, though not to grant a certificate of conformity. See *Ex parte King*, 7 East, 92, *supra* § 31) to canal commissioners as where the waters of the Chitteningo Creek were diverted from a mill and other works, on that creek, to feed the Erie Canal ; the mill-owner claimed under a grant from the state, bounded on the margin of the creek ; he applied to the canal commissioners to appraise his damages, but they refused on the ground that he had no title to the creek. Held, that a

Fish v. Weatherwax.

mandamus should issue, ordering them to appraise. (*Ex parte Jennings*, 6 Cow. 518.) So it lies to compel the county commissioners to issue their warrant for empannelling a new jury, where one jury has already been summoned and acted, without being able to agree in locating a highway. (*Mendon* v. *Worcester*, 10 Pick. 235 ;) to commissioners of excise, as when it is the duty of an officer of the excise to grant, and he should refuse, a permit to remove wine, the court would compel the delivery of a proper permit. (*Rex* v. *Commissioners of Excise*, 2 T. R. 381 ; *Rex* v. *Cookson*, 16 East, 376 ; *Rex* v. *Commissioners of Liverpool*, 2 Maule & S. 223 ;) to commissioners of highways as to compel commissioners of highways in New York to open a road laid out by the judges of the court of common pleas, on an appeal to them from the refusal of such commissioners to lay out the road. (*People* v. *Champion*, 16 Johns. 61 ;) so to compel them to lay out or discontinue a road ; (*People* v. *Commissioners of Salem*, 1 Cowen, 23;) or to open and work a road ; and it will be granted without regard to the near approach of the expiration of their offices ; for when the term of office expires, their successors must obey the command of the writ ; (*People ex rel. Case* v. *Collins*, 19 Wend. 56 ;) to commissioners of the land tax to compel them to elect a clerk ; (*Rex* v. *Commissioners of Westminster*, 1 T. R. 146 ;) or to swear him in and admit him ; (*Rex* v. *Thatcher*, 1 Dowl. & Ryl. 426 ;) to commissioners of poor, and the constitutional court of South Carolina may, by writ of mandamus, direct the commissioners of the poor to discharge the duties imposed on them by act of assembly, if they fail so to do ; (*Commissioners* v. *Lynah*, 2 M'Cord, 170 ; See Overseers, Poor ;) to commissioners of sewers where they are bound to repair, though the writ would not be granted on the application of the owner of marsh lands who was himself obliged to repair and whose neglect caused an inundation ; (*Rex* v. *Commissioners of Sewers*, 1 Barn. & Cresw. 477 ; 2 Dowl. & Ryl. 700 ;) to commissioners of taxes, to re-assess the inhabitants upon default made by the collector, it being the duty of the officer and the inhabitants to take care that the money paid for taxes finds its way into the treasury. (*In re Woolton*, 6 Price, 103.)

*Committee.*—A mandamus will be granted, in New Jersey, to compel a township committee to assign a road to the overseers of the highways. (*Anonymous*, 2 Halst. 192.) But the rule served upon the committee must specify the object required to be done with sufficient particularity. (Ibid.)

*Common Pleas.*—In New Jersey, a mandamus will lie to the court of common pleas to make an appointment of surveyors, to vacate a road which has been laid out and recorded, though never opened, where, after a proper application, they have refused to make such appointment. (*State* v. *Judges*, 4 Halst. 246.)

*Constable.*—(See *Rex* v. *Manchester*, 1 Dowl. & R. 454. See County Auditor.)

*Corporations.*—See *infra*, § 38, *et seq.*

*Counsellor.*—See *supra*, tit. Attorney.

*County.*—See Commissioners.

*County Auditor.*—A mandamus it seems is the proper remedy to compel a County Auditor to issue an order for constable's fees, where he is entitled to

Fish v. Weatherwax.

them by law; (*Smith* v. *The Commissioners of Portage County*, 9 Ohio R. 25;) but it will not lie against this officer, for refusing to audit an assistant appraiser's account, which has not been finally passed upon by the county commissioners. (*Burnett* v. *The Auditor of Portage County*, 12 Ohio R. 54.)

*County Court.*—Where the county court refuses to draw their warrant on the treasurer of the county, directing him to pay an account which has been allowed by the circuit court to the clerk of said court for office rent, a mandamus is an appropriate remedy to compel them to do so. (*Boone* v. *Todd*, 3 Mis. 140.) So a mandamus lies from the superior court of Virginia to a county court, to compel such court to build a bridge or causeway, according to the section of the act of assembly concerning public roads. (*Commonwealth* v. *Justices*, 2 Virg. Cas. 9.) A return to such mandamus, by the justices, that the convenience of the people does not at that time authorize the heavy burden which will be imposed by the erection of such bridges, &c. is insufficient, because it does not directly deny the necessity of the bridges, or aver that the surveyor, or his assistants, could make or maintain the same. (Ibid.) Such return, being insufficient, should not be traversed, because the matter of the return should not be put in issue, and therefore the traverse should not be received. (*Commonwealth* v. *Justices*, 2 Virg. Cas. 9.) So where bridges or causeways are necessary within the limits of a county, and the surveyor of the road, with his assistants, cannot make or maintain the same, the superior court of law for such county hath the power to compel the justices, by writ of mandamus, to build or repair such bridge or causeway. (Ibid. 499. *Brander* v. *Chesterfield Judges*, 5 Call, 548.) Where the county court, in Virginia, rejected an application for opening a new road, on a regular hearing, it was held, that a mandamus could not be awarded, by the circuit court, to compel the county court to open the road. (*Jones* v. *Strafford Justices*, 1 Leigh, 584.) Mandamus does not lie for the builder of a public bridge, to compel the county court to levy the proportion of the price of the bridge chargeable upon the county; a specific remedy being given him, by statute, to recover the same by action of debt against the justices refusing to levy it. (*Justices* v. *Munday*, 2 Leigh. 165.) The superior court will not grant a mandamus to compel a county court to issue a pluries attachment against the body of a garnishee, who had been taken on the *alias*, and discharged by a judge of the general court under a *habeas corpus*. (*Jackson* v. *Justices of Harrison*, 1 Virg. Cas. 314.) Mandamus to compel county court to record deed of emancipation. (*Manns* v. *Givens et als.* 7 Leigh, 689.) The circuit court will, by mandamus, compel the county court to settle and allow all claims against the county, and to levy a tax for their liquidation, if it refuse. (*Madison Court* v. *Alexander*, Walk. 523.)

*Court.*—See Inferior Court.

*Court Levy.*—A mandamus will not issue to compel a levy court to levy a sum of money, after the time prescribed by law for making it has passed. (*Ellicott* v. *The Levy Court*, 1 H. & J. 359.) Cause shown by the justices of the levy court why a mandamus should not issue against them, to levy a sum of money claimed by the sheriff for poundage and other fees, for execu-

Fish v. Weatherwax.

ting sundry writs for the use of the justices of the levy court. (*Howard* v *The Levy Court of A. A. County*, 1 H. & J. 538.)

*Court of Sessions.*—In Massachusetts, a mandamus may be awarded to compel the court of sessions in each county to erect or provide a suitable house of correction. (*Commonwealth* v. *Hampden*, 2 Pick. 414 ;) and also to compel the court of sessions, that, improperly and without good cause, rejects the verdict of a jury summoned and empannelled to estimate the damages occasioned to any person by the laying out of a highway, to do right and accept the verdict. (*Commonwealth* v. *Norfolk*, 5 Mass. 435. *Commonwealth* v. *Middlesex*, 9 ib. 388.)

*Dead Body.*—See Jailer.

*Deeds.*—See Clerk, Inferior Court, Mayor, Register of Deeds.

*Ecclesiastical Court, officers and persons.*—A mandamus lies to compel the ecclesiastical judge to grant probate to the executor named in a will ; (*Anon.* 1 Vent. 335 ; *Anon.* 1 Stra. 152 ; *Dunkin* v. *Man*, Sir T. Raym. 233 ; *Offey* v. *Best*, 1 Lev. 186 ; *Rex* v. *Inhabitants of Horsley*, 8 East, 408 ;) or letters of administration to the husband of his wife's estate, unless the husband has done something to part with his right ; (*Rex* v. *Bettesworth*, Stra. 891, 1118 ;) and a mandamus for administration to the next of kin may be granted, notwithstanding a suit depending, if his consanguinity be not denied ; (*Rex* v. *Hay*, 4 Burr. 2295 ; *Rex* v. *Dr. Hay*, 1 Bla. R. 640.) But when the validity of a will has been contested in the spiritual court, and a suit is still depending there concerning it, the court will not then grant a mandamus to the judge of such court to grant a probate to any particular person. (*Rex* v. *Hay*, 4 Burr. 2295 ; *Lovegrove* v. *Bethell*, 1 Bla. Rep. 68.) Nor will the court compel the grant of administration *durante minore aetate*, for the law has not decided who is entitled to such administration, and we have seen that a mandamus only issues to enforce a legal right. (*Smyth's case*, 2 Stra. 892. See 1 Chitty's Genl Prac. 806, 799. See in general Selwyn's N. P. tit. Mandamus, 11 ; Harrison's Index, Mandamus, 6. *Rex* v. *Chester*, 1 T. R. 396. *Ante ;* but see *Clark* v. *Sarum*, 2 Stra. 1082. *Rex* v. *Bloer*, 2 Burr. 1043. *Rex* v. *London*, 13 East, 420 ; 1 T. R. 331 ; *Rex* v. *Field*, 4 T. R. 125. *Rex* v. *Barker*, 3 Burr. 1265 ; 1 Bla. R. 300, 352, S. C. *Rex* v. *Jotham*, 3 T. R. 575. *Anon.* 2 Chit., R. 254 ; *Rex* v. *Harris*, 3 Burr. 1420 ; C. G. P. 793. 1d. ibid. ; *Rex* v. *Warren*, Cowp. 379. *Rex* v. *St. James's*, Cowp. 413 ; *Rex* v. *King's Clere*, 2 Lev. 18 ; *Ile's case*, 1 Vent. 143 ; Selw. N. P. Mandamus, 11. n. *Rex* v. *Canterbury*, 8 East, 215 ; see other cases as to clerical persons, Impey, Mandamus. 103 to 106.)

*Highway.*—See Commissioners, Committee, Common Pleas, County Court, Overseers, Selectmen.

*Inferior Court.*—Every inferior jurisdiction, whether created by a public or a private law, is subject to have its proceedings inspected, either by appeal or by certiorari and mandamus, where such jurisdiction acts judicially ; they will be coerced to perform their duties, and restrained and confined within their proper limits as prescribed by law. (*Williamson* v. *Carnan*, 1 G. & J. 184, per Baltimore County Court.) Therefore where an inferior court of record, in Virginia, improperly refused to admit a deed to be proved and re-

---

Fish v. Weatherwax.

---

corded, it was held, that it might be compelled to do so by a peremptory mandamus. (*Dawson* v. *Thurston*, 2 H. & M. 132.) It is a matter of right in the defendant, who is a non-resident of a state, and is sued in a state court, to remove the cause to the circuit court of the United States for such state, on complying with the terms prescribed by the act of congress ; and if the inferior court refuse to allow the removal of the cause, it may be compelled by mandamus, emanating from the superior court of the state, not from the circuit court of the United States. (*Brown* v. *Crippin & Wise*, 4 Hen. & Munf. 173.) *Quære :* Whether a mandamus lies from a superior court of chancery to a county court, compelling the justices to hear and determine a cause, when there appears to have been unreasonable delay ? (*Webb* v. *Barbour*, 4 Hen. & Munf. 462.) When it is a duty to hold a court for the benefit of suitors, it may be enforced by mandamus, (*Rex* v. *Eastings*, 5 Bar. & Ald. 692 ; 1 D. & R. 148 ; *Rex* v. *Havering*, 2 D. & R. 176, n. ; 5 B. & C. 691 ;) and this even as to the place of holding ; (*Rex* v. *Ilchester*, 2 D. & R. 727 ; *Rex* v. *Grantham*, 1 Wils. 716 ; and see C. G. P. 795, tit. Inferior Courts, &c ;) and the writ may be issued to compel the holding of a copyhold court, to accept a surrender. (*Rex* v. *Boughey*, 1 Bar. & Cres. 565. 1 Chitty's Genl. Prac. 794, 795.)

*Jailer.*—Where a debtor died in prison, and the jailer refused to deliver the body to his friends for interment, until a claim was paid, the court ordered a peremptory mandamus to issue. (*Wakefield bailiff, Ex parte* 1 Gale & Dav. 566 )

*Justices.*—If the justices omit from their nomination to the executive for the appointment to the office of sheriff, the name of any particular justice, a mandamus will not lie to compel them to make such nomination ; for in the exercise of this discretionary power, they cannot be controlled by the superior courts (*Frisbie* v. *Justices of Wythe*, 2 Virg. Cas. 92.) The removal of a justice with his family from his county to another, and remaining out for several years, is neither an abandonment or virtual resignation, or forfeiture of his office, and whether void or only voidable by a judicial proceeding, eventuating in a judgment of amotion, no mandamus ought to issue to invest the applicant with an office not belonging to him if void, or which might be taken from him if voidable. (*Chew* v. *Justices of Spottsylvania*, 2 Virg. Cas. 208.) Whether the acceptance of the office of deputy clerk of a county court vacates the office of justice or not, the superior court will not grant a mandamus to compel the county court to admit the applicant to an office not belonging to him if void, or which might be taken from him if voidable. (*Amory* v. *Justices of Gloucester*, 2 Virg. Cas. 523.) Mandamus lies from circuit court, to compel justices of the peace to administer the oath of insolvency, and to order the insolvent's discharge. (*Harrison* v. *Justices of Norfolk*, 2 Leigh, 764.) A writ of mandamus lies to compel the backing of a warrant in another county, the duty being ministerial and imperative ; (*Rex* v. *Kynaston*, 1 East, 117.) See Overseers. (See also 1 Chit. Genl. Prac. 801. *Rex* v. *Sparrow*, 2 Stra. 1123 ; Burn's J. Poor, 24, 25 ; *Rex* v. *Norwich*, 1 Bar. & Adolp. 313 ; what must be sworn, *Rex* v. *Bedfordshire*, Cald. 157 ; and *Rex* v. *Peterborough*, id. 238. *Rex* v. *Stafford*, 1 Stra. 512. *Rex* v. *Wilt-*

Fish v. Weatherwax.

*shire*, 1 Wils. 138; *Rex* v. *Horton*, 1 Term R. 374. *Rex* v. *Salop*, 3 B. & Adolp 910.)

*Jury* —See Commissioners.

*Lord and Stewart of a Manor*.—To compel an admission to copyhold. See 1 Chitty's Genl. Prac. 794. (*Rex* v. *Robinson*, 2 Smith's Rep. 274; Dick. Sess. 590, 3d edit.; and 3 Geo. 4, c. 23, s. 3, aids defects in form. *Rex* v. *Rennett*, 2 T. R. 197; *Rex* v. *Brewsters' Company*, 3 B. & Cres. 172; 4 D. & R. 492, S. C.; C. G. P. 351, and 794, note (*h*). 1 Mad. Ch. Pr. 253, 254; *Moor* v. *Huntingdon*, Nels. 12; Co. Copyl. sect. 39. *King* v. *Coggan*, 6 East, 431; 1 Mad. Ch. Pr. 254. 1 Wm. 4, c. 21, s. 8.)

*Magistrate*.—In Virginia, a mandamus lies to compel the magistrates, to whom an execution debtor has applied to have the oath of insolvency administered to him, to administer such oath, and order the debtor's discharge. (*Harrison* v. *Emmerson*, 2 Leigh, 764.)

*Mayor*.—After a charter election in the city of New York, the inspectors of the sixth ward certified thus: " We have received returns from the several districts of the said ward, &c., copies of which returns certified by us are hereunto annexed. It is impossible for us to declare what persons were, by the greatest number of votes, elected, by reason of lawless violence committed upon the inspectors of the first district &c. and the dispersion of the ballots before they were counted," &c. The ward was composed of four districts, three of which had made regular returns, exhibiting the names of the candidates and the number of votes given for each, and copies of these were annexed to the above certificate; but the first district made no return save a statement of the affair which led to the dispersion of the ballots, giving this as a reason why no return could be made. The returns from the other districts, however, showed an election, and it did not appear that the votes given in the first district could have changed the result. *Held*, that the persons thus appearing to have been elected officers of the ward, were entitled to qualify as such; and a mandamus was granted commanding the mayor to administer the oath of office to them. (*Ex parte Heath and others*, 3 Hill, 42.) The writ also lies to the mayor of a corporation to admit an apprentice to his freedom, when he has a right by service, although he had broken his covenant not to marry; (*Townsend's case*, 1 Lev. 91. See T. Raym. 69;) so the writ lies to compel the enrolment of indentures in proper cases but not otherwise. (*Rex* v. *Marshall*, 2 T. R. 2.)

*Oath*.—See Clerk, Commissioners, Magistrate, Overseers.

*Office*.—In general it may be laid down as a rule, that where a man is refused to be admitted or wrongfully turned out of any office or franchise that concerns the public, or the administration of justice, he may be admitted or restored by mandamus; (Bac. Ab. tit. Mandamus, c. 1. 11 Co. 93; *Bagg's case*, 2 Sid. 112. Same rule laid down by Glyn, Ch. J.;) if no other adequate specific legal remedy exist. (See *supra*, § 13.)

I. The office must concern the public, (Bac. Ab. tit. Mandamus, C. *Bagg's case*, *ut sup. Anon.* 2 Ld. Raym. 989.)

Therefore a writ of mandamus will not lie to try the title to a mere public employment at the will of the executive, or other public functionary, as the

---

Fish v. Weatherwax.

---

captain of the magazine guard ; (*State ex rel. Gruber* v. *Champlin. Same* v. *Hunt, et al.* 2 Bailey 220 ;) nor to restore a professor to his office in the College of William and Mary, in Virginia; (*Bracker* v. *William & Mary College*, 3 Call, 573 ;) nor to restore a town clerk whose office is *durante bene placito* of the Mayor and Aldermen ; (Bac. Ab. tit. Mandamus, C. 1. Vent. 77, Sid. 461, Lev. 291, Raym. 188 ;) nor to the benchers of one of the inns of court to admit a person as a member or student, nor to call him to the bar so as to enable him to practice as a barrister ; (*Rex* v. *Gray's Inn*, Dougl. 353 ; *Wooller's case*, 4 B. & C. 855 ;) the only mode of relief is by appeal to all the judges. In the case of D. W. Harvey there was such an appeal, but it was unsuccessful ; (and see *Rex* v. *Gray's Inn*, 1 Dougl. 353 ;) nor to the College of Physicians to examine a party so that he may be admitted a fellow of the college ; (*Rex* v. *College of Physicians*, 7 T. R. 282 ;) nor to admit an attorney, that being discretionary in the judge who examines him, and the only remedy is petition to the court. (2 Geo. 2, c. 23, secs. 2 to 6 ; 23 Geo. 2, c. 26, s. 15 ; 3 Bar. & Adolp 770 ; 10 B. & Cres. 511. See 1 Chitty's Genl. Prac. 798. *Rex* v. *Farrington*, 4 Dowl. & R. 735 ; *Giles's case*, Stra. 811 ; *Rex* v. *Nottingham*, Say. Rep. 217 ; *Rex* v *Storrey*, 5 Dowl. & R. 308.)

But whenever the office, whether it be temporal, ecclesiastical, or otherwise, is legal and public, or fixed and permanent, by statute, charter, or usage, then this writ lies to swear in, admit, or restore a party entitled to the same. Upon this principle in Maryland, every endowed minister, of any sect or denomination of christians, who has been wrongfully dispossessed of his pulpit, is entitled to the writ of mandamus, to be restored to his function, and the temporal rights with which it is endowed. (*Runkel* v. *Winemiller*, 4 Har. & M'Hen. 429. *Aliter*, if the office is not endowed. ib. ;) and so in South Carolina, a mandamus will lie to restore to his office an inspector of tobacco, removed by an irregular summary proceeding. (*Singleton* v. *Commissioners*, 2 Bay, 105.) Hence mandamus is the proper remedy to restore a clerk ousted from his office by the illegal appointment of another person. (*Den* v. *Judges*, 3 H. & M. 1.) If the original rule was, to show cause why a mandamus should not issue to admit the clerk, the subsequent rule, or the mandamus founded thereon, may nevertheless be, to restore him to said office. (Ib.) The person occupying such office ought to be made a party to the rule, or such rule ought to be served upon him, so as to enable him to defend his right, before the peremptory mandamus issues. If, however, it appears from the record that he was apprised of the proceedings, and defended his right, it is sufficient. (Ib.) And a peremptory mandamus will issue to a county commissioner's court, to compel them to restore a clerk, the cause of whose removal is not stated on their records. (*Street* v. *Gallatin County Commissioners*, Breese, 25.) So a mandamus lies to admit or restore a town clerk ; (Bac. Ab. tit. Mandamus, C. 1. Noy. 78, Style 457 ;) mayor, alderman, burgess, common councilman, freeman or other person, member of a corporation ; (id. 11 Co. 94, 2 Balst. 122, Style, 299, 457, Raym. 12, 431, 437, Vent. 302, Cro. Jac. 450 ;) recorder, (id. Style, 452, Vent. 143, 153, 4 Burr. 1999 ;) clerk of the peace, (id. 4 Mod. 31, Show. 282, 12 Mod. 13 ;) or constable (id. 2 Roll. 82. Roll. Abr. 535, Salk. 175. See *Strong, petitioner*, 20

Fish v. Weatherwax.

Pick. 484.) In general if the office is acquirable by purchase, and an oath of office, as well as oaths to government are administered, it will be presumed to be public; and on that ground a mandamus was granted to restore a party to the office of clerk or surveyor to the city works; and this writ was issued to restore the treasurer of the New River Company, for though it was but a private corporation, yet it was created by the king's letter-patent. (Id. ; *Anon.* 1 Stra. 696, S. P ; *Rex* v. *London,* 1 Lev. 123 ; Sid. 169 ; 3 Mod. 334, S. C. ; but see the last report, which shows it was rather experimental.)

II. As we have seen before, mandamus will not lie to admit or restore to an office, if there be another remedy. As in the case of *Rex* v. *Bishop of Chester,* (1 T. R. 404, cited *supra,* § 13. See also *Powel* v. *Milbank,* cited *supra,* § 12. *Rex* v. *Turner,* id. ;) where *quare impedit* lay. Therefore, where one claims an office to which he alleges he is duly elected, while another is holding it by color of right, this writ will not lie, because there is a remedy by *quo warranto* or information. (*People* v. *The Corporation of the City of New York,* 3 Johns. Cas. 79,) by one of which proceedings the person in possession ought first to be ousted. (*Rex* v. *Bankes,* 3 Burr. 1454. *Rex* v. *Cambridge,* 4 Burr. 2011. *Rex* v. *Bedford,* 1 East, 80. *Rex* v. *Truro,* 3 Barn. & A. 592.) But where a mandamus presents the only specific or convenient mode of trying the right to an office, it may be employed. Therefore mandamus was granted to a corporation to admit and swear in one who appeared upon the affidavits to have the greater number of legal votes, notwithstanding another had been admitted and sworn into the office, there being no other specific, or at least no other such convenient mode of trying the right. (*Rex* v. *Bedford Level,* 6 East, 536 ; and see *Rex* v. *York,* 4 T. R. 699.) ·

As to mandamus to admit corporate officers, see further *infra,* § 42, *et seq.*

As to mandamus to admit ecclesiastical officers and persons, see 3 Steph. N. P. 2309, 2310, 2311 ; Selwyn's N. P. tit. Mandamus, II ; Harrison's Dig. tit. Mandamus, vol. 2, 1479, tit. Ecclesiastical Law, id. 952 ; Bac. Ab. tit. Mandamus, c. 1, 2 ; Com. Dig. Mandamus, 1 Chitt. Genl. Prac. 799 ; and *Rex* v. *Chester,* 1 T. R. 396 ; *Clark* v. *Sarum,* 2 Strange, 1082 ; *Rex* v. *London,* 13 East, 420, 1 T. R. 331 ; *Rex* v. *Field,* 4 T. R. 125 ; *Rex* v. *Bloer,* 2 Burr. 1043 ; *Rex* v. *Greame,* 2 A. & E. 615 ; *Justices of Bucks,* 3 N. & M. 68 ; *Rex* v. *Barker,* 3 Burr. 1265. 1 Bla R. 300, 352 ; *Rex* v. *Bishop of Ely,* 8 B. & C. 112 ; *Rex* v. *Jotham,* 3 T. R. 575 ; *Anon.* 11 Mod. 137 ; *Rex* v. *Hay,* 4 Burr. 2295. 1 W. Bl. 640 ; *Anon.* 2 Chit. 254 ; *Rex* v. *Harris,* 3 Burr. 1420 ; *Rex* v. *Archbishop of Canterbury,* 8 East, 213 ; *Rex* v. *St. Margaret's Westminster,* 4 Maule & Selw. 250 ; *Rex* v. *Thetford,* 5 T. R. 364 ; *Rex* v. *Coleridge,* 2 Barn. & Ald. 806. 5 Dowl. & Ryl. 602. 1 Chitt. 588 ; *Rex* v. *Warren,* Cowp. 370 ; *Rex* v. *St. James,* Cowp. 513 ; *Rex* v. *King's Clere,* 2 Lev. 18 ; *Ile's case,* 1 Vent. 143 ; *Rex* v. *Churchwardens of Westminster,* 4 M. & S. 250 ; *Rex* v. *Exeter,* 2 East, 462 ; *Rex* v. *Coleridge,* 2 B. & A. 806 ; *Ex parte Blackmore,* 1 B. & Ad. 122. See other titles of this section.

It has been made a question, what removal or turning out of an officer will entitle him to a mandamus, and it seems to be the better opinion, that one

who is suspended, may have the writ as well as one who is totally removed, because were it otherwise, they might always suspend; and thereby not only effectually keep him out, but also deprive him of all remedy or redress. (Bac. Ab. tit. Mandamus, C. 3 Lev. 162, Keb. 868. *The King* v. *Men of Guildford*, Raym. 152. Vide *The King* v. *The Free Fishers of Whitstable*, 7 East, 353. *Dr. Goddard* v. *College of Physicians*, Keb. 75, 84.) But where a corporator who was entitled to share in the profits of a fishery, which the corporators worked in partnership, was suspended from the perception of the profits, until he paid a fine imposed by a by-law ; the court refused a mandamus to *restore* him to office, since he was not put out, but only deprived of its profits, for which he might have a remedy by action, if unlawfully suspended. (*The King* v. *The Free Fishers of Whitstable, ut supra.** See also *Delacey* v. *Neuse Riv. Nav. Co.* 1 Hawks, 274 ; *Fuller* v. *Plainfield Academic School*, 6 Conn. 532 ; *Street* v. *Gallatin County*, Breese, 25 ; *Taylor* v. *The Commonwealth*, 3 J. J. Marsh. 306 ; *Hardin County Court* v. *Hardin*, Peck's R. 291.)

*Overseers.*—In New Jersey, a mandamus will be granted against an overseer of a *highway*, to compel him to open, clear out and make a certain road within the limit and division assigned to him by the township committee. (*The State* v. *Holliday*, 3 Halst. 205.) So it will be granted to compel overseers of the poor, to deliver up parish books to their successors. (*Rex* v. *Clapham*, 1 Wils. 305.) A mandamus lies to the overseers to make a rate, (*Luddlestone* v. *Exeter*, Fol. 18 ; *Rex* v. *Edwards*, 1 Bla. Rep. 637 ; *Rex* v. *Fisher*, Sayer's R. 160 ;) the rule for which is absolute in the first instance, for otherwise the poor might starve. (Id.) So it lies to overseers and guardians to pass their accounts ; (*Rex* v. *Warwickshire*, 2 Dowl. & Ry. 299 ;) to justices to swear an overseer to his accounts ; (*Rex* v. *Middlesex*, 1 Wils. 125, *accord.*, but see *per* Lord Tenterden, in *Rex* v. *Essex*, 3 Bar. & Adolp. 943 ;) or to proceed to pass overseers' accounts ; (*Rex* v. *Townsend*, 1 Bott, 305 ;) or to levy the balance of the overseers' accounts ;) (*Rex* v. *Somersetshire*, 2 Stra. 992 ; 2 Sess. Cas. 283 ; *Rex* v. *Pascoe*, 2 M. & S. 343 ;) or to hear a complaint against overseers for not delivering a full account ; (*Rex* v. *Worcestershire*, 3 Dowl. & Ry. 299 ; 2 Mag. Cas. 7, S. C ;) or to hear an appeal against his account, although not previously allowed at a special sessions ; (*Rex* v. *Colchester*, 5 Bar. & Ald. 535 ; 1 Dowl. & R. 146, S. C. ; and see *Rex* v. *Gloucestershire*, 1 Bar. & Adolp. 1 ;) or a complaint against him for not paying over the balance. (*Rex* v. *Pascoe*, 2 Maule & S. 343 ; *Rex*

---

* It is also stated in this case that he might have a remedy in equity against the corporators as partners, if unlawfully suspended, but as we have before seen, *supra*, § 13, a remedy in equity will not prevent the granting of a writ of mandamus, though it will influence the court in the exercise of the discretion which they possess. The case in question might, perhaps, be sustained upon this ground, if it were regarded as simply declaratory of the general principle that the court will not grant the writ, where the remedy in equity is in their judgment plain, simple and *expeditious ; but if it* be regarded as affirming that a remedy in equity is an answer to an application for the writ, it is too broad and inconsistent with later decisions.

v. *Manchester*, 1 Dowl. & Ry. 454 ; *Rex* v. *Worcestershire*, 3 Dowl. & Ry. 299 ; 2 Cas. Mag. 7, S. C.) But not to justices to commit an overseer for not accounting, their authority, in that respect, being discretionary.

*Poor.*—See Commissioners.

*Postmaster General.*—Mandamus lies to the postmaster general, requiring him to give a credit on his books to certain contractors ; which credit had been certified by the solicitor of the treasury to be due to the contractors pursuant to an act of congress ; and the postmaster general had been ordered by the same act to give the credit, but refused compliance.· (*Kendall* v. *U. States*, 12 Peters, 524.)

*Railway Companies.*—See Corporations.

*Rate.*—See Overseers.

*Records.*—See Clerk, Register of Deeds. .·

*Religious Society.*—See Corporations, *infra*, § 38, *et seq.*, Trustees.

*Register of Deeds.*—In Connecticut, a mandamus was ordered to issue against a register of deeds, to require him to record a deed of bargain and sale given by a collector to the purchaser of lands sold for taxes. (*Strong's case*, Kirby, 345.) See Clerk, Inferior Court, Mayor.

*Schoolmaster.*—A mandamus lies to restore a party to the office of a master of a free school. (*Anon.* Lofft, 146.) See Warden.

*Secretary.*—A mandamus is the proper remedy to compel a secretary of state to deliver a commission to which a party is entitled. (*Marbury* v. *Madison*, 1 Cranch, 137.) So it lies to the secretary of the land-office, of Pennsylvania, to compel him to issue patents to warrantors, under the act of 8th March, 1815. (*Commonwealth* v. *Cochran*, 1 S. & R. 473.) And it lies also to the secretary of the land-office, to compel him to make the calculations of interest and purchase money on the lands sold, but not to make them in a certain manner, nor in a proper manner. (*Griffith* v. *Cochran*, 5 Binn. 87.)

*Selectmen.*—In Connecticut, a mandamus will lie to compel selectmen of a town to pay the damages assessed on a highway laid out by them, and to open such highway. (*Treat* v. *Middletown*, 8 Conn. 243.)

*Sewers.*—See Commissioners.

*Sheriffs.*—Mandamus lies to a sheriff to compel him to execute a deed to a redeeming creditor, but without prejudice to the rights of the parties in a future litigation in equity. (*Van Rensselaer* v. *Sheriff of Albany*, 1 Cowen, 501.) See *Ex Parte Wilson*, (7 Hill, 150,) where this writ was denied to compel a sheriff to give a deed to a creditor seeking to redeem, whose judgment was not a lien within the redemption law or the act of 1837. (See also *The People* v. *Perrin*, 1 Howard Sp. T. Rep. 75. *Lester* v. *Gates ; Thompson* v. *Gates*, id. 77.) Whether a mandamus is the appropriate remedy to compel a sheriff to make a deed to property which he has sold? (*Davis* v. *Pryor*, 6 S. & M. 114.)

*Speakers.*—In Ohio should the speakers of the two houses in the general assembly refuse to sign a certificate of an election, it seems that the supreme court can compel them to do it by mandamus. (*The State of Ohio* v. *Moffit*, 5 Ohio, 358.)

Fish v. Weatherwax.

*Steward.*—See 1 Chit. Gen. Prac. 792, 793, 810, 811, *supra*, Books and Documents.

*Supervisors.*—Where under the loan act of New York of 1786, (which authorized the emission of bills of credit to the amount of £200,000, and loaning the same upon mortgage on real estate, and provided that if any deficiency should accrue upon foreclosure, the same should be assessed and levied as other county charges, in the county where the lands were situate,) a loan was made, and upon the foreclosure in 1792, there was a deficiency : it was held, on a motion for mandamus in 1833, that the writ would lie to the supervisors, to compel them to raise the deficiency as the ordinary county charges were levied and collected. (*The People* v. *The Supervisors of Columbia,* 10 Wend. 363.*) So where under the act of June 19th, 1812, by which the towns of Greenbush and Berlin, in Rensselaer, were divided into three towns, the overseers of the poor and the supervisors of said towns were required to meet and apportion the money and poor belonging to the said two towns amongst the three. It was held, that if the duty was neglected, either entirely or partially, by omitting to pass upon a particular pauper, that a mandamus would lie to compel them to correct the apportionment. (*In re The Supervisors, &c. of the Town of Sandlake* v. *The Supervisors, &c. of Berlin,* 2 Cowen, 485.) So a mandamus lies to the supervisors of a county, to compel them to allow the account of the clerk of the county, for advances, made by him in purchasing books for recording deeds and mortgages, &c. and for sending notices to judges and justices of the peace of the pedlars who are licensed, with interest on such advances. Such services being required by law of the clerks, and no specific compensation provided for them, they are properly chargeable to the county, and ought, therefore, to be allowed by the supervisors and paid according to the act, (sess. 36, ch. 49, s. 1.  2 N. R. L. 137.  1 Rev. Statutes, 386,) for defraying the public and necessary charges in the respective counties, &c. (*Bright* v. *The Supervisors of Chenango,* 18 Johns. R. 242.) So where a judge of the county courts attended at the clerk's office, on notice from the clerk, to witness the drawing of juries, it was held, that a mandamus would lie to the supervisors of the county to compel them to fix his compensation. (*The People* v. *The Supervisors of Albany,* 12 Wend. 257.) So a mandamus will lie to compel the supervisors to audit the account of the clerk

---

* The alternative mandamus in this case was taken in July, 1832, by the attorney general. The point was raised, and the court decided that the presumption of payment in analogy to the statute of limitations, was not applicable to demands due to the government previous to the revised statutes, which extended that statute to actions in the name of the people. (See Stat. 9 Geo III. c. 16.  32 Geo. III. ch. 58,)  Thus affirming the common law principle, *nullum tempus occurrit regi,* (2 Inst. 273 ; Bro. Max. 27,) and applying it to the government of the state. But if the case were again to arise, it might be successfully urged, in view of the statute, that the people had slept upon their rights, (see § 16, *supra,* p. 217–14,) and that another maxim of the common law should intervene—*vigilantibus, non dormientibus jura subveniunt.* (2 Inst. 690.  Bro. Max. 391.  Wing. Max. 672.)  The New York statute is broad enough to support this view.  (See 2 R. S. of N. Y. 2d ed. 225, § 28.)

Fish v. Weatherwax.

of the oyer and terminer and general sessions, for engrossing and entering the minutes of these courts. (*Doubleday* v. *The Supervisors of Broome*, 2 Cowen, 533. See *Mallory* v. *The Supervisors of Cortlandt*, id. 531.) The principle of *Bright* v. *The Supervisors of Chenango*, is, that a public officer who is required to perform a certain service, where no compensation is provided for such service, is entitled to receive a reasonable allowance therefor, to be audited by the board of supervisors. The same principle is recognized in *Mallory* v. *The Supervisors of Cortlandt* and *Doubleday* v. *The Supervisors of Broome*, though in the first of these cases the right to compensation was denied, on the ground of a direct expression of the legislature that no compensation should be given. (Per Savage, Ch. J., 12 Wend. 257, in *The People* v. *The Supervisors of Albany*.) So, in Pennsylvania, a mandamus lies to the supervisors of roads, to compel them to pay an order drawn on them by justices of the peace, in conformity with the act of 17th April, 1795. (*Commonwealth* v. *Johnson*, 2 Binney, 275.)

*Surrogate.*—See Ecclesiastical Courts, &c.

*Taxes.*—See Commissioners. Supervisors.

*Tax Collector.*—Upon the principle that an application for a writ of mandamus, is addressed to the sound legal discretion of the court, and will not be awarded to enforce the performance of an act which is contrary to law, where, by law, the tax collector was required to pay all moneys by him collected into the state and county treasuries ; an order of the board of police to a tax collector to pay the taxes collected to a particular person, not the county treasurer, is without authority of law, and a mandamus should not be issued to compel the tax collector to obey it. (*Ross* v. *Lane*, 3 S. & M. 695.) Where a mandamus was issued by the circuit court to a tax collector, to collect a certain tax, and he appealed, and pending the appeal, his term of office expired ; held, that the high court would not grant a mandamus against his successor. (Ibid.)

*Treasurer.*—A writ of mandamus lies to compel a town treasurer to issue his warrant of distress against a collector of taxes neglecting to collect and pay over the same, according to the assessor's warrant. (*Waldron* v. *Lee*, 5 Pick. 323.) Mandamus to the treasurer and directors of the St. Katherine's Dock Company, under the stat. 6 Geo. IV. ch. 5. (*Corpe* v. *Glyn*, 3 Barn. & Adolph. 801.)

*Trustees.*—A mandamus lies to compel trustees of a county in Ohio to distribute moneys to religious societies. But it is a good return, that the moneys had been all distributed by a former board of trustees. (*State* v. *Warren County*, 2 Ham. 10. See also, upon this subject, *The People ex rel. Dikeman et al.* v. *The President and Trustees of Brooklyn*, 1 Wend. 318. See Mandamus to Corporations, *infra.*)

*Visitor.*—Mandamus lies to a visitor to compel him to receive and hear an appeal, and give *some* judgment. (*Rex* v. *Ely*, 5 T. R. 475. *Rex* v. *Lincoln*, 2 id. 338. *Rex* v. *Bury*, id. 346. *Rex* v. *Worcester*, 4 Maule & S. 415.) When not. (*Rex* v. *Conynham*, 5 B. & Ald. 885. 1 Dowl. & R. 529.)

*Warden.*—This writ also lies to a warden of a college to compel him to affix the corporate seal to an answer in chancery. (*Rex* v. *Windham*, Cowp.

---

Fish v. Weatherwax.

---

377. *Rex* v. *Camlridge*, 3 Burr. 1647 ;) to admit a chaplain, especially if there be no other visitorial power, (*Rex* v. *Warwickshire*, 2 Dowl. & Ry. 299,) to restore a master of a college, (*Patrick's case*, T. Raym. 111,) or a schoolmaster of a grammar school by the crown, (*Rex* v. *Morpetts*, 1 Str. 58,) or an usher of such a school. (*Craford's case*, Sty. 457 ; *Stamp's case*, T. Raym. 12.)

## Mandamus to Corporations.[*]

§ 38. We have before seen, that one of the modes in which the courts exercise common law jurisdiction over civil corporations, for the purpose of compelling them to observe the ordinances of their constitution, and to respect the rights of those entitled to participate in their privileges, is by the writ of mandamus. (See Angell and Ames on Private Corporations, ed. 1846, p. 630.) Let us now consider, more in detail, the general principles which govern this writ in its application to corporations. And

I. This writ will not lie to control the discretion of a corporate body or officer, though it may be had to compel such discretion to be exercised.

Therefore, a mandamus will lie to compel a visitor to receive and hear an appeal ; (*Usher's case*, 5 Mod. 452, no decision ; *Dr. Walker's case*, B. R. H. 212 ; and 2 Kyd on Corp. 279; *Rex* v. *Bishop of Ely*, 1 Wils. 266 ; 1 Black. R. 52, where it is considered doubtful ; *The King* v. *Bishop of Lincoln*, 2 T. R. 338, n. *a.* ; *The King* v. *The Bishop of Ely*, 2 T. R. 338 ; *The King* v. *The Bishop of Ely*, 5 T. R. 477 ; *The King* v. *The Bishop of Worcester et al.* 4 M. & S. 415 ; Angell and Ames on Priv. Corpns. ed. 1846, p. 623, § 5 ;) and to form some judgment, though they will not compel him to go into the merits. (*The King* v. *The Bishop of Lincoln*, 2 T. R. 338, n. In this case it is said that it is sufficient, if he decides that the appeal comes too late.) And such judgment, when rendered, is final and conclusive, nor can it be reviewed in any form of proceeding, either directly or collaterally. (*Daniel Appleford's case*, 1 Mod. 82. Carth. 92, 93, cites 1 Mod. 82. 1 Lev. 23, 65. 2 Liv. 14. Raym. 56, 94, 100. Sid. 94, 152, 346. *Phillips* v. *Bury*, 2 T. R. 346. S. C. Skin. 447. S. C. 1 Ld. Raym. 5. Ca. Parl. 45. *Rex* v. *Bishop of Ely*, 2 T. R. 290. 1 Black. R. 85.) Nor need the cause of a sentence of deprivation be disclosed in pleading. (*Philips* v. *Bury*, 2 T. R. 353, 354. *Kean's case*, 7 Co 42. Rastal's Ent. fol. 1. Allen, Nash Jo. 393. Murdock's Appeal, 7 Pick. (Mass.) R. 322, per Parker, C. J.) The reason of this is, that the visitor's proceeding is *in rem*, he pronounces operatively upon the *status* of the party deprived, (2 Smith's Leading Cases, 447, notes to *Doe* v. *Oliver* and *Dutchess of Kingston's case*,) and an estoppel *quasi* of record arises. And it has been held, that though á visitor has exceeded his jurisdiction, this writ will not lie to restore the party expelled, for that would be to command a visi-

---

[*] The editor cannot too fully express his obligations to Messrs. Angell and Ames, for their kind permission to make the very free use he has done of their valuable treatise on the Law of Private Corporations, a work so complete and exhaustive as to render unnecessary any further examination of this branch of the subject.

Fish v. Weatherwax.

tor to reverse his own sentence. (*Brideoak's case,* H. 12 Anne, and cited in *Rex* v. *The Bishop of Chester,* 1 Wils. 209. S. C. 1 Black. R. 25, and in *Rex* v. *The Bishop of Ely,* 1 Black. R. 58. 2 Kyd on Corp. 281.) In such a case, however, an action for damages would probably lie. (*Greene* v. *Rutherforth,* 1 Ves. 470. See *Rex* v. *Bishop of Chester,* 1 Wils. 209. See note (*b*) to *Case* v. *Shepherd, supra,* page 28. But see, per Cowen, J. in *The People* v. *Collins,* 19 Wend. 56.) So also it has been held, that mandamus will not lie to compel the benchers to admit a member, or to call one qualified to the bar, upon the ground that the judges of England enjoy a species of visitorial power over the inns of court. (Angell and Ames on Priv. Corpns. ed. 1846, p. 652, 637. *The King* v. *Gray's Inn,* 1 Doug. 353. *The King* v. *The Benchers of Lincolns Inn,* 4 B. & C. 855. See also *Rex* v. *Barnard's Inn,* 5 Adolph. & Ellis, 17.) And this principle is further illustrated in a number of cases. Thus " where all the powers of a religious corporation were vested in certain trustees, and a mode was prescribed by statute, in which any corporations *desirous* of altering or amending their charters might proceed, a mandamus, on the motion of several of the members of the corporation, to compel the trustees to take the necessary steps to alter the charter, was refused on the ground that this was left to them as a matter of discretion. (*Case of St. Mary's Church,* (6 Serg. & Rawle, (Penn.) R. 498.) In the case of *The King* v. *The Bristol Dock Company,* (6 B. & C. 181,) too, where it appeared that the directors of the company were authorized and required " to make such alterations and amendments in the sewers, as were necessary in consequence of the floating of the harbor," it was held, that a mandamus in the terms of the act was in the proper form ; and that it was neither requisite nor proper to call upon the company to make any specific alteration, the mode of remedying the evil being left at their discretion by the act of parliament. (And see *Reg.* v. *Eastern Counties Railway Company,* 2 Adolph. & Ellis, 569. S. C. 42 Eng. C. L. R. 812." Angell and Ames on Priv. Corpns. ed. 1846, p. 656, 657.) And where, by charter, a borough was constituted a body corporate to have perpetual succession, by the name of the mayor and free burgesses of the borough of Fowey. Nine of the free burgesses were to be chosen aldermen. One of the aldermen was to be called mayor. The mayor and aldermen were to form the common council ; a person learned in the laws of England was to be the recorder. The charter then authorized the mayor and recorder, or their respective deputies, and the rest of the aldermen of the borough for the time being, or the greater part of them, (of whom the mayor and recorder, or their respective deputies, were to be two,) from time to time, and at all times thereafter, as often, and when to them should seem fit and necessary, to nominate, choose, and prefer so many, and such persons to be free burgesses of the borough, as they pleased, and to those free burgesses so to be chosen, to administer an oath for their fidelity to the borough. And in case any one or more of the aldermen should die, or be removed from his office, the mayor, recorder, justices of the peace, and the rest of the aldermen, or the greater part of them, to elect one other of the free burgesses, inhabitants of the borough, for an alderman, to supply the number of nine. The aldermen so chosen taking the oaths before the mayor, recorder, or one

Fish v. Weatherwax.

of the justices of the peace of the borough for the time being, or before three or more free burgesses, inhabitants of the borough, to execute the office, and the mayor, the ex-mayor, the recorder, and their deputies, and the senior alderman and the senior free burgesses were to be justices of the peace. Nine persons were nominated as the first aldermen, one person as recorder and five persons the first free burgesses. It appeared by affidavits that the body corporate had for three years been reduced to the number of six aldermen and four free burgesses, and that one of the aldermen was in a dangerous state of health, and was upwards of seventy years of age, and incapable of performing the duties of alderman and justice of the peace ; that of the four burgesses, two were upwards of seventy years of age, and that another was not an inhabitant of the borough. The court refused to grant a mandamus to compel the mayor and aldermen to proceed to the election of free burgesses, or to hold a meeting for the purpose of considering the propriety of proceeding to such an election. (*The King* v. *The Mayor, &c. of Fowey*, 2 Barn. & Cresw. 584. S. C. 4 D. & R. 39.) Holroyd, J. observes in this case, " By the charter, the mayor and aldermen are to elect such and so many free burgesses as they shall think fit. It is not competent therefore to the court to grant a mandamus directing them to elect any." It is proper, however, to be observed, that the decision in this case may be rested upon another principle, namely, that this writ will not be granted to compel a corporation to supply vacancies in an indefinite class, if sufficient remain out of whom to elect members for the definite class ; since this would be lessening their chance of being elected into the definite class. In such case, the application ought first to be, to compel the corporation to fill up the vacancies in the definite body ; and afterwards, to prevent a dissolution of the corporation, the court would perhaps grant a mandamus to elect a sufficient number into the indefinite class, although it may be very difficult to point out how many are to be elected, which is a strong argument against granting the writ. (Angell and Ames on Private Corpns. ed. 1846, p. 634, 635, citing *Rex* v. *Fowey, ut supra.*)

§ 39. Let us now consider some of the cases in which the writ under consideration has been adjudged to lie to corporations. And in the course of this inquiry, let us examine a number of cases which naturally arise where the application for this writ was denied, upon the ground that the merits did not call for the interposition of the court, independently of the general rules we have before considered.

I. The writ of mandamus will lie to corporations as to inferior tribunals and officers, to compel them to exercise their discretion, though not to direct the manner of its exercise.

Thus where by act of parliament empowering certain persons to make a floating harbor at Bristol, it was enacted, " that it should and might be lawful for the directors of the British Dock Company, and they were thereby authorized and required to make a common sewer in a certain direction therein specified, and also, to alter and reconstruct all or any of the sewers of the said city at the mouths thereof, so and in such manner that the sewers might be

Fish v. Weatherwax.

discharged considerably under the surface of the water in the floating harbor, and also to make such other alterations and amendments in the sewers of the said city as might or should be necessary in consequence of the floating of the said harbor." It was held, that a mandamus to the directors " to make *such alterations and amendments in the sewers as were necessary* in consequence of the floating of the harbor," was in the proper form, and that it was neither requisite nor proper to call upon the company to make any specific alteration, the mode of remedying the evil being left to their discretion by the act of parliament. (*The King* v. *The British Dock Company,* 2 Barn. & Cresw, 181. See also the authorities cited in §§ 37, 23, 34.)

§ 40. II. A mandamus will lie to compel a corporation to elect officers. " Accordingly in case of public corporations, it has been decided that a mandamus lies to compel them to proceed to the election of a new mayor, at any time after the charter day has passed without such election, where the former mayor, having power to do so, holds over, and refuses to convoke an assembly for that purpose ; unless indeed the charter restrain the right of electing to a particular time ; (*Rex* v. *Cambridge,* 4 Burr. 2011 ; *Rex* v. *Gregory,* 8 Mod. 113, 127 ;) to compel a new election of a mayor, where the re-election of the former mayor was void ; (*Rex* v. *Pembroke Corp.* 8 Dowl. P. C. 302 ;) to compel the corporation to proceed to an election of members to supply vacancies in a definite integral class, after a reasonable time has expired from the period of their occurrence, during which they have neglected to fill them up ; nor is it an objection to the granting of the writ, that at the time of application for it, an information in the nature of a quo warranto is pending against the mayor and corporators, to whom it is directed. (*Anon.* 2 Barnard, 236. *Rex* v. *Grampound,* 6 T. R. 302. *Rex* v. *Fowey,* 2 Barn. & Cresw. 596. S. C. 4 D. & R. 139.) It will also be granted to compel the corporation to proceed to the election of one out of two persons put in nomination for an office, when the course of proceeding is for one class of the corporation to nominate two persons, of whom another class is to elect one into office. (*Rex* v. *Abingdon,* 1 Lord Raymd. 561. *Rex* v. *Ely,* 2 T. R. 334.) And though the officers be annual ministerial officers as mace bearers, yet if public ministers, and necessary in the execution of the judicial functions of the corporation, and not mere servants, a mandamus lies to the corporation to compel it to elect them." (*Rex* v. *St. Martin,* 1 T. R. 149. *Rex* v. *Liverpool,* 1 Barnard, 83. Angell and Ames on Priv. Corpns. ed. 1846, p. 634.) Messrs. Angell and Ames, in their treatise on the Law of Private Corporations, (p. 635,) observe :—" We see no reason why the same remedy should not lie against a private corporation aggregate, to enforce an obedience on the part of the members to the charter, or act of incorporation under which they act, if they neglect or refuse to elect their proper officers. In the case of *Rex* v. *The Bishop of Ely,* (2 T. R. 290,) the court of king's bench awarded a mandamus against the bishop, commanding him to appoint as master one of two fellows presented to him by the fellows of a college ; holding that he enjoyed his power of appointment not in virtue of his visitatorial capacity, but by the special appointment of the founder. And in *The King* v. *The Master and Fellows of St. Catharine's Hall,*

Fish v. Weatherwax.

(4 T. R. 233, 243, 244, 245,) which was an application for a mandamus to a college, commanding them to declare a fellowship vacant, and to proceed to the election of another fellow, though the court of king's bench disclaimed jurisdiction over the particular case, as being in the king in chancery, yet no objection was taken that mandamus could not lie, to compel an election in case of a private corporation."

§ 41. III. A mandamus will lie to compel a corporator of a public corporation, duly elected, to take upon himself the execution of his office, though the defendant may plead any sufficient excuse for not accepting the same. (*Rex* v. *Merchant Tailors*, 2 Lev. 200. · *Rex* v. *Brown* and *Rex* v. *Leyland*, 3 M. & S. 186, 188.) Therefore, in *The King* v. *The Corporation of Bedford*, (1 East, 79,) a rule was granted to one who had been elected mayor of a borough, and to the late mayor, commanding them to show cause why a writ of mandamus should not issue to them, requiring the late mayor to swear the one who had been elected into office, and the latter to appear before the said late mayor and take the oaths, &c., and thereupon to take upon himself the office of mayor. The rule was answered by showing for cause, that the person elected was equally disqualified to serve, and thereupon the court granted a mandamus to elect another mayor.

§ 42. IV. So this writ will lie to compel a corporation to admit one elected to an office in a corporation to the legal possession of his right. (Angell and Ames on Private Corpns. ed. 1846, p. 636.) The writ, however, " confers no title upon the person admitted, its sole operation being to put him in a situation to enforce his former title, if sufficient in law. For the sake of preserving peace in corporations, it will not be granted, unless the applicant show a *prima facie* title. Thus, it lies to compel the proper officers to admit to the possession of his office or place one elected to be mayor, bailiff, or other officer, an alderman, jurat, capital, or other burgess ; one of the approved-men, or one of the eight-men, if the affidavits show that approved-men, or eight-men, are a class of corporate officers ; a high steward, a common-councilman, recorder, a town clerk, a steward of a court leet, an attorney of the court of a liberty ; a livery man of a company, being a member of a municipal corporation ; a sword bearer, if an officer of justice ; a serjeant, a constable, a bailiff, though a ministerial officer, or even a common freeman. (Rol. Abr. Rest, p. 4, 8, 7. *Steven's case*, T. Ray. 431. *Shuttleworth* v. *Lincoln*, 2 Bulst. 122. *Rex* v. *Canterbury*, 1 Lev. 119. *Taylor's case*, Poph. 133. *Braithwaite's case*, Vent. 19. *Anon.* 1 Lev. 148. *Rex* v. *Wilton*, 5 Mod. 257. *Clerk's case*, Cro. Jac. 506. *Parker's case*, 1 Vent. 331. *Rex* v. *Tidderley*, Sid. 14. *Guilford's case*, T. Ray. 152. *Roe's case*, Comb. 145. *London* v. *Estwick*, Sty. 32. *Bret's case*, Comb. 214. *Rex* v. *Wells*, 4 Burr. 1999. *Anon.* Dyer, 332, b. n. ; *Taverner's case*, T. Ray. 446. *Middleton's case*, 1 Sid. 169. *Milward* v. *Thatcher*, 2 T. R. 87. *Stamp's case*, T. Ray. 12. *Baxter's case*, Sty. 355. *Audley* v. *Joyce*, Poph. 176. S. C. Noy, 78. Dighton, 1 Vent. 78, 82. *Rex* v. *Campion*, 1 Sid. 14. *Baxter's case*, Sty. 457. *Hurst's case*, 1 Lev. 75. S. C. 1 Sid. 94, 152. *Anon.* and *Rex* v. *Westminster*, Comb. 244.

Fish v. Weatherwax.

Rol. Abr. 456.)　It will lie also to compel the proper officers to admit to the freedom of a corporation any of that class of persons, who are possessed of an incorporate right according to the regulations of the constitution, such as apprentices who have served their time ; and to take all such steps as may be necessary, preparatory to their admission.　(*Townsend's case*, T. Ray. 69. S. C. 1 Lev. 91.　S. C. 1 Sid. 107.　*Green* v. *Durham*, 1 Burr. 131.　*Clithero case*, Comb. 239.　*Rex* v. *Ludlam*, 8 Mod. 270.　*Wannel* v. *London*, 1 Stra. 675.　*Rex* v. *Harrison*, 3 Burr. 1328.　S. C. W. Black. 3712.)　The writ has also been granted to compel an insurance company to swear in a director, the company having been created by charter from the crown ; (*Anon*. 1 Stra. 696 ;) to restore directors of a banking corporation, who were refused the ex‑ ercise of their rights as directors by a majority of the board, (*Prieur & Labu‑ tat* v. *President, &c. Com. Bank*, 7 Louisiana R. 509,) or a member of a na‑ vigation company who was disfranchised without notice or opportunity of de‑ fence ; (*Delacy* v. *Neuse River Nav. Co.* 1 Hawk. (N. C.) R. 274 ;) to com‑ pel the trustees of a meeting house to admit a dissenting minister who was duly elected, (*Rex* v. *Barker et al.* 3 Burr. 1265,) and trading companies to admit as members those entitled to become such.　(*De Costa and the Russia Company*, 2 Stra. 783.　*Rex* v. *March*, 2 Burr. 999.　Id. p. 637.　See also id. 638, 639.　*Supra*, § 35.)

§ 43. V. We have already mentioned, (§ 35,) that a mandamus will be granted to restore wherever it would be granted to admit a member or officer of a corporation.

" A mandamus has been granted to restore a clerk to a butcher's company, (*White's case*, 2 Ld. Raym. 1004,) a clerk to a company of masons, a treasur‑ er to the governors of the new water works, (*Rex* v. *Governors of Water Works*, 1 Lev. 123 ; S. C. 2 Sid. 112 ; *Middleton's case*, 1 Sid. 169,) a clerk or surveyor of the city works, (*Rex* v. *Mayor, &c. of London*, 2 T. R. 182, n.) a town clerk, a common clerk of a vill, a parish clerk, a sexton, and a scav‑ enger. (1 Vent. 143, 153.　*Rex* v. *Slatford*, Comb. 419.　Sty. 458.　*Rex* v. *Guardianos de Thame in Com. Oxon.* 1 Stra. 115.　*Rex* v. *Barker and ano‑ ther*, 3 Burr. 1267, per Lord Mansfield.　2 Kyd on Corp. 320.)　In England, it has been decided, that it lies to restore the schoolmaster of a grammar school founded by the crown, (*Rex* v. *Ballivos de Morpeth*, 1 Stra. 58,) or the minis‑ ter of an endowed dissenting meeting house ; (*Rex* v. *Barker and another*, 3 Burr. 1265 ; S. C. 1 Black. R. 300, 352 ; *Rex* v. *Joatham*, 3 T. R. 575 ;) and in our own country, to restore a trustee of a private academic corporation, though no emoluments were attached to his office.　(*Fuller* v. *Plainfield Aca‑ demic School*, 6 Conn. R. 533.)　Here, too, the remedy has been applied to restore a member and trustee of a religious incorporation, (*Green* v. *The Afri‑ can Methodist Episcopal Society*, 1 Serg. & Rawle, (Penn.) R. 254,) and in several cases, to restore the members of private corporations for charitable purposes, (*Commonwealth* v. *St. Patrick Benevolent Society*, 2 Binn. (Penn.) R. 448 ; *Commonwealth* v. *The Philanthropic Society*, 5 Binn. (Penn.) R. 486 ; *Commonwealth* v. *The Pennsylvania Beneficial Institution*, 2 S. & R. (Penn.) R. 141,) illegally expelled.　If, however, the charter of a society provides for

Fish v. Weatherwax.

an offence, directs the mode of proceeding, and authorizes the society on conviction of a member to expel him, their judgment of expulsion, if the proceedings are not irregular, is conclusive and cannot be inquired into collaterally, by mandamus, action, or any other mode. (*Commonwealth* v. *The Pike Beneficial Society*, 8 Serg. & Watts (Penn.) R. 247.)

"A suspension from office warrants the granting of this writ, as well as a removal; for a suspension is a temporary amotion, and otherwise, it is said, under pretence of repeated suspensions, an officer might be entirely excluded from the advantage of his situation. (*Rex* v. *Guilford*, 1 Lev. 162. S. C. T. Ray. 152. *Rex* v. *London*, 2 T. R. 182. *Rex* v. *Whitstable*, 7 East, 355, and n. Willcock on Mun. Corp. 379.) And the writ has been granted to restore a member of an university, who has been improperly suspended of his degrees. (*Rex* v. *University of Cambridge*, T. 19, G. 3. *Dr. Ewin's case*, 2 Sel. N. P. (Wheat.'s ed.) 824.) As in case of admission, so it will be granted to restore a deputy on the application of his principal, though not on the application of the deputy himself. (*Rex* v. *President des Marches*, 1 Lev. 306.) The modern decisions upon this subject seem indeed to be made in the spirit of Lord Mansfield's rule, that wherever there is a *right* and no other specific remedy, this will not be refused. Where it appears from the showing of an officer, that he has been justly though irregularly removed, (*Rex* v. *Axbridge*, Cowp. 523; *Rex* v. *Bristol*, Mayor, 1 D. & R. 389; S. C. 5 B. & A. 731; *Rex* v. *Bank of England*, 2 B. & A. 620,) or in case of a financial officer for life, or *quamdiu bene se gesserit*, who is suspended until he has submitted his accounts to the proper officer, and paid over the balance due, that he has refused to do so, and been guilty of contumacy and improper conduct towards those whose officer he is, a mandamus to restore, it has been decided, will not be granted. (*Rex* v. *London*, 2 T. R. 182.) Neither will the writ be granted to restore one who has been ousted in *quo warranto*, or who has resigned his office; since judgment in *quo warranto* is conclusive against the defendant, whether on the writ or on the information; and after a resignation has been accepted, the corporator cannot resume his office. (*Rex* v. *Tidderley*, 1 Sid. 14. *Rex* v. *Campion*, id.) And where A. was removed, and B. elected in his place, afterwards A. restored by mandamus, and subsequently his office became vacant; upon the application of B. for a mandamus without a new election, the writ was refused; for A. was a legal officer at the time of B.'s election, so that B. never acquired any title to the office. (*Shuttleworth* v. *Lincoln*, 2 Bulstr. 122.) It is, however, no objection to the granting of a mandamus to restore, that another has been elected to the office, since the amotion of the applicant. In such case, the court will grant leave to file an information in the nature of a *quo warranto* against the person so elected, at the same time that they award the mandamus. (*Rex* v. *Bedford Level*, 6 East, 360. *Shuttleworth* v. *Lincoln*, 2 Bulstr. 122.) A party, whose right to an office has been established by verdict, cannot have a peremptory mandamus to restore him, until he has signed a judgment in the action. (*Neale* v. *Bowles*, 1 Har. & Woll. 370." Angell and Ames on Priv. Corpns. ed. 1846, p. 642, 643, 644, 645. See also *Howard* v. *Gage*, 6 Mass. R. 462.)

Fish v. Weatherwax.

§ 44. VI. A mandamus lies in certain cases to compel the amotion of officers.

As where corporate officers are required by statute to take a particular oath, under penalty of being displaced, this writ may be directed to an eleemosynary corporation, commanding it to remove certain persons from their offices for non-compliance with the statute. (*Rex* v. *St. John's College*, Skin. 549. 3 Salk. 230. See also Angell and Ames.on Private Corporations, ed. 1846, p. 640.) In this case, says Mr. Kyd, a *quo warranto* would not have lain, because the college was an eleemosynary foundation; but it would lie in case of corporation officers who should neglect, &c., and therefore mandamus would not be the proper remedy. (2 Kyd on Corpns. 337, n. (*a.*) Angell and Ames, *ut supra.*

§ 45. VII. And this writ lies in a multitude of other instances to compel corporations and their officers to do many other acts which they are bound to do, either by virtue of their official station, or by the general law of the land. (See Angell and Ames on Priv. Corpns. ed. 1846, p. 646.)

Thus the writ of mandamus lies to the " warden of a college, commanding him to affix the corporation seal to an answer of the fellows to a bill in chancery, though he disapprove of the answer, and it is contrary to his own separate answer put in; (*Rex* v. *Windham*, Cowp. 377;) to the keepers of the common seal of an university, commanding them to put it to the instrument of appointment of their high steward, pursuant to a grace passed in the senate; (*Rex* v. *Vice-Chancellor, &c. of Cambridge*, 3 Burr. 1648;) to a master of an hospital possessed of the advowson of a living, to compel him to put the corporate seal to a presentation where the nomination has been made by a majority of the body of the master and brethren, the right to nominate being in such body; (*Rex* v. *Kendall*, 1 Adol. & Ellis, (N. S.) 366; S. C. 41 Eng. C. L. R. 581;) and to the mayor of a city corporation, to compel him to put the corporate seal to the certificate of an officer's election, where, by the constitution of the corporation, the mayor is bound to certify the election to the king for his approbation. (*Rex* v. *York*, 4 T. R. 699, 700; and see *Strong, Petitioner, &c.* 20 Pick. (Mass.) R. 484; where a mandamus was held to lie to a board of examiners, to compel them to give a certificate of his election to a county commissioner, though another person, upon a new election ordered, was elected in his place, whom he might be obliged to remove by *quo warranto*.) In *The Commonwealth* v. *The Trustees of St. Mary's Church*, (6 Serg. & Rawle, (Penn.) 508,) which was an application for a mandamus to compel the trustees of a religious corporation to affix the common seal to certain alterations and amendments of the charter, no objection was taken by the court to the form of remedy; though, for substantial reasons of another kind, the application was rejected. And where the regulations of a corporation rendered it necessary for the acquisition of the freedom, that the indentures of apprenticeship should be enrolled, a mandamus was granted to compel the proper officers to enroll them; the applicant showing in his affidavits the necessity of the enrollment, and that application had been made in vain to the officer to perform his duty. (*Rex* v. *Coopers of Newcastle*, 7 T. R. 545.) So

Fish v. Weatherwax.

a corporator may have a mandamus to compel the custos of corporate docu-
ments to allow him an inspection, and copies of them, at proper times and
upon proper occasions; he showing clearly a right on his part to such inspec-
tion and copies, and refusal on the part of the custos to allow it. (*Rex* v. *New-
castle*, 2 Str. 1223. *Rex* v. *Shelley*, 3 T. R. 142. *Rex* v. *Babb*, 3 T. R. 580,
581. *Rex* v. *Lucas*, 10 East, 235. *Edwards* v. *Vesey*, C. T. H. 128. *Rex*
v. *Tower*, 4 M. & S. 162. *Rogers* v. *Jones*, 5 D. & R. 484. *Rex* v. *Tra-
vannion*, 2 Chit. R. 366, n. *Rex* v. *Chester*, 1 Chit. R. 476, 477. n. 479.
When the corporator's application to inspect is founded on his general right,
he has a mandamus; but when on a suit pending, he has a rule. *Ibid.* and
see *Southampton* v. *Greaves*, 8 T. R. 592. *Bateman* v. *Phillips*, 4 Taunt. 162.
Willcock on Mun. Corp. 349.) A director of a bank may also have the writ
directed to the cashier who refuses, under a resolution of the board of directors
to that effect, to permit him to see the discount book; and in such case, the
writ may also be well directed to the directors themselves. (*People* v. *Throop*,
12 Wend. 183.) In such cases, however, there must be a distinct refusal on
the part of those having the control of the books to permit the corporator or
director to inspect them, he, it seems, stating the purpose for which he de-
manded the inspection at the time of demand. (*Rex* v. *Wilts. & Berks. Ca-
nal Navigation*, 3 Adolp. & Ellis, 477. *Rex* v. *Trustees of North Leach
and Whitney Roads*, 5 B. & Adolp. 978.) A mandamus lies also to the late
mayor of the city corporation, to deliver the insignia of his office to the new
mayor; (*Rex* v. *Owen*, Comb. 399; *Rex* v. *Dublin*, 1 Stra. 539; *Rex* v. *Ips-
wich*, 2 Ld. Ray. 1238; *Crawford* v. *Powell*, 2 Burr. 1016; *Rex* v. *Monday*,
Cowp. 539;) to a former town clerk; (*Crawford* v. *Powell*, 2 Burr. 1016;
*Commonwealth* v. *Athearn*, 3 Mass. R. 285;) or a clerk of a company, (*Rex*
v. *Wildman*, 2 Str. 879,) to deliver to his successor the common seal, books,
papers, and records of the corporation, which belong to his custody; or to a
steward who keeps the public books of a corporation, to compel him to attend
with the books at the next corporate assembly. (*Case of the Borough of
Calne in Wilts.* 2 Stra. 949.) Indeed, it lies to any person who happens to
have the books of a corporation in his possession, and refuses to deliver them
up; as to an executor, who refuses to deliver up the books of a borough, until
money expended by his testator on account of it should be repaid." (*Rex* v.
*Ingram*, 1 Blacks. R. 50. See Angell and Ames on Priv. Corpns. ed. 1846,
p. 646, 647, 648.) So also mandamus lies " to a railway company, bound by
act of parliament to set out their deviations, and make their compulsory pur-
chases within stated periods, to do those acts within the times limited, so that
they might complete the line of railroad, which having undertaken they were
obliged by the act to finish; (*Reg.* v. *Eastern Counties Railway Co.* 2 Perr.
& Dav. 648; and see *Reg.* v. *Birmingham Railway Co.* 2 Adolph. & Ellis,
(N. S.) 47; S. C. 42 Eng. C. L. R. 566; *Reg.* v. *Manchester & Leeds Railway
Co.* 3 Adolph. & Ellis, (N. S.) 528; S. C. 43 Eng. C. L. R. 851;) and to a
dock company commanding them to repair the bank of a new channel by them
cut which was broken down to the obstruction of navigation. (*Reg.* v. *Bris-
tol Dock Company*, 2 Adolph. & Ellis, (N. S) 64; S. C. 42 Eng. C. L. R.
574.) It lies to compel a mayor to perform any part of his duty, as presiding

officer, after he has been guilty of a default in the performance of it. (*Rex* v. *Everet*, 'C. T. H. 261. *Rex* v. *Williams*, 2 M. & S. 144.) It has also been granted to compel a canal company to enter upon their books the probate of a will of a deceased shareholder, (*Rex* v. *Worcester Canal Company*, 1 Man. & Ry. 529,) to register a conveyance, (*Cooper* v. *Dismal Swamp Co.* 2 Murphy, (N. C.) R. 195,) though not to compel them to enroll a conveyance of lands to them pursuant to the provisions of an act, after the lapse of sixty-five years, without effort during that time to compel them so to do. (*Reg.* v. *Leeds Canal Co.* 3 Perr. & Dav. (Q. B.) 174). And where a statute made it the duty of a turnpike corporation to grant a certificate of amounts due by them for repairs, &c., attested in a certain manner, and to transmit a duplicate of the same to the state treasurer, in order that payment might be made by the state, and deducted out of the appropriations made to the corporation; a mandamus was granted to compel them to deliver to the relator, and transmit to the treasurer, such a certificate." (*Commonwealth* v. *The President, Managers and Company of the Anderson Ferry, Waterford and N. Haven Turnpike Road*, 7 S. & R. (Penn) R. 6. Angell and Ames on Priv. Corpns. ed. 1846, p. 649.) So mandamus lies " where the act incorporating a dock company directed, that all actions against the company, should be brought against the treasurer, or a director for the time being, but that the body, goods, lands, &c. of such treasurer or director should not by reason thereof be made liable, and cross actions between the treasurer, as such, and another were referred to an arbitrator, who awarded against the treasurer, it was held, that mandamus would lie to the treasurer and directors commanding them to pay the sums awarded. (*Rex* v. *St. Catherine's Dock Co.* 4 B. & Adolph. 360. 1 Nev. & M. 121.) And where a railway company was incorporated by an act, which provided, that the public should have the beneficial enjoyment of the same, it was held, that mandamus would lie, to compel them to lay down, and reinstate the railway; they having torn up the iron tram plates for several hundred yards, in order to prevent the collieries of others from coming in competition with those of several leading members of the company." (*Rex* v. *The Severn and Wye Railway Company*, 2 B. & A. 646; and see *Whitemarsh Township* v. *The Philadelphia Germantown and Norristown Railroad*, 8 Serg. & Watts, (Penn.) R. 365; where it is held that a mandamus may be applied for in Pennsylvania by the supervisors of a township commanding a railroad company to make a road for public accommodation, required by their charter. Angell and Ames on Priv. Corpns. ed. 1846, p. 650.)

*Of the proceedings on Mandamus.*

§ 46. The mode of proceeding by mandamus was well settled under the common law, and, with the other parts of that venerable institution, has been adopted in nearly all the States of the Union. It has, however, been changed in some respects by legislative enactment in the various states, but, nevertheless, it has been held, that where the occasions upon which it ought to issue are not pointed out by statute, a recurrence to the common law is necessary to learn in what cases the writ is a proper remedy; (*Turner's case*, 5 Ham-

mond, 542;) and that the proceedings upon mandamus must, (except in the case of an intervening statute,) be according to the practice of that law (*Universal Church* v. *Trustees*, 6 Hammond, 445.)

§ 47. The application to the court must be founded upon affidavit, stating the right of the party injured, and the denial of justice. (*Rex* v. *Jotham*, 3 Term R. 575. 1 Gude Crown Pr. 181.) It has been said that it ought to be entitled in the court where the application is made, as " In the king's bench," (id.) but this seems to be unnecessary under the practice-in this country. It is, however, fatal if it be entitled in a cause, as for example, " Sup. Court, Andrew Roddy and Wilson Wilkinson vs Thomas W. Hill," (*The People ex rel. Roddy et al.* v. *Tioga Common Pleas,* 1 Wend. 291,) because there is no cause pending, and an indictment for perjury in making such an affidavit must fail, as it could not be'shown that such a cause existed in the court in which the affidavit was made. (Per Savage, J.) This rule, however, is not to be extended to any entitling that is fairly descriptive of the proceeding, and therefore not within its reason. Hence where an affidavit was entitled, " Sup. Court: In the matter of John La Farge against the Judges of the Court of Common Pleas of Jefferson County," it was held, that it did not fall within the rule, and might be read. (*Ex parte La Farge,* 6 Cowen, 61.) The body of the affidavit should contain a precise statement of all the substantial facts upon which the party relies, in such a form that an indictment for perjury can be founded thereon if it be false. (See *Rex* v. *Sargent,* 5 Term R. 466, 469.) Upon this principle, the affidavit should show a default, (*Rex* v. *Borough of St. Ives,* Buller's N. P. tit. Mandamus; 1 Gude Crow. Pr. 181,)—that the applicant has applied to the defendants to do that which he requires the court to command them to perform, and their refusal or neglect. (*Amherst's case,* Sir T. Raym. 214. *Rex* v. *Bishop of Chester,* 1 Term R. 403. *Rex* v. *Bishop of Ely,* 2 id. 334. *Rex* v. *Jotham,* 3 id. 577. 3 Steph. N. P. 2318.) It must also show, that the applicant has complied with all the forms necessary to constitute his right, (id.; Bull. N. P. 201,) and entitle him to the relief he prays. (*Rex* v. *Bishop of Oxfordshire,* 7 East, 345.) Accordingly, in an affidavit for a mandamus to compel a *corporation* to pay a poor rate, it must appear that they had no *distrainable* goods. (*Rex* v. *Margate,* 3 Barn. & Ald. 220. S. C. 2 Chitt. R. 250.) So in an affidavit in support of a motion for this writ to justices to appoint *overseers,* it must be sworn that the district is, or at least that it is reputed to be, a village or parish. (*Rex* v. *Bedfordshire,* Caldecott, 157. *Anon.* Lofft, 618. *Rex* v. *Bridgewater,* Cowp. 139. See also *Rex* v. *Wiltshire,* 1 Wilson, 138.) In an affidavit intended to found a mandamus to compel admission or restoration to an office, the nature of the office, its duties, and other facts necessary to show that it is of a public nature, should be set forth. (1 Chit. Gen. Pr. 808.) And where it is by charter, the substance as applicable should be stated, and an authenticated copy must be produced at the time of making the motion. (Bull. N. P. 200. Selwyn's N. P. Mandamus, 1076.) The election and other circumstances under which the applicant claimed, and still claims to be admitted, must be very distinctly and positively stated, and shown to have been according to the charter or prescrip-

tion, and this not according to hearsay or mere belief. (Bull. N. P. 200.  Selw. N. P. 1077.)   So in an affidavit to obtain a rule to show cause why a mandamus should not issue to a court of common pleas to restore an attorney, it should be stated that the court had improperly removed him ; (*In the matter of Gephard*, 1 Johns. Cas. 134 ;) and this should be stated not as a *conclusion* of the deponent, but the *facts* themselves made apparent to the court.  (*Rex* v. *Sargent, ut supra.*)   " The affidavit," says Mr. Chitty, (1 Gen. Prac. 808, 809,) " should also anticipate and answer every possible objection or argument in fact which it may be expected will be urged against the claim,        *        *        *       and where any strong evidence is expected, any disputable or material facts should be corroborated by one or more respectable and experienced individuals."   But although the affidavits of the applicant may be insufficient in themselves, in consequence of an omission to state a material fact, yet if the defendant by his affidavits supplies the deficiency, the court will grant a mandamus.  (*Rex* v. *Hein,* 3 Term R. 596.   3 Steph. N. P. 2319.)

§ 48.  The necessary affidavits having been prepared, the next step is to make an application to the court at the time and in the manner prescribed by its rules.   The application is either *ex parte* or upon notice to the defendant. In some cases the latter is required in the first instance, as, for example, in that class which are termed *street* cases in the state of New York.  (*Ex parte Albany Water Works Co.* v. *Albany Mayor's Court,* 12 Wend. 292.)   If, however, the application be *ex parte,* the court will not act on it until due notice has been given, for without such notice a mandamus can never be granted. (Angell and Ames on Corpns. 3d ed. p. 658.   *Anon.* 2 Halst. 192.   *Brosius* v. *Reuter*, 1 Har. & J. 480.)   Again, the application is either that a peremptory mandamus issue at once, or for a rule that the defendant show cause by a certain day therein named, why the particular act sought to be commanded should not be performed, or that a mandamus issue.   The former will only be heard upon due notice, accompanied by copies of the papers on which the motion is intended to be founded ; the latter will be heard *ex parte,* and granted if the papers present a reasonable case.   The application for a rule *nisi* is, however, the usual mode of proceeding.   (10 Wend. 30.)   Indeed, in Virginia and Ohio, it is said that such a rule must be the first process ; (*Turner's case*, 5 Hammond, 42 ; *Dinwiddie Justices* v. *Chesterfield Justices,* 5 Call, 556 ;) and in New York, it has been decided that a peremptory mandamus to a court of common pleas will not be granted in the first instance, but the party must obtain a rule to show cause why it should not issue.  (*The People* v. *Judges of Cayuga*, 2 Johns. Cas. 68.   *The People* v. *Judges of Washington*, 1 Caines' R. 511.)   Where a rule *nisi* has been obtained, if no sufficient cause be shown, the defendant will either submit, or a mandamus will issue to exact a return, showing that the required act has been performed, or some adequate excuse for its non-performance.   (1 Chit. Gen. Prac. 809.   See *Rex* v. *Jones*, Stra. 704.   3 Steph. N. P. 2319.   See *infra*, § 69.)

§ 49.  Let us now examine the form of the writ, which, as we have before

seen, requires a return, or, as it is commonly called, the alternative mandamus. And

I. As to the joinder of persons suing out such writ, it may be generally stated that the same mandamus cannot be made to enforce the separate rights of several individuals ; and, therefore, the court will refuse one mandamus to restore a number of persons, the amotion of one not being the amotion of another, one having, perhaps, been removed for one fault, and one for another, which would make it impracticable for the court to grant a joint restitution to them. (Bac. Ab. Mandamus, B ) The case of *The King* v. *Lord Montacute and others,* (1 Wm. Blackstone, 60 ; S. C. 1 Wils. 283 ; Bull. N. P. 200 ;) has been supposed inconsistent with this doctrine, because it was moved for five persons, but the answer made by the counsel who argued in support of the rule seems to be conclusive, and to take the case out of the principle before stated, namely, that the " grievance in the case was one and the same to all," and in this respect, it is distinguished from the Andover case, (Salk. 433,) in which the general rule was maintained as it has been stated. (See 2 Salk. 436, pl. 19. Comb. 307. 5 Mod. 10. See also 1 Gude Cr. Pr. 189 ; also id. 204. See, however, as to the joinder of churchwardens, *Regina* v. *Twitty,* Holt, 424.)

§ 50. II. To whom directed : 1. The writ must be directed to him who by law is obliged to execute it, or to do the thing required. (Bac. Abr. Mandamus, F.) Upon this principle, it has been decided that where the mandamus was directed to the mayor, aldermen and commonalty of Ripon, and they returned that they were incorporated by the name of the mayor, *burgesses* and commonalty of Ripon, the court held the writ bad, because directed to the corporation by a wrong name. (*Rex* v. *Mayor, &c. of Ripon,* 2 Salk. 443.) And where a mandamus, to admit a person to the office of town clerk, was directed to the mayor and aldermen of Hereford, and in fact the mayor only was to admit, the writ was quashed. (*Rex* v. *Mayor, &c. of Abingdon,* 2 Salk. 699. *Reg.* v. *Mayor, &c. of Hereford,* id. 701. *Rex* v. *Smith,* 2 Maul. & S. 598. Bac. Abr. Mandamus, F.) In New Jersey, it has been decided that one and the same writ of mandamus cannot be directed to the township committees of two several townships, to compel them to proceed to do their duty in a matter of road. (*The State* v. *Township Committees,* 5 Halst. 292.) A mandamus, however, may be directed to a whole corporation, though part only are to do the act ; (1 Roll. R. 409 ; 1 Ld. Raym. 560 ; Holt's Rep. 421 ;) but if it be directed to a part only, it must be directed to that part which is to do the act sought to be commanded. (*Reg.* v. *Mayor, &c. of Hereford, ut sup.* 1 Gude Cr. Pr. 196, 197.) And where the power of amotion was in the mayor, aldermen and others of the common council, the mayor and aldermen being part of the common council, and the writ was directed to the mayor, aldermen and common council, it was moved to quash it for this direction, because it seemed to infer that the mayor and aldermen were no part of the common council: the court said, " here is nobody in this direction who must not join in the act ; this is only repeating the several constituent parts of the corporation ; and the mentioning the entire common council after the mayor and

Fish v. Weatherwax.

corporation, is but a repetition *quoad* the mayor and aldermen." (*Pees* v. *Mayor, &c. of Leeds*, 1 Stra. 640.) Where a mandamus was sued out to commissioners of highways, it was held, that it need not be directed to them by their individual names in the first instance, it being only in case of disobedience to the writ that they were liable to be proceeded against personally. (*People* v. *Champion*, 16 Johns. R. 61.)

§ 51. 2. And where the writ is directed to a corporation or select body, it must not only be directed to them in their proper name, but also in their proper capacity, and the application for it must state plainly in what capacity it is intended that the writ should be directed to them. (Bac. Ab. Mandamus, F. *Papilion and Dubois*, Skin. 64. *Rex* v. *Westlove*, 3 Barn. & Cresw. 685. S. C. 5 Dowl. & Ryl. 599.) Thus the direction of a writ to the members of a "town council should be by their corporate name, for that is their legal description as long as they continue to have a corporate existence. (*Rex* v. *Smith*, 2 M. & S. 598. See *Rex* v. *Mayor of Abingdon*, 1 Ld. Raym. 559. *Rex* v. *Mayor of Hereford*, 2 Salk. 701. Bull. N. P. 204, (*a.*) *Regina* v. *Mayor of Gloucester*, Holt, 451. *Pees* v. *Mayor of Leeds*, Str. 640.) If, however, a mandamus were directed to the members of a corporation, instead of the corporation by its corporate name, the objection would be valueless, if not taken *in limine* on a motion to quash. It could not prevail after the return. (*Fuller* v. *The Plainfield Academic School*, 6 Conn. 532. See *Regina* v. *Bailiffs of Ipswich*, 2 Salk. 434.)

3. Nor will this writ be directed to one who has not the power to execute it. (*State* v. *Dunn*, Minor, 46.)

If the writ be wrongfully directed, such misdirection may be specially returned, (*Regina* v. *Bailiffs of Ipswich*, 2 Salk. 434,) and the court will grant a supersedeas *quia improvide emanavit*, (*Rex* v. *Corporation of Wigan*, 2 Burr. 782. See further, on the subject of direction, *Queen* v. *Mayor of Derby*, 2 Salk. 436 ;) or it may be superseded on motion. (*Rex* v. *Norwich*, 1 Stra. 55. *Rex* v. *Hereford*, 2 Salk. 701. *Rex* v. *Abingdon*, 1 Ld. Raym. 560. *Rex* v. *Smith*, 2 M. & S. 598.)

§ 52. III. Of the body of the writ. The writ should contain all those facts which are necessary to show that the party applying for it is entitled to the relief prayed for. (*Rex* v. *Justices of West Riding*, &c. 7 Term R. 52. *Rex* v. *Bishop of Oxford*, 7 East, 345.) The title of the relator to the relief sought must be clearly and distinctly stated in the alternative mandamus, so that the facts alleged may be admitted or traversed ; it is not enough to refer in the writ to the affidavits and other papers on file, in which the order for the mandamus was made ; though such reference is allowable to show the amount of a sum of money claimed, but not the right of the relator thereto. Therefore, where an alternative mandamus was directed to the canal commissioners, directing them to pay the president, &c. of the commercial bank of Albany certain moneys "according to the order and certificate of the canal board and assignment to the bank *mentioned in the affidavits on file in our supreme court of judicature*, or signify to us the cause to the contrary thereof," &c., it was held, that it was bad, and that the reference to the affidavits, &c.

Fish v. Weatherwax.

did not help it.    (*Commercial Bank of Albany* v. *Canal Commissioners*, 10 Wend. 25, 32.)    The writ should also set out the duty to be performed, but as " no precise form is necessary in a mandamus," (Per Lee, C. J. in *Rex* v. *Mayor of Nottingham*, Sayer, 37,) it need not be particularly stated by what authority this duty exists.    (*Rex* v. *Ward*, Str. 897.    *Rex* v. *Bettesworth*, id. 857.    *Rex* v. *Nottingham*, Sayre. 37.    *Peat's case*, 6 Mod. 310.    *Rex* v. *Whiskin*, Andr. 1.    *Anon.* 2 Mod. 316.    Bull. N. P. 204. (*a.*)    *Rex* v. *Margate Pier Company*, 3 B. & A. 223.    2 Chitt. 256.    3 Steph. N. P. 2321.) Thus, a mandamus to elect, and afterwards to swear the elected into office, may be included in one writ.    (*Rex* v. *Mayor of Abingdon*, 1 Ld. Raym. 553.) A mandamus to choose and swear a mayor is taken *reddendo singula singulis*.    (*Rex* v. *Mayor of Tregony*, 8 Mod. 11.)    In cases of admission, the title of the person claiming to be admitted should be suggested in the writ, (*Peat's case*, 6 Mod. 310,) and the nature of the office ; (*Rex* v. *Ward*, Str. 895.)    To admit a freeman, the writ should be *ad privilegium*, not *ad locum et officium*, (*Rex* v. *Morris*, 1 Ld. Raym. 338.)    But it is not requisite to aver, that it is the person's duty to whom the writ is directed to admit or swear the applicant into office.    (*Rex* v. *Ward*, Str. 895.)    In commanding a person to undertake an office, it is sufficient to show the general liability of the defendant to serve, and to allege that he was elected, and without reasonable cause refused to undertake it ; but it is unnecessary to aver, that he was able and fit to serve. (*Rex* v. *Merchant Tailors' Company*, 2 Lev. 200.    Willcock on Corporations, 394.    1 Stephens' Corporation Acts, 2d ed. 467.)    If the production of records be the object of the writ, they need not be specifically described ; a general description is sufficient.    In the Nottingham case, (*Rex* v. *Nottingham*, 1 Sid. 31,) the writ was to deliver " *evidentias*," (" *et auter choses queux fueront express per general parolls*.")    (3 Steph. N. P. 2321, 2322.)    Where the plaintiff, in a writ of mandamus, averred that the corporation was established by the name of the trustees, &c. ; that the plaintiff was one of the trustees, duly elected, and enjoyed the rights and privileges belonging to him as trustee, and that he continued to hold and exercise his said office *until* he was removed therefrom—it was held, that the office of trustee, its tenure and duration, and the privileges appertaining thereto, were sufficiently alleged.    (*Fuller* v. *Plainfield Academic School*, 6 Conn. 532.)    Where the plaintiffs, in a writ of mandamus, averred that, in October, 1825, there was, and for more than thirty years antecedent thereto, there had been a corporation established by the legislature of the state, this was held a sufficient averment of its existence on the 14th of February, 1826.    (Ibid.)    An alternative mandamus to a court of common pleas, commanding them to seal a bill of exceptions, need not set forth the bill ; and it may be served by copy, at the same time showing the original.    (*The People* v. *Judges of Westchester*, 4 Cowen, 73.)

As to the teste and time of return : these depend so much upon merely local rules, that it is hardly thought necessary to refer to them.

§ 53.    If there be any irregularity in the writ, it may be amended at any time before it is returnable.    (Bac. Ab. Mandamus, B.    *Regina* v. *Clithero*, 6 Mod. 133.    *Rex* v. *Lyme Regis*, Doug. 135.)    But the court will not amend it after

a return, particularly if that return has been traversed. (*Rex* v. *Mayor, &c. of Stafford,* 4 Term R. 689.) Under the English practice, the amendment is made by a judge's order. (*Rex* v. *Free Burgesses,* cited 1 Gude Crow. Prac. 193. See also 3 Steph. N. P. 2325.) It has also been held, that if there be a mistake, the prosecutor may quash his mandamus, and have a new one before it is returned. (*Horsenail's case,* Mic. 18 Geo. III. 1 Gude. Crow, Prac. 191.)

§ 54. We will now consider upon whom, and in what manner service of the alternative mandamus is to be made. Under the English practice, the original writ and copies must be served personally upon the party or parties to whom such writ is directed ; and in the event of its being necessary to serve several persons with copies of the writ, the original writ must be shown to every one personally when the copies are served, and the original writ afterwards served personally upon the principal person mentioned therein, it being expressly stated in the original writ that it must be returned to the court, and therefore it must be personally served upon one of the persons required to obey it, that it may be so returned ; and you can only proceed against such of the parties for a contempt in not returning the writ, who have either been served with the original writ itself, or a copy of the original writ, the writ itself being shown. (1 Gude Cr. Prac. 183. *Rex* v. *Mayor of Exeter,* 12 Mod. 251. 3 Steph. N. P. 2325.) Under this rule, the delivery of a mandamus directed to a county court to such of the judges as were sitting in open court, (*Smith* v. *Dyer,* 1 Call, 562,) and the delivery of a copy of the alternative writ, at the same time showing the original, (*The People* v. *The Judges of Westchester,* 4 Cowen, 73,) in vacation, (id. ; *The People* v. *Herkimer Common Pleas,* 7 Wend. 536,) have been held good service. (See also *Rex* v. *Corporation of Truro,* cited 1 Gude Cr. Prac. 192.)

§ 55. After service of the alternative writ, the defendant may move to quash or supersede the same. (See *The People* v. *Judges of Westchester,* 4 Cowen, 73.) Objections, however, which are merely technical, and do not go to the substance of the relief sought, ought to be urged before a return is made ; (*Fuller* v. *Plainfield Academic School,* 6 Conn. 532 ; see also *The King* v. *Mayor, &c. of Ripon,* 2 Salk. 433, pl. 12 ; Ld. Raym. 563 ; vide Carthew, 500, 501 ;) but it is otherwise with those of a more solid character, which may be taken at any time before the issuing of a peremptory mandamus. Thus, where the writ was directed to a corporation, commanding them to pay a poors' rate, but omitted to state that the defendants had no effects upon which a distress could be levied, it was held to be a fatal omission. (*Rex* v. *Margate Pier Company,* 3 B. & A. 220. *Taverner's case,* Sir T. Raym. 446. *Townsend's case,* id. 69. 1 Lev. 91.) So, likewise, where it was suggested on the face of the writ, directed to an inferior officer of a college, that such college was subject to the power of a " visitor," the writ will be quashed, it being bad on its face, because such a jurisdiction is but a *forum domesticum,* and not taken notice of by the common law, and is a jurisdiction which purely belongs to the visitor. (*Dr. Walker's case,* C. T. A. 212. *Rex* v. *Whaley,* 7 Mod. 308, 309.)

Fish v. Weatherwax.

"In the case of *The King* v. *The Mayor of York*, (5 Term R. 74,) Lord Kenyon and Justice Buller said it was too late to take any objection to the writ, after a return thereto. But in this they were clearly wrong, if they intended to apply their remarks to defects of substance. All the authorities, both before and since that decision, show that any defect in substance in the writ, as a want of sufficient title in the relator to the relief sought, may be taken advantage of at any time before the peremptory mandamus is awarded. In the case of *The King* v. *The City of Chester*, (Holt's R. 438,) the court considered the return insufficient and contradictory ; but they quashed the writ because that was bad also. In *Rex* v. *The College of Physicians*, (5 Burr. Rep. 2740,) after a return had been made to the writ, the mandamus was quashed because the foundation of the relator's claim, or private statute, was not sufficiently set forth therein. The relators in that case afterwards applied for and obtained another writ, in which the foundation of their claim was stated *in extenso,* and upon a return to this last writ the case was finally decided So in the recent case of *The King* v. *The Margate Pier Company*, (3 Barn. & Ald. 221,) the counsel for the relator admitted that the relator's title was not set out with sufficient certainty in the writ, but as a return thereto had been made, he insisted that the objection came too late. He relied also upon the authority of *The King* v. *The Mayor of York*, to sustain that position. But Abbott, Ch. J. decided it was not too late to take an objection to the writ ; that if the material facts on which the relator founded his claim were not stated in the writ, it would deprive the defendant of the power of traversing them ; for the defendants were only to answer what was alleged in the writ." (Per Walworth, Chancellor, in *Commercial Bank of Albany* v. *Canal Commissioners*, 10 Wend. 25, 31, 32. See also *Rex* v. *Bristol Dock Company*, 6 Barn. & Cresw. 189.)

The motion is founded upon some error or defect, as for instance, misdirection ; (*Rex* v. *Mayor, &c. of Norwich*, 1 Str. 55 ; *Rex* v. *Mayor, &c. of Abingdon*, 2 Salk. 699 ; *Reg.* v. *Mayor, &c. of Hereford*, id. 701 ; see *Rex* v. *Smith*, 2 Maule & Selw. 598 ; *Pees* v. *Mayor, &c. of Leeds*, 1 Strange, 640 ; Bac. Abr. Mandamus, F. ;) or a misjoinder of interests in bringing the writ ; (Bac. Abr. Mandamus, B. ; 2 Salk. 436, pl. 19 ; Comb. 307 ; S. C. 5 Mod. 11 ; S. C. 2 Salk. 433, S. P. ; see also *Rex* v. *Mayor of Kingston-upon-Hull*, 1 Str. 578, 8 Modern, 209 ; *Rex* v. *Wildman*, 2 Strange, 893 ;) or some defect that renders the writ *felo de se* ; (*King* v. *Dr. Walker*, Ca. temp. Hard 212 ; Bac. Abr. Mandamus, B. ;) or when the writ has been sued out in violation of the intention of the court : thus, where a rule has been obtained for a mandamus to issue, and the mandamus is taken out in other terms than is warranted by the rule, and differing not merely by adding things incidental to a mandamus, but materially enlarging the terms, the court will quash the writ. (*Rex* v. *Water Eaton*, 2 Smith, 54. And see *Rex* v. *Tucker*, 3 B. & C. 345.) In Bacon's Abridgment, (Mandamus, B.) it is said that "the writ cannot be superseded after the return is out, neither can the party move to quash it before a return made and filed." To supersede or quash the writ, a notice of motion must always be given. (*Anon.* 1 Wils. 30. 3 Steph. N. P. 2324.) That the motion to quash may be made by the prosecutor before a return, see *supra*, § 58.

§ 56. If no return be made, the court will grant an attachment againt the persons to whom the mandamus was directed ; with this difference, however that where a mandamus is directed to a corporation to do a corporate act and no return is made, the attachment is granted only against those particular persons who refuse to pay obedience to the mandamus ; but where it is directed to several persons in their natural capacity, the attachment for disobedience must issue against all, though when they are before the court the punishment will be proportioned to their offence. (*Rex* v. *Churchwardens and Overseers of Salop*, Hil. 8 Geo. II. Buller's Nisi Prius, 201. 1 Gude Cr. Prac. 189. *Mayor of Coventry's case*, 2 Salk. 429.) If a mandamus be directed to a " town council," and they adjourn the corporate assembly in order to prevent the return being made, the members will be punishable for contempt. (*Regina* v. *Sir Gilbert Heathcote.* 10 Mod. 56.) If an attachment issues for not returning a mandamus, and the sheriff, who is to serve the process, takes bail thereupon, this is a misdemeanor for which an attachment will be granted against him ; for these are not like attachments in chancery, for want of an answer, which are only as attachments of process, but are writs on contempt, in nature of executions, and so not bailable by the sheriff. (*The King* v. *Baskerville, Sheriff of Shropshire*, Mich. 9 Geo. II.*

§ 57. The writ is to be returned by him to whom it is directed ; and if any other return it in his name, without his privity and consent, an action on the case lies against him : also, it is an offence for which the court will grant an attachment.† (Skin. 368, pl. 15. Carth. 500. Comb. 422. 2 Show. 504, pl. 465. Bac. Abr. tit. Mandamus, G. See also 2 R. Stat. of N. Y. 2d ed. p. 486, § 54.) An ex-corporate officer cannot make the return, unless the election of his successor be void, because, when corporate officers have sworn in successors who have not been legally chosen, they notwithstanding continue

---

* By the Revised Statutes of the State of New York, (vol. 2, 2d ed. p. 486, § 54,) it is provided that " whenever any writ of mandamus shall issue out of the supreme court, the person, body, or tribunal, to whom the same shall be directed and delivered, shall make return to the first writ of mandamus ; and for a neglect so to do, shall be proceeded against as provided in the thirteenth title of the eighth chapter of this act." The mode of proceeding referred to (see 2 Rev. Stat. 2d ed. p. 440–446,) is by attachment under the statutory provisions, concerning proceedings as for contempts to enforce civil remedies, and to protect the rights of parties in civil actions.

By § 59 of the statute first referred to, it is provided that " the supreme court, or any justice thereof, shall have the same power to enlarge the time for making a return and pleading thereto, and filing any subsequent pleading, as in personal actions."

† Therefore, if a mandamus be directed to the mayor, &c., and the mayor, who is the most principal and proper person, return and bring in the writ, the court, upon affidavits, will not examine whether there was the sense of the majority, but will receive it, and leave the parties to punish the mayor for the misdemeanor, if he be guilty ; but a peremptory mandamus will be granted if the return be falsified. (*The King* v. *Mayor, &c. of Abingdon*, Carth. 499. S. C. 1 Ld. Raym. 559. S. C. 2 Salk. pl. 9 ; and leave granted by the court to file an information against the mayor. Bac. Abr. tit Mandamus, G.)

corporate officers, and therefore ought as such to make a return to the writ. (*Regina* v. *Town of Clitheroe*, 6 Mod. 133.)    A return is good, though there be neither the hand of the mayor or seal of the corporation to it, because, before the Statute of York, the sheriff need not set his hand to any return ; and if the return be false, an action can be brought against the whole body politic for making a false return, and against a particular person for procuring a false return.    (*Lydston* v. *Mayor of Exeter*, 12 Mod. 126.    *Rex* v. *St. John's College*, Skin. 368.    3 Stephen's Nisi Prius, 2326.    Com. Dig. Mandamus, D. 1.)

§ 58. We have already seen, (§ 52,) that the alternative mandamus should contain all those facts which show the title of the applicant to the relief prayed for.    Some violation or neglect of legal duty must be shown in the person to whom it is directed ; and if this be omitted, the writ may be quashed or superseded.    But if the writ be sufficient and the defendant does not desire to do the act directed by it, he may then make a return.    The return must state with certainty those facts which constitute a defence to the mandamus.    It ought to contain a full and certain answer to all the allegations expressly made in the petition for it, and to disclose a just and legal reason why the mandamus should not be obeyed.    (*The Inhabitants of Springfield* v. *The County Commissioners of Hampden*, 10 Pickering, 59.)

But certainty to a certain intent in general is all that is requisite here, which means what, upon a fair and reasonable construction, may be called certain, without recurring to *possible* facts, which do not appear.    If the return be certain upon the face of it, *that* is sufficient, and the court cannot intend facts inconsistent with it, for the purpose of making it bad.    If presumptions were to be allowed, certainty in every particular would be necessary, and no man could draw a valid and sufficient return.    Besides, presumption and intendment, as far as they go, must be in favor of returns, not against them.    (Per Buller, J., Dougl. 159.    See *Rex* v. *Mayor of Monmouth*, 4 Barn. & A. 497.    *Rex* v. *Mayor of Carmarthen*, 1 Maule & S. 697.    See also *Rex* v. *Corporation of Dublin*, Batty, 628.)    It has been said, that in point of form a return requires the same certainty and precision necessary in declarations and other pleadings ; (*Brosius* v. *Reuter*, 1 Harr. & Johns. 551 ;) or in an indictment or return to a writ of habeas corpus.    (*Rex* v. *Mayor of Lyme Regis*, Doug. 157, 158.)    In the case of *The King* v. *The Mayor, &c. of Cambridge*, (2 T. R. 456, 461,) Buller, J., in alluding to a return of two repugnant causes, observes, " it is like a declaration in which two inconsistent counts are joined."

Therefore, if to a mandamus to the Lord ·President and Council of the Marches, to admit a person to the exercise of office of deputy secretary, the return is, that *non fuit tempore receptionis brevis deputatus constitutus ;* this is naught ; for if he were made his deputy before, the return was true, unless he made him his deputy at the very instant of the receipt of the writ.    (*The King* v. *Clapham*, Vent. 110.    Bac. Abr. Mandamus, I )    So where a mandamus was granted to restore the recorder of Barnstable, directed to the mayor of the corporation, and he returned, *quod non constat nobis* that he was

Fish v. Weatherwax.

ever elected; the return was adjudged insufficient, and restitution awarded. (Raym. 153. Id.) So a return to a mandamus to restore a parish clerk was held bad, because, though it appeared that the offences charged were sufficient grounds of removal, it was not stated that he had been summoned to answer the charge before his removal. (*Rex* v. *Gaskin*, 8 Term Rep. 209. And see 1 Bing 357.) So if a writ set forth all the proceedings of the election, and conclude, " by reason whereof A. was elected ;" it is a bad return to say " that he was not elected ;" the defendant should traverse one of the facts alleged. (*Rex* v. *Mayor*, *&c. of York*, 5 Term Rep. 66.) So where a mandamus commanded defendant to take upon himself the office of common councilman in a borough, and the defendant returned, that by a by-law persons refusing to fill the office were subject to a fine, and that defendant had paid the fine, the return was held bad ; since it did not show that the fine was in lieu of service, and a peremptory mandamus was awarded. (*Rex* v. *Bower*, 1 Barn. & C. 585.) So, where to a mandamus to restore a town clerk, it was returned, that he *nunquam debito modo admissus fuit ;* it was held a bad return, being a negative pregnant, and involving matter of law, when the plain fact only should be returned, so as to enable the court to adjudge upon it, and the party to bring his action, in case it were false. (Sid. 209. Keb. 655, 716, 723.) So where a writ of mandamus, to certify the election of a recorder, stated, that the corporation, being duly assembled, proceeded to the election of a recorder ; a return, that they were not duly assembled to proceed to the election of a recorder, was holden bad, as being a negative pregnant. (*Rex* v *Mayor*, *&c. of York*, 5 Term Rep. 66. Bac. Abr. Mandamus, I. Com. Dig. tit. Mandamus, D. 5.) So a return *non fuit debito modo electus* is bad, for it is a negative pregnant; (Com. Dig. *ut sup.*;) unless indeed the mandamus suggests that he was *debito electus*, in which case the return is good, because it answers the suggestion in the writ. So it is an insufficient return to say, *Quod ante advent. brevis fuit electus pro anno, et ad finem anni amotus*, without saying at what time. (5 Mod. 10.) That B. had so many votes, and the plaintiff only so many. (R. Mod. Ca. 309.) So, that A. and B. were not elected, without saying *nec aliquis eorum*. (R. Mod. Ca. 89.) Or, they ought to make a special return, that a custom was claimed to elect two, or that they had equal votes, or are jointly elected, &c. (Per Holt, Mod. Ca. 89.) So, if it says, *quod procuraverunt A. eum summonere ;* for that is not direct that he was summoned. (1 Vent. 19.) That he was heard *de aliis criminibus ei objectus*, without saying, what, before whom, or in what place. (Semb. 5 Mod. 258.) That he was *auditus in communi concilio*, without saying, by whom, &c. (5 Mod. 258.) That he did not account for money to the corporation, without saying that he was requested and refused. (5 Mod. 259. Com. Dig. *ut sup* ) Where several causes returned to a mandamus are inconsistent, the whole must be quashed, because the court cannot know which to believe, and it is an objection to the whole return. It is like a declaration in which two inconsistent counts are joined ; there, the plaintiff cannot have judgment. But where a return consists of several independent matters not inconsistent with each other, some of which are good at law, and some bad, the court may quash the return as to such as are bad, and put the prosecutor

to plead to or traverse the rest. (*Rex* v. *Mayor, &c. of Cambridge,* 2 Term Rep. 456. *Rex* v. *Mayor, &c. of York,* 5 Term Rep. 66. *Rex* v. *Archbishop of York,* 6 Term Rep. 493.) Where an amotion is returned, the return must set out all the necessary facts precisely, to show that the person is removed in a legal and proper manner, and for a legal cause. It is not sufficient to set out conclusions only; the facts themselves must be set out precisely, that the court may be able to judge of the matter. And so it is as to the *cause* of amotion; *that* must be set out in the same manner, that the court may judge of it. (Per Lord Mansfield, 2 Burr. 731. Bac. Abr. tit. Mandamus, I. Com. Dig. tit. Mandamus, D. 4.) Therefore, it is not a sufficient return to a mandamus to restore one to his standing as a member of a corporation, that he was tried and expelled " by a select number of the society," without showing by what authority this select number acted. (*Green* v. *The African M. Episcopal Society,* 1 Serg. & Rawle, 254.) So where to a mandamus to restore J. S. to the place of common councilman of L., the defendants returned generally the cause of the amotion by the common council, who were in due manner met and assembled, the court held the return to be bad; for that they were so duly assembled was a conclusion of law; that they should have set out the facts, viz. that they had as a select body the power of amotion; that all the members were summoned by regular and proper notice; and that J. S. himself was also regularly summoned and heard in his defence. (Per Lord Mansfield, 2 Burr. 731.) So, if the amotion were by a part of a corporation, the return should show how they have such authority, whether by charter or prescription; for as the power of amotion is by the general law in the whole corporation at large, it should appear how the select part is entitled to it. (*Rex* v. *Mayor, &c. of Doncaster,* Say. 37. *Rex* v. *Feversham,* 8 Term Rep. ·356.) It should also appear on the return that the body removing had *proved* the charge for which the person was removed. To state merely that he was present when the charge was made, and did not deny it, is not sufficient. (*The King* v. *The Company of Fishermen of Feversham,* 8 Term Rep. 352.) Also the return is insufficient, if it does not state that the party had been summoned to answer the charge before he was removed. (*The King* v. *Gaskin,* 8 Term Rep. 209.) But the power of amotion being generally in the whole corporation, it is obvious, that if it is stated, that the party was removed by the corporate body at large, it is unnecessary to aver that the power was vested in them. (*Rex* v. *Lyme Regis,* Dougl. 149.) A return in general terms is bad; as, that party had obstinately refused to obey the rules and orders of the corporation, contrary to the duty of his office, without stating what the rules and orders were. (*Rex* v. *Mayor, &c. of Doncaster,* 2 Ld. Raym. 1564.) So a return of removal for neglect of duty, without stating the particular instances of neglect, has been holden to be bad. (Say. Rep. 37.) So a return to a mandamus stating in the words of the writ, that the prosecutor was *not duly elected, admitted and sworn,* was holden to be bad. *Secùs,* perhaps, if it had not been duly elected, *or* admitted, *or* sworn. (*Rex* v. *Lyme Regis,* Dougl. 79. Bac. Abr. Mandamus, I. Com. Dig. Mandamus, D. 4. Steph. Nisi Prius, 2327, 2329. Harrison's Dig. tit. Mandamus.) So the return of a mandamus to restore a minister to his place and functions was held insuffici-

ent, in not setting forth with precision and certainty the rules, laws, canons, &c. of the church of the said minister. (*Brosius* v. *Reuter*, 1 Har. & J. 551.) So " bringing a law suit contrary to the rule of the society" was held insufficient, because the return should further aver that the suit was not necessary.

§ 59. On the other hand, to a mandamus to admit a person to an office, the defendant may return that the applicant was not qualified, or that he was not elected. (Bac. Abr. Mandamus, I. *Rex* v. *Williams*, 8 Barn. & Cresw. 81.) So a return to a mandamus to justices to hear and determine a complaint before them " that it was determined," has been held valid. (*Rex* v. *Richardson*, 1 Wils. 21.) So in answer to a mandamus to elect, it is a good return that a person has been " duly elected and sworn into office," it being sufficiently positive as to the principal fact. (*Rex* v. *Williams*, Sayer, 140.) A return that a party was not duly elected sexton according to ancient custom, " and there is a custom for the inhabitants, &c. to remove at their will and pleasure, and that the party was removed pursuant to such custom," is good. (*Rex* v. *Churchwardens of Taunton*, Cowp. 413.) So to a mandamus requiring A. to deliver to the churchwardens certain books, &c. in his custody, it is a good return to say, that on and since the teste of the writ, A. had not nor has had the books, &c. or any of them in his custody, power, or possession. (*Rex* v. *Round*, 5 N. & M. 427. 1 H. & W. 546.) " *Non fuit amotus*," is a good return. (*Rex* v. *Mayor of Colchester*, 1 Sid. 210.) " *Non fuit electus*," (*Regina* v. *Corporation of Corn*, 11 Mod. 174 ; *Regina* v. *Twitty*, 7 Mod. 84 ; *Regina* v. *Borough of Aldborough*, 10 id. 101,) " *non debito modo electus et præfectus ad officium*, (*Rex* v. *Lambert*, 12 Mod. 2 ; *Rex* v. *Mayor of York*, 5 T. R. 66,) that some other individual instead of the applicant had been elected ; (*Rex* v. *Williams*, Sayre, 140,) and a return that the complainant has resigned—are valid and sufficient returns. (*Rex* v. *Mayor of Rippon*, 1 Ld. Raym. 564. *Rex* v. *Tidderley*, 1 Sid. 14. 3 Steph. N. P. tit. Mandamus. Bac. Abr. tit. Mandamus, I. Com. Dig. tit. Mandamus, D. 3.) It is a good return to a mandamus *nisi*, for the distribution of proceeds of ministerial lands in Ohio, that, before the application, the money was all distributed. (*Universal Church* v. *Trustees*, 6 Ham. 445.) And upon the petition of a town for a mandamus to county commissioners, compelling them to supervise and finish a part of a certain highway previously laid out, an alternative mandamus was issued, to which the commissioners made return that the part mentioned had been commenced and dedicated by the town with the aid of individuals voluntarily, and without expectation that the town would be remunerated by the county ; and the return was held good. (*Springfield* v. *Hampden*, 10 Pick. 59.) So a return made to a mandamus, by B. G. and the others, as " late township committee," is sufficient. (*State* v. *Griscom*, 3 Halst. 136.) And where an alternative mandamus had been directed to a town clerk, commanding him to record the survey of a road pursuant to the act, (1 N. R. L. 270, sess. 24, c. 186,) or show cause ; and the clerk returned, that he did not record the survey, because one of the commissioners had signed the survey by the name of Zaccheus Higby, whereas he was elected by the name of Zaccheus Higby, junior ; and because the commissioners had not

Fish v. Weatherwax.

taken the oath of office, and filed a certificate of the oath with the clerk according to the act; it was held, that the return was insufficient, and a peremptory mandamus was awarded. (*The People* v. *Collins,* 7 Johns. R. 549.) And the omission of a date to the return to a peremptory mandamus directed to B. G. and others, township committee, commanding them to " assign and appoint in writing to the overseers of the highways of the township or some of them, their several limits or divisions of the road for opening, clearing out, amendment and repair," will not vitiate a notice. Though the mandamus is directed to B. G. and others as township committee, yet a return made by them as *late* township committee, is sufficient. Though the writ commanded the committee to assign " to the overseers, or some of them, their several limits," &c. the assignment to one overseer is a substantial compliance with the command of the writ. If there is reason to believe that the assignment is fraudulent and evasive, and designed to defeat the purpose of the opening and repair of the road, the court will allow the party a rule to show cause why the return should be quashed on those grounds. (*The State* v. *Griscom,* 3 Halst. 136.)

§ 60. We have before seen, that if a return be certain to a common intent, that is sufficient, and we may here add that the court will not intend inconsistent facts for the purpose of making it bad ; (*Rex* v. *Mayor of Lyme Regis,* Doug. 157 ; *Manaton's case,* Sir T. Raym. 365 ; *Rex* v. *Mayor of Doncaster,* Sayer, 39 ; *Glide's case,* 4 Mod. 35 ; *Rex* v. *Mayor of Abingdon,* 2 Salk. 431 ; Holt, 436–441 ; 3 Stephen's Nisi Prius, 2326 ;) nor will they require that the right claimed in the writ be negatived, if it be admitted subject to a material qualification. (*Rex* v. *Corporation of Dublin,* Batty, 628.) If the supposal of the writ be false in not truly stating the constitution of the corporation, the return ought to deny the constitution as being that which is mentioned in the writ. (*Rex* v. *Bailiffs of Malden,* 2 Salk. 431.)

§ 61. The court at common law may receive a return without a verification by the oath of the party ; (1 Sid. 227 ;) or they may require such verification. (Pal. 455. Ld. Ray. 365.) The return need not be signed by or on behalf of the party making it, and if it be made by a corporation, it is said that it need not be signed by the head thereof ; (1 Salk. 192 ; Skin. 368 ;) nor made under the common seal. (See Com. Dig. tit. Mandamus, 2.)

§ 62. The return having been made and filed, it may be necessary for the defendant to amend it. It is said, that clerical mistakes may be amended after the return is filed ; (*Rex* v. *Lyme Regis,* Doug. 135 ; Willcock on Corpns. p. 2, pl. 272, *et seq.;*) but amendments are allowed with caution; and, therefore, after a verdict on a traverse to the return, the court would not allow the defendants to amend the return by setting forth a different constitution of the corporation. (*The King* v. *Mayor of Grampound,* 7 T. R. 699.) In regard to motions by the defendant to quash his return, Lord Holt remarks in an anonymous case in 12 Mod. (page 410,) " if an officer make an ill return, he

Fish v. Weatherwax.

shall be amerced, and we will not allow him to quash the ill return and make another."

§ 63. By the common law, the plaintiff was not at liberty to traverse the return, even though it might be false in fact, but the remedy was either by an action on the case for a false return, or, if the matter concerned public government and no particular person was so far interested as to maintain an action, by information against the particular persons that made the return. (See *supra.*) But the statute of 9 Anne, ch. 20, permitted the return to be denied in certain cases, which it is unnecessary to state here at large. The Revised Statutes of New York extending the principle of the statute of Anne, provide that whenever a return shall be made to this writ, the person prosecuting such writ, may demur or plead to all or any of the material facts contained in the said return ; to which the person making such return, shall reply, take issue or demur ; and the like proceedings shall be had therein for the determination thereof, as might have been had, if the person prosecuting such writ had brought his action on the case for a false return ; and that issues of fact joined in any such proceeding, shall be tried in the county within which the material facts contained in the mandamus, shall be alleged to have taken place. (2 R. S. 2d ed. 486, §§ 55, 56.) And a similar provision suggested by the statute of Anne existed previous to the revision. (*The People ex rel. Shuvert* v. *Champion,* 16 Johns. 61.) In regard to the practice under this statute, Mr. Justice Sutherland observes :—" Although these statutes contemplate formal written pleadings in the ordinary mode of conducting suits, the practice of the court is virtually to allow pleadings *ore tenus ;* that is, the relator is permitted to discuss the return, and to ask for a peremptory mandamus, and whilst he does not put in a *formal demurrer,* the case is considered as embraced in the description of *non-enumerated* business, and is heard as such ; but if a formal demurrer is interposed, it becomes enumerated business, and can be heard only at the stated terms. It is optional with a relator whether it shall be considered *enumerated* or *non-enumerated* business, unless the court specially direct formal pleadings to be interposed. No injury can result to the defendant in consequence of this privilege allowed the relator, for if he wishes to carry up the cause for review, the court permits him, after its decision, to make up and file formal pleadings, so that a record may be made up ; which privilege, however, is not granted to the relator, who has chosen to ask for a peremptory mandamus, without formally demurring ; if dissatisfied with the decision of the court, *he* cannot carry up the cause for review." (*The People ex rel. Bentley* v. *Commissioners of Highways of Hudson,* 6 Wend. 560.) But although the relator may either demur or traverse, on a return to a mandamus, he is not at liberty to do both ; and, therefore, though he may be ruled to plead or demur to the return within twenty days, (*The People* v. *The Cayuga Common Pleas,* 10 Wend. 632,) he cannot be ruled to do both. (*Vail ads. The People,* 1 Wend. 38.) In regard to demurrer, it has been said that a relator will not be allowed to demur specially to a return ; and, therefore, where the relator having obtained an alternative mandamus, commanding the judges of the common pleas of New York to sign and seal a

Fish v. Weatherwax.

bill of exceptions which had been tendered to them, or to show cause, and the judges made return that they refused to seal the bill without the same should contain all the evidence relating to the matters of law therein excepted to, and which they alleged the bill did not contain. And to this return the testator demurred specially, that in the return it is not alleged that the bill does not contain all the evidence material and necessary to present the question of law raised by the bill. And a motion was now made on the behalf of the judges of the common pleas to set aside the demurrer, on the ground that no demurrer can be put in in such cases. The court said:—"The motion must be granted· This court will not permit subordinate tribunals to be harassed with special demurrers to returns made by them. If a relator is dissatisfied with a return made, conceiving it to be evasive, or the construction of any matters alleged in it to be of doubtful character, upon suggestion of its insufficiency, a further or supplementary return will be ordered, and thus the rights of a party as effectually protected as if he were permitted to demur specially." (*The People ex rel. Musgrove* v. *The N. Y. Common Pleas,* 9 Wend. 429.) It is, however, difficult to perceive why such a demurrer is not within the statute, and even if it were not, it is presumed that under the new rules, the form of a demurrer to a return must be special.

But notwithstanding a rule to plead or demur to the return may have been taken, the relator may apply on due notice at a special term for a peremptory mandamus, as if no such rule had been entered. (*The People* v. *Cayuga Common Pleas, ut sup*) The prosecutor can reply to a return to a mandamus; (*Rex* v. *Mayor of Lyme Regis,* Doug. 159 ;) and that which is not answered upon the return, must be looked upon as admitted to be true. (*Reg.* v. *Corporation of Buckingham,* 16 Mod. 174.) And where the prosecutor of a mandamus to which a return had been made, moved for a *concilium,* and the court upon argument adjudged that the return was sufficient in law, it was held, he could not afterwards traverse the facts contained in the return. (*Rex* v. *Mayor and Aldermen of London,* 3 B. & Ad. 255.) The prosecutors of a mandamus moved to take the return off the file on affidavit, and on objections made against the validity of the return itself. The court, after argument on the law and facts, ordered in general terms that the rule should be discharged. The defendant then traversed the return.' On motion to take the traverse off the file, because judgment had already been given in favor of the validity of the return, it was held, that the prosecutors were entitled to traverse. (*Regina* v. *Payn,* 11 A. & E. 955.)

§ 64. The prosecutor of a mandamus to restore, traversed the facts in the return, and seven issues were joined ; but he afterwards deserted his traverses, and set the return down in the paper, to be argued upon its validity in law. It was accordingly argued; but Sir J. Burrow doubted whether this was regular, if the defendants had objected. (*Wilsford* v. *Mayor, &c. of Doncaster,* 2 Burr. 738.)

§ 65. We have already seen (*supra,* § 57) that a return of inconsistent matters will render the return bad, but a case may arise where several inde-

pendent matters not inconsistent with each other may be returned, though part of them may be bad in law, and others good. *The King* v. *The Mayor, &c. of Cambridge*, (2 Term R. 456, 462,) was such a case. It was there returned that Beales was not a burgess; that he was not eligible to the office of common councilman; and that he was not elected. The return was then quashed as to the two first parts, and the prosecutor put to traverse the rest. If on the face of a mandamus there be no ground for the writ, the defect cannot be supplied by matter appearing in the return. (*Regina* v. *Hopkins*, 1 A.˙& E. N. S. 161.)

§ 66. If a mandamus were returned many years ago, the court will not permit the return to be traversed *now*, without special affidavits. (*Rex* v. *Corporation of Swansea*, E. 24, Geo. III. cited in 1 Gude Crow. Prac. 192.)

§ 67. Under the statute of 9 Anne, before referred to, upon issue joined on traverse of return to a mandamus, judgment as in case of nonsuit may be given in the same manner as in an action. (*Wigan* v. *Holmes*, Sayre, 110. Sayer's Law of Costs, 166. M. 27, Geo. II. and E. 32, Geo. III. *Allen* v. *Mayor of Stafford*, 4 T. R. 689. 1 Gude Crow. Prac. 192.)

§ 68. We now come to consider the remedies for false return, to which we have before incidentally alluded. Before the statute of Anne, a sufficient return, like the return of a sheriff, could not be called in question in the proceeding in which it was made; but in a case where no one was particularly interested to bring an action for a false return, the court would direct an information. (See 3 Steph. Nisi Prius, 2332. Also a very full collection of the authorities in Angell and Ames on Corporat. 3d ed. 676, n. 1. Com. Dig. tit. Mandamus, D. 6, and authorities. Bac. Abr. tit. Mandamus. L. Salk. 374, pl. 16. Lord Raym. 584. *Rex* v. *Lancaster*, 1 Dowl. & Ryl. 485.) In those cases where no right to traverse the return is given by statute, the only remedy of the plaintiff is by an action on the case for a false return. (Bac. Abr. tit. Mandamus, L. Com. Dig. tit. Mandamus, D. 6.) This action may be brought at any time after judgment given upon the return, but not before, (Com. Dig. *ut sup*.) by all those who have made application for the mandamus, (Bac. Ab. Mandamus, L.; 1 Lord Raym. 125,) against all or any one of those who made the return, as against a mayor only where the return was made by the mayor and aldermen; though if it appear in such an action that the mayor voted against the return, but was overruled by the majority, the plaintiff will be nonsuited; (*Rich* v. *Pillington*, Carth. 171, 172; see also 6 Mod. 152;) and it lies as well for a *suppressio veri* as for a *suggestio falsi;* (Dougl. 149, 158.) In an action for false return, it cannot be objected that mandamus would not lie, (Lord Raym. 125,) nor that it was directed to a corporation by the wrong name; nor that, on account of the improper direction of the writ, the defendants need not have made any return. (Id. 564. See also Com. Dig. tit. Mandamus, D. 6, n. (e) to Am. ed. of 1825.) Where the return to a mandamus was, that there was neither the hand of the mayor nor the seal of the corporation to it; the court stated, " It is well enough with-

---

Fish v. Weatherwax.

out it." "If the return be false, you may bring your action against the whole body politic for making a false return, and against a particular person for procuring a false return." (*Lydston* v. *Mayor of Exeter*, 12 Mod. 126. *Regina* v. *Chapman*, Holt, 443. *Rex* v. *Mayor of Rippon*, 1 Lord Raym. 564. *Enfield* v. *Hill*, 2 Lev. 238.) A declaration sets forth the return properly, which states that it was made "*modo et forma sequenti;*" (1 Ld. Raym. 496;) and no allegation is necessary that it is the duty of the defendant to obey the mandamus. (12 Mod. 322.) In regard to the evidence, the plaintiff must prove the falsity of the return; as for example, when the return is that the prosecutor was not elected, he must show his own title. (*Crawford* v. *Powell*, 2 Burr. 1013. S. C. 1 Wm. Black. 229. Angell and Ames on Corporat. 679. Willcock on Mun. Corporat. 442.) And again: he must prove that the return was made by the defendants. Proof, that the defendant was served personally with an alias mandamus, and told the person who served him with the writ, "that he should take care that a return was made to it;" and farther, that two rules of court were made—one for an attachment against the defendant for not making a return, and the other to discharge that rule upon paying the costs, and appearing, &c., was held sufficient proof that the defendant made the return. (*Vaughan* v. *Lewis*, Carth. 229.) In an action for a false return to a mandamus to admit, it was held immaterial on what day the plaintiff laid his election, so that it was before action brought; but that where there is a customary day of election, if the plaintiff does not prove his election on that day, though he has laid it right, yet he must fail. (*Vaughan* v. *Lewis*, Carth. 228. Angell and Ames on Corporat. 3d ed. 678, and notes.) An action for a false return is local, but may be laid in the county where it was made, or in that in which it appears on record. (*Lord* v. *Francis*, 12 Mod. 408.) In an action for a false return, no motion is allowed for a peremptory mandamus until four days after the return of the *postea*, because the defendant has that period to move in arrest of judgment. But it may be awarded on the *postea*, without entering a former judgment. (*Rex* v. *Mayor of Newcastle-upon-Tyne*, 1 East, 116. See also 1 Gude Crow. Prac. 187–212.)

§ 69. Let us now examine the peremptory mandamus, which is the final order of the court that the particular act sought to be commanded be performed. And

I. When it may be issued. Where both parties are heard on a motion for an alternative mandamus, and there is no dispute about the facts, a peremptory mandamus, if it be lawful, will be granted in the first instance, because in such a case there is no necessity for going through the usual forms of the alternative writ, (*Ex parte Rogers*, 7 Cowen, 526, 533, 534; *Ex parte Jennings*, 6 Cowen, 518.) If, however, it is desired to bring error, a peremptory mandamus will be refused at this stage of the proceedings; or if a rule for one has been granted, it will be changed into a rule for an alternative mandamus, so that the facts may be put on record by a return. (*Ex parte Jennings*, ut sup. See *Rex* v. *Dean and Chapter of Dublin*, 1 Strange, 536, where it was decided that no writ of error lay on the

Fish v. Weatherwax.

award of a peremptory mandamus.)   Again : where the alternative writ has been *regularly* served, the court may in their discretion, upon due proof of that fact, order a peremptory mandamus, without compelling a return to it. (*The People ex rel. Tremper* v. *The Judges, &c. of Ulster*, 1 Johnson R. 64. *The People ex rel. Knapp* v. *Judges of Westchester*, 4 Cowen, 73.)   If, however, the defendants have not had time to make up their return, a further day will be allowed before the peremptory writ issues.   (*Id.*)

Again.   If the return to the alternative mandamus be insufficient, the peremptory writ may be awarded.   (Bac. Abr. tit. Mandamus, M.   Com Dig. tit. Mandamus.   *The People* v. *Seymour*, 6 Cowen, 579.   *The People ex rel. Bush* v. *Collins*, 7 Johnson, 549.   *Rimkell* v. *Winemiller*, 4 Harris and McHen. 429.)   So if the return have been falsified in an action upon the case ;   Bac. Abr. *ut sup. ;*   Com. Dig *ut sup. ;*) or in New York, in case a verdict shall be found for the person suing such writ upon plea to all or any of the material facts in the return ; or if judgment be given for him upon demurrer or by default, this writ shall be granted without delay.   (2 Rev. Stat. of N. Y. 2d ed. 486, § 57.   See also stat. 9 Anne, ch. 10, § 2.

II.   Form :   In *The People ex rel. the Com. of Highways of Poughkeepsie* v. *The Supervisors of the County of Dutchess*, (1 Hill, 50,) Justice Bronson remarks that "the peremptory writ, when awarded, should follow the alternative mandamus ;" and although he does not extend the remark beyond the particular case then before the court, this may be safely stated as the general rule.

III.   Practice :   A motion for a peremptory mandamus, on the coming in of a return to an alternative mandamus, is a non-enumerated motion, if the relator has not formally demurred.   (*The People* v. *The Commissioners of Highways of Hudson*, 6 Wen. 559.)   It is optional with the relator, whether it shall be considered enumerated or non-enumerated business, unless the court specially direct formal pleadings to be interposed ; if he elect to have it considered non-enumerated business, the court, on the application of the defendant, but not of the relator, will give leave, after its decision of the question, to have formal pleadings made up and filed.   (*Ib.*)   On motion for a peremptory mandamus, the court do not look at the affidavits on which the alternative writ was founded ; their decision is made solely upon the return to the alternative writ.   (*The People* v. *Hudson*, 7 Wen. 474.)   Where an application is made for a peremptory mandamus on the return of an alternative writ, the papers on which the original motion was made must be presented, and the points stated in writing in support of the application.   (*The People* v. *Delaware Common Pleas*, 2 Wen. 255.)

§ 70.   The mode of enforcing obedience to the peremptory mandamus is by attachment, which must be moved for upon affidavits showing the right of the applicant to this remedy, and due notice to the defendant.   Therefore, where on motion for an attachment against the defendants for not obeying a peremptory mandamus commanding them to seal a bill of exceptions, the affidavit omitted to state the service to have been when the court was sitting, or the persons on whom made, the court denied the motion   (*The People* v.

*The Judges of Washington*, 2 Caines, 97.) The application for an attachment is made by a motion for a rule *nisi*, founded on affidavits, upon which the defendant may show cause, unless the contempt be gross, when the rule is made absolute at first. (Tidd's Prac. 484 ; *Chaunt* v. *Smart*, 1 Bos. & Pul. 477.) Where the peremptory writ was directed to a corporation, an attachment was granted upon proof of a personal service upon the town clerk alone. *(Rex* v. *Fowey*, 5 D. & R. 614 ) And in *The King* v. *Tooley*, (12 Mod. 312,) upon affidavit that the defendant had kept out of the way, so that personal service of a peremptory writ could not be made upon him, and that the writ had been left at his house, the court ordered him to show cause. If a mandamus is served upon all those to whom it is directed, and a motion for an attachment against all of them is made, it is sufficient to produce an affidavit of service of the writ at the time of showing cause upon the attachment ; nor is even this necessary, unless required by the other side. But if the writ were served upon some of the members only, and the attachment is moved against them alone, they ought, it seems, to have an opportunity of answering the affidavit of the special service of the writ. *(Rex* v. *Esham*, 2 Barnard, 265.) Lord Holt says, that there are " two sorts of attachments upon a mandatory writ ; the one entitles the party to his action for damages, and that must be upon the *pluries*, and the other punishes the contempt, which may be upon the *alias*. *(Anon.* 12 Mod. 348 ; *Anon.* 12 Mod. 164. Angell and Ames on Corporat. 3d ed. 682, 683.)

§ 71. By the Revised Statutes of New York, (vol. 2, 2d edition, page 486, § 57,) in case a verdict shall be found for the person suing such writ, or if judgment be given for him upon demurrer or by default, he shall recover damages and costs, in like manner as he might have done in such action on the case for a false return. And on a recovery of damages by virtue of that statute, against any persons claiming to be a corporation, the court may cause the costs therein to be collected, by execution against the persons claiming to be a corporation, or by attachment against the directors or other officers of any such corporation. (Id. § 58.) On trial of a mandamus under 9 Anne, if the plaintiff gets a verdict, he recovers damages as well as costs ; but the defendant only recovers costs, he having sustained no damages. *(Ipswich, mandamus to admit Hare.* Mic. 17 Geo. III. 1 Gude Crown Prac. 190. See also id. 176.)

§ 72. In *Ex parte Root*, (4 Cowen, 548,) the court state that the general practice of the court is not to give costs on motion for mandamus, and this especially when such motion is ex parte, but nevertheless when the motion is heard upon notice, and is clear against the relator, the court will deny it with costs. (Id.) Nor are costs usually given on granting an alternative or peremptory mandamus on motion. " If the relator wishes to secure costs," (say the court,) " he must go to his demurrer or issue of fact." *(The People ex rel. Holley* v. *Supervisors of Columbia : The same ex rel. Waterman* v. *The same*, 5 Cowen, 291.) Where the defendants in an action apply to the supreme court for a mandamus to the judges of the court below, and the plaintiffs oppose the issuing of a peremptory mandamus, and request a return to be

Fish v. Weatherwax.

made to the alternative mandamus, they are not liable to the costs of suing out the writ, although the relators obtain a judgment by default, on a demurrer directed by the court on the return of the writ, the plaintiffs not having appeared or been made parties to the demurrer. (*The People* v. *Jefferson Common Pleas*, 13 Wend. 649.) Nor in suits and proceedings upon writs of mandamus, is it the practice of the court upon awarding a peremptory mandamus to grant costs against the judges of subordinate courts or other public officers entrusted with the discharge of judicial duties. (*Anon.* 19 Wend. 157.) Though costs are awarded where the judges do not obey the alternative writ, but make a return; in such cases it is presumed they are indemnified by the party in interest. (*The People* v. *The New York Common Pleas*, 18 Wend. 534.) But costs may be awarded upon the granting of a peremptory mandamus, although no return has been made to the alternative mandamus, and without the appearance of the party to be affected by the proceeding. (*The People* v. *Onondaga Common Pleas*, 10 Wend. 598.) And a party resisting a mandamus by requiring the relators to plead or demur, and subsequently joining in demurrer, is liable to the costs of the demurrer, on judgment being rendered in favor of the relators. (*The People ex rel. Hale* v. *Onondaga Common Pleas*, 3 Wend. 301. See *Myers* v. *Pownal*, 16 Vermont R. 426. See also the following cases cited in Angell and Ames on Corpns. 3d ed. p. 659, n. 5: *Regina* v. *Bingham*, 4 Adolph. & Ellis, (N. S.) 477; *Regina* v. *Greene*, id. 646, 650; *Regina* v. *Sheriff of Middlesex*, 5 ibid. 365; *West London Railway Co.* v. *Bernard*, 3 id. 873.)

### FORMS.

A few forms are here given for the use of the practitioner, for which no apology is deemed necessary.

#### I. *Mandamus to Inferior Tribunals and Judicial Officers.*

##### 1.

A general form of an alternative mandamus which may be adapted, (with proper additions,) to any case, court or officer. (Humphrey, 504; see 3 Ld. Ray. Rep. 203, 206, 353, for precedents.)

The people of the state of New York, to [the court, board of supervisors, commissioners of highways, or other officers or persons to whom it is to be directed,] greeting: Whereas, [here recite the facts or statements, *briefly*, which preceded the *gravamen* or injury.] Nevertheless, you the aforesaid [court, officer or person,] have unjustly, [state briefly the order or proceeding of which you complain,] as we are informed by his complaint. Now therefore, we being willing that full and speedy justice be done in this behalf to him the said          as it is just, command you, that immediately after the receipt of this writ you,'[insert the thing or matter required to be done, or omitted, substantially according to the order of the court allowing the mandamus,] or that you show us cause to the contrary thereof, lest complaint shall again come to us by your default; and in what manner you shall have executed

Fish v. Weatherwax.

this our writ make known to our said justices of our said     court of judi-
cature on, &c.   Witness, &c. [the usual teste.]               *Clerks.*
———, *Att'y.*

## 2.

### Peremptory mandamus thereon.

As in the last form, adding after the words " as we have been informed
from his complaint made to us," the words " and which complaint we have
adjudged to be true as appears to us of record," and *omitting* " or that you
show us cause to the contrary thereof."

## 3.

Peremptory mandamus to vacate an order setting aside a *fi. fa.*   (*Blunt* v.
*Greenwood*, 1 Cowen, 15, 22.  *Supra*, § 29.

The people of the state of New York, to the judges of the court of .com-
mon pleas of the city of New York, greeting : Whereas        lately
[L. s.] recovered a judgment for the sum of           against one
which said judgment was entered of record, in the said court of com-
mon pleas, on the              day of            , and upon which said judg-
ment a *fieri facias* was issued ; and, afterwards, a levy made by virtue of the
said *fieri facias*, upon the goods and chattels of the said           to wit, on
the       day of          ; and whereas, we have been informed, from
the complaint of the said         , that a rule was granted by you during
the last          term of the said court of common pleas, setting aside the said
*fieri facias*, to the great damage and grievance of the said          : We,
therefore, being willing that due and speedy justice should be done to the said
            in this behalf, as it is reasonable, do command you, firmly enjoin-
ing you, that immediately after the receipt of this our writ, you do, without
delay, *vacate and cause to be vacated,* the said rule granted by you at the last
            term of the said court of common pleas, that the same complaint
may not, by your default, be again repeated to us : and how you shall have
executed this our writ, make known to us, before our justices of our supreme
court of of judicature, at the         in the town of           in the county
of,       on the            next, then and there returning this our writ,
upon peril that may fall thereon.   Witness, &c. [the usual teste.]

*Clerks.*

———, *Att'y.*

## 4.

The same, to vacate an order setting aside the report of referees.   (Humph.
503.  *Supra*, § 29.

The people of the state of New York, to the judges of the court of com-
mon pleas in and for the county of      ·        , greeting : Whereas we have
been given to understand, in a certain action of trespass on the case pending
before you between          , plaintiff ; and          defendant, that a certain
report of referees was duly made to you in writing by              , the refe-
rees appointed in the said action, by which said report the said referees certi-
fied that, [here state report substantially, and the amount reported.]   Never-
theless, you, the aforesaid judges, have not only unjustly refused to render

---

Fish v. Weatherwax.

---

judgment on such report according to the tenor and effect thereof, but have also unjustly set aside and vacated the same to the grievous damage of the said                  , as we are informed by his complaint, and which complaint we have adjudged to be true as appears to us of record.   Now, therefore, we be-ing willing that full and speedy justice be done in this behalf to him the said                  , as it is just, command you, firmly enjoining that immediately after the receipt of this writ, you set aside and vacate the rule made by you as aforesaid setting aside the report aforesaid of the referees aforesaid ; and also that you forthwith render judgment on such report, according to the tenor and effect thereof, lest complaint shall again come to us by your de-fault, and in what manner this our command shall be executed, make ap-pear to our said justices of our said supreme court of judicature, on the day of          at          , and then sending back to us this our writ.   Wit-ness, &c. [the usual teste.]                                                    *Clerks.*
————, *Att'y.*

5.

Alternative mandamus to restore an attorney.   (*Supra*, § 28.   2 R. S. 486, 510.   1 R. S. 221.   Humph. 502.   See cases, § 28.

The people of the state of New York, to the judges of the court of com-mon pleas, in and for our county of                  greeting : Whereas, as we have been given to understand, that          , Esq was duly admitted, ap-pointed and licensed to practice as an attorney and counsellor at law of the said court of common pleas, to have and to hold such office so long as he should well demean himself therein.   By virtue whereof the said was and is justly entitled to the exercise of the office aforesaid, and to take the fees, perquisites and profits thereof.   Nevertheless, you the aforesaid judges, have unjustly removed him from the exercise of such office to the grievous damage of the said          as we are informed by his complaint ; therefore, we, being willing that full and speedy justice be done in this be-half to him the said          as it is just, command you, firmly enjoining that immediately after the receipt of this writ, you restore him to the afore-said office of attorney and counsellor at law of the said court of common pleas, and permit him to exercise the same, and to take the fees, perquisites and profits thereof, or that you show cause to the contrary before our justices of our supreme court of judicature, at          on the          day of next, lest complaint shall again come to us by your default ; and in what manner this our command shall be executed, make appear to our said justices of our said supreme court of judicature, on the          day of          at and then sending back to us this our writ.   Witness, &c. [the usual teste.]                                                    *Clerks.*
————, *Att'y.*

6.

Peremptory mandamus thereupon.

As in the last, adding to the words " as we are informed by his complaint," these words, " and which complaint we have adjudged to be true, as appears to us of record."   *Omit* " or that you show cause to the contrary before our

*Fish* v. *Weatherwax.*

justices of our supreme court of judicature, at         , on the      day
of         next.                                                 *Clerks.*
———, *Att'y.*

7.

Alternative mandamus to a court of sessions to hear and determine an appeal
    against an order of bastardy.  (2 Gude, 398, *et seq.*)

The people, &c.  To ——————.  Whereas we have been given to
understand in our court before us that at         , an appeal was entered
on the behalf of         against a certain order made by         ,
two justices chosen in and for         , for filiating on the said    .  a
bastard child, born of the body of         ; and you the said         ,
before whom the said appeal was brought as aforesaid, were then and there
required, on behalf of the said         , to hear and determine the matter
of the said appeal, yet you the said         before whom the said appeal
was brought as aforesaid, not regarding your duty in that behalf, did not hear
and determine the said appeal, nor have you at any time since heard or de-
termined the same, to the great damage and grievance of the said         ,
and to the manifest injury of his estate, as we have been informed from his
complaint made to us; whereupon he hath besought us, that a fit and speedy
remedy may be applied in this respect; and hereupon we, being willing that
due and speedy justice should be done in this behalf, as it is reasonable, *do
command you the said*         that you do proceed to hear and determine
the said appeal, at         or .that you show us cause to the contrary
thereof, lest in your default the same complaint should be repeated to us; and
*how you shall have executed this our writ make known to us at*
on         next.  Witness, [the usual teste.]              *Clerks.*
———, *Att'y.*

8.

Peremptory mandamus thereon.

As in the last form, adding after the words " as we have been informed
from his complaint made to us," the words " and which complaint we have
adjudged *to be true as appears to us of record,*" and *omitting* " or that you
show us cause to the contrary thereof."

9.

Alternative mandamus to two justices to take the examination of a pauper
    touching the reputed father of a bastard child.  (2 Gude, 407, *et seq.*)

The people, &c.  To ——————.  Whereas we have been given to un-
derstand in our court before us, that heretofore (to wit) on the         day
of         in the year of         , one         having *declared her-
self to be with child,* and that such child was likely to be born a bastard, and
to be chargeable to the county [or town] of         in the said county, ap-
plication was made unto you the said         and         , being two
of the justices of         by and on behalf of the superintendent [or guar-
dian] of the poor [or commissioners of the alms house,] of the said county, [or
town,] to take the examination of the said         touching the person

who had gotten her with child, in order that such proceedings might be had thereupon as the law directs, yet you the said      and      well knowing the premises, but not regarding your duty in that behalf, did then and there absolutely neglect and refuse, and have ever since absolutely neglected and refused to take such examination, in manifest obstruction of justice, and to the great damage and grievance of the said      [town or county ;] whereupon they have besought us that a fit and speedy remedy may be applied in this respect ; and we being willing that due and speedy justice should be done in this behalf, as it is reasonable, do command you the said      and      , firmly enjoining you that immediately after the receipt of this our writ, you do take the examination of the said      , touching the reputed father of the said bastard child, in order that such further proceedings may be had thereupon as the law directs, or that you show us cause to the contrary thereof, lest in your default the same complaint should be repeated to us : and how you shall have executed this our writ make known to us at      on      next, then returning to us this our said writ. Witness, [the usual teste.]      *Clerks.*

———, *Att'y.*

10.

The peremptory mandamus thereon similar to the last form, with the changes stated in No. 6.

### II. *Mandamus to Inferior Officers and Corporations.*

11.

Mandamus to one who has the custody of public papers or documents, to permit a person to inspect and take copies of the same. (2 Gude, 464, 465, 466, 432.)

The People, &c. To ————————. Whereas we have been given to understand, in our court before us at      , that a certain plaint in replevin is now pending in our said court before us, wherein one      is the plaintiff, and one      is the defendant, touching the claim or title of the said      to a certain right of common and pasturage for all manner of cattle and other commonable rights in, over, and upon the open, common, waste and unenclosed lands and grounds situate, lying and being within the      , in the said county of      . And whereas we have been also given to understand, in our said court before us, that application hath been made to you, the said      , on behalf of the said      , to permit and suffer the said      , or his attorney or agent, to inspect the papers and public documents whereof you have the custody, so far as the same relate to the matters in question in the said plaint, and to take copies and extracts therefrom ; but that you have absolutely refused to permit the said      , or his attorney or agent, or other person on his behalf, to inspect the same, or to take copies or extracts therefrom, to the great damage and prejudice of the said      , as we have been informed from his complaint made to us ; whereupon he hath besought us that a fit and speedy remedy may be applied in this respect ; and we, being willing that due and speedy justice should be done in this behalf, as it is reasonable, do command you, the said      , and each of you, and

---

Fish v. Weatherwax.

---

all and every other person or persons in whose custody or possession the same may be, that you, or such of you in whose custody or possession the same, or any of them, may be, do, immediately after the receipt of this our writ, permit and suffer the said          , his agent, attorney, or solicitor, to have the sight and inspection of the said papers and other public documents whereof you have the custody, so far as the same relate to the matters in issue in the said plaint, and to take copies or extracts therefrom at his own proper costs and charges, lest by your default the same complaint should be repeated to us: and how you shall have executed this our writ, make known to us at          , on          next, then returning to us this our said writ; and this you are not to omit. Witness, &c.          *Clerks.*

12.

Mandamus to a late clerk to deliver up books, &c. to the present clerk. (2 Gude, 497, 498, 499.)

The People, &c. To ——————. Whereas we have been given to understand, in our court before us, that          , hath been duly chosen, appointed, and sworn into the office of town [or county or other] clerk. And whereas all the public books, records, and muniments of and belonging to the said [town or county] ought to be placed and deposited with, and remain in the custody, power, and possession of the said          , as such town [or *county or other*] clerk, for the use and benefit of          . And whereas we have been also given to understand, in our court before us, that the aforesaid public books, records, and muniments of and belonging to the said [town or county,] have been for a considerable time last past, and now remain in your custody, possession, or power; and application hath been made to you on behalf of the said          as such town [or county or other] clerk as aforesaid, that the same should be delivered by you to the said          , as such town [or county or other] clerk as aforesaid, in order that the same might remain in his custody and possession, as such town clerk as aforesaid, for the use and benefit of          ; yet you, well knowing the premises, but not regarding your duty in this behalf, have absolutely neglected and refused, and still do absolutely neglect and refuse to deliver to the said          , so being such clerk as aforesaid, the aforesaid public books, records, and muniments of and belonging to the said [town or county,] and on the contrary thereof unjustly detain the same in your custody or power, in contempt of us, to the great damage and grievance of the said          , and to the great hindrance of the administration of justice within the said [town or county,] as we have been informed from his complaint made to us in that behalf; we therefore, being willing that due and speedy justice should be done in this behalf, as it is reasonable, do command you, firmly enjoining you, that immediately after the receipt of this our writ, you do without delay deliver, or cause to be delivered to the said          , so being such clerk as aforesaid, all the said public books, records, and muniments of and belonging to the said borough, in your custody, possession, or power, in order that the same may remain in the custody and possession of the said          , as such clerk as aforesaid, for the use and benefit of          , or that you show us cause to the contrary thereof,

Fish v. Weatherwax.

lest by your default the same complaint should be repeated to us : and how you shall have executed this our writ, make known to us at          , on next, then returning to us this our writ.  Witness, &c.

*Clerks.*

### 13.

Mandamus to compel certain officers, as supervisors, commissioners, &c., to make a rate, tax, or assessment for repaying sums expended in public works or for other purposes.  (2 Gude, 434, 438.)

The People, &c. To ——————, greeting.  Whereas [state the circumstances from which the obligation to make the rate arises] nevertheless you our said [commissioners of sewers] for the said, county, not being ignorant of the premises, but little regarding your duty in this behalf, have absolutely refused and still do refuse to make such rate, tax, and assessment, in contempt of us and to the no small damage and injury of          , as we have been informed from their complaint made to us in that behalf ; whereupon they have besought us that a speedy remedy be granted to them ; we therefore being willing that a speedy remedy be provided for them in that behalf, as is just, do command you our said          , by firmly enjoining you, that you do without further delay, in due form of law make and cause and procure to be made a rate, tax, and assessment on all and every person and persons who hath, or have, or holdeth, or hold any lands, tenements, and hereditaments within the said county, [town or city ;] [describe the mode in which the rate is to be made ;] and that you do all and singular acts, matters, and things necessary, and which you may lawfully do in this behalf, or signify to us good cause to the contrary, lest by your default complaint thereof be again made to us : and in what manner you shall have executed this our writ make appear to us at          , on          next, then returning to us this our writ ; and this you or any of you are not to omit on peril that may ensue thereon.  Witness, &c.                                                  *Clerks.*

### 14.

Mandamus to compel officers, as commissioners, supervisors, justices, &c., to levy a sum assessed on a certain person pursuant to a statute.  (2 Gude, 421, 441.)

The People, &c. To ——————, greeting.  Whereas [state the circumstances out of which the obligation to levy the sum assessed arises] nevertheless you the said          , well knowing the premises, but not regarding your duty in this behalf, did then and there absolutely neglect and refuse, and have ever since absolutely neglected and refused, to issue such warrants [or warrant] as aforesaid, as we have been informed from the complaint of the said collectors [or other persons] made to us ; whereupon they have besought us that a fit and speedy remedy be applied in this respect ; and we, being willing that due and speedy justice should be done in this behalf, as it is reasonable, do command you, the said          , firmly enjoining you, that immediately after the receipt of this our writ, upon proof made upon oath of the demand made by the said collectors as aforesaid of the said sum of          so assessed upon the said          as aforesaid, and of the non-payment thereof,

---

Fish v. Weatherwax.

---

you [or one of you, if the warrant of one be sufficient] do issue your war-rants [or warrant,] authorizing and directing the said collectors to levy the said sum of      so assessed upon the said        as aforesaid, and so in arrear and refused and neglected to be paid as aforesaid, together with the costs attending the same (to be ascertained by you, [or one of you] by distress and sale of the goods and chattels of the said      , pursuant to the directions of the said statute, or that you show us cause to the contrary thereof, lest in your default the same complaint should be repeated to us : and how you shall have executed this our writ make known to us at          , on next, then returning to us this our said writ.   Witness, &c.        Clerks.

### 15.

Mandamus to a person to take upon himself the office of mayor.

The People, &c. To ————————, Esq ; greeting : Whereas, we have been given to understand in our court before us, that heretofore (to wit) on now last past, you the said      , were in due manner elected into the office of mayor of      , to serve in the same office for the space of one whole year, then next following, of which election you the said      then and there had notice ; and it then and there became and was the duty of you the said      , so being elected as aforesaid, to take the oath for the due and faithful execution of the office of mayor of the said [town or city], and to take upon yourself and execute the said office of mayor of the said town for the residue of one whole year, computed from      , now last past ; yet you the said      , well know-ing the premises, but not regarding your duty in this behalf, have absolutely neglected and refused, and still do absolutely neglect and refuse to take the oath for the due and faithful execution of the office of mayor of the said town, [or city,] and to take upon yourself and execute the office of mayor of the said town, [or city,] in manifest obstruction of public justice within the said town, and to the great damage and grievance of the inhabitants thereof, as we have been informed from the complaint of      , made to us ; where-upon they have besought us that a fit and speedy remedy may be applied in this respect ; and we, being willing that due and speedy justice should be done in the premises, as it is reasonable, do command you, the said      , firmly enjoining you, that immediately after the receipt of this our writ, you do take the oath for the due and faithful execution of the office of mayor of the said town, [or city,] and that you do take upon yourself and execute the said office of mayor of the said town, for the residue of one whole year, com-puted from the said day      of      now last past, or that you show us cause to the contrary thereof, lest the same complaint should by your default be repeated to us : and how you shall have executed this our writ, make known to us at      , on      next, then returning to us this our said writ. Witness, &c.        Clerks.

### 16.

Mandamus to restore one of the common council of a city.   (2 Gude, 545.)

The People, &c. To the citizens of the common council of our city of      , and to every of them, greeting : Whereas,      was duly elected, sworn, and

---

Fish v. Weatherwax.

---

admitted into the place and office of one of the common council of our said city of      , in which said place and office he, the said      , always behaved and governed himself well, yet you, the said citizens of the common council of our said city, without any reasonable cause, have unjustly removed the said      from the said place and office of one of the common council of our said city, in contempt of us, and to the no small damage and grievance of him, the said      , [and to the manifest lessening of his estate,] as we have been informed from his complaint made to us in that behalf: we therefore being willing that due and speedy justice be done, in this behalf, to the said      , (as it is reasonable,) do command you, that immediately after the receipt of this our writ, you do restore, or cause to be restored, the said      into the said place and office of one of the common council of our said city of      , together with all the liberties, privileges, and franchises to the said place and office of one of the common council of our said city belonging and appertaining, or that you show us cause to the contrary thereof, that the same complaint may not by your default be repeated to us: and how you shall have executed this our writ, make known to us at      , on      , then returning to us this our said writ.   Witness, &c.                    Clerks.

17.

Mandamus to elect a mayor.   (2 Gude, 500, 503, 505, 507, 510, 511, 512, 515, 516, 518, 520, 522, 524.

The People, &c. To ——————, greeting: Whereas, [set out the circumstances out of which the obligation to elect arises,] and we have been given to understand in our court before us, that on      , now last past, being the day appointed for the election of a mayor of the said town [or city] as aforesaid, no election was made of a mayor of or for the said town [or city] for the present year, [pursuant to the direction of the statute in such case made and provided,] nor hath any election of a mayor of or for the said town [or city] been since at any time made, as we have also been given to understand in our said court before us, to the manifest hindrance and obstruction of public justice within the said town [or city] : we therefore, being willing that a due and speedy remedy should be applied in this behalf, as it is reasonable, do command you, the said [mayor, aldermen, and commonalty] of the said town [or city,] firmly enjoining you, that every of you having a right to vote or be present at, or to do any other act necessary to be done in order to the election of a mayor of the said town [or city] do, upon      , the      next, between the hours of      o'clock in the morning, and      o'clock in the afternoon of the same day [assemble yourselves in some convenient place or places within the said town [or city] of      , and that being so assembled, you [describe here in what manner the election is to be held] do then and there, according to your authority in that behalf, respectively proceed to the election of a mayor of the said town and borough for the residue of one whole year, to be computed from      , now last past : and that you, and every of you, do every act necessary to be done in order to such election [pursuant to the statute in such case made and provided ;] and that such of you to whom the same of right belongs, do administer or cause to be administered to the

Fish v. Weatherwax.

person who shall be so elected' into the said office, the oath for the due and faithful execution of the said office, [and that you do admit or cause to be admitted the same person into the said office of mayor of the said town, [or city,] with all the liberties, privileges, and franchises to the said place and office belonging and appertaining, and do all other acts necessary to be done in order to and for the completing the said election, pursuant to the directions of the statute in such case made and provided, or that you show us cause to the contrary thereof, lest by your default the same complaint should be repeated to us: and how you shall have executed this our writ make known to us at        , on        , then returning to us this our said writ.    Witness, &c.

Clerks.

### 18.

Mandamus to elect an alderman in the place of one who has left the country.

The people of the state of New York, by the grace of God free and independent, to the mayor, aldermen and commonalty of the city of New [L. S.] York, greeting : Whereas, on the first day of November last past, and for the two succeeding days, an election was duly held according to law in the fifth ward of the said city, for the purpose of electing an alderman and other officers of the said fifth ward, according to the charter of the city of New York, and the statutes amending the same, and whereas at the said election, David Rogers had a majority of votes for alderman of the said ward ; whereupon the said D. Rogers was entitled to, and ought to have qualified himself to become a member of the common council of the said city by appearing and taking the oath or oaths by law provided, but on the contrary thereof the said D. R., soon after the said election took place, and in the said month of November, and before the first day of January last past, departed from the United States for the island of St. Croix, in the West Indies, without 'having ever qualified himself by law to assume the office of alderman of the said fifth ward.    And whereas, the said D. R. has ever since been, and still is absent from the United States, whereby the said fifth ward is not fully represented in the said common council, and manifest injustice is done to the residents and electors in the said fifth ward, as has been suggested to us by the complaint of J. B. Schmelzel, J. R. Manley, G. Conklin, George Arnold, D. Banks, and Benj. Briggs, residents and electors in the fifth ward. And whereas, we have been informed by the said complaint, that by reason of the premises aforesaid, the office of alderman of the said fifth ward is now vacant, and that it is proper, expedient and necessary that an election for alderman of the said ward should be had without delay ; therefore, being willing that due and speedy justice should be done in this behalf, as it is reasonable, we do command you, by firmly enjoining you, that immediately after the receipt of this our writ, you do without delay cause an election to be held for the purpose of choosing and electing an alderman of the said fifth ward, pursuant to the charter and the acts of the legislature of the state of New York, in such case made and provided, or signify to us the contrary thereof, that the same complaint may not, by your default, be again repeated to us, and how you shall have executed this our writ, make it appear before our justices of

---

our supreme court of judicature, at the academy in the town of Utica, on the first Monday of July next, and this you are not to omit on peril that may fall thereon. Witness, John Savage, Esq., chief justice, at the City Hall, in the city of New York, the 15th day of May, in the year of our Lord, 1830.

*Fairlie, Hubbard, Bridge* and *Oliver*, Clerks.

*J. A. Dunlap*, Att'y.